# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **216 JAMAICA AVENUE, LLC,** | CASE NO. 1:06CV1288 |
| Plaintiff, | **JUDGE CHRISTOPHER A. BOYKO** |
| v. | |
| **S & R PLAYHOUSE REALTY CO.,** | **DEFENDANT'S MOTION TO DISMISS** |
| Defendant. | |

Defendant S & R Playhouse Realty Co. ("S&R"), by and through counsel, respectfully moves this Court, pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing plaintiff 216 Avenue, LLC's Complaint for failure to state a claim upon which relief may be granted. The reasons for this Motion are fully set forth in the attached Memorandum in Support, which is incorporated herein.

Respectfully submitted,

/s/ Stephen D. Williger
Stephen D. Williger (0014342)
Gary L. Walters (0071572)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
(216) 566-5500
(216) 566-5800 – Fax
Stephen.Williger@ThompsonHine.com
Gary.Walters@ThompsonHine.com

*Attorneys for Defendant*
*S & R Playhouse Realty Co.*

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| 216 JAMAICA AVENUE, LLC, | ) | CASE NO. 1:06CV1288 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | |
| S & R PLAYHOUSE REALTY CO., | ) | MEMORANDUM IN SUPPORT OF |
| | ) | DEFENDANT'S MOTION TO DISMISS |
| Defendant. | ) | |

## INTRODUCTION

Six months after purchasing the Halle Building in downtown Cleveland for $845,000, plaintiff 216 Avenue, LLC ("Jamaica") has filed this case seeking to reach back over twenty-five years to recover from Defendant S & R Playhouse Realty Co. ("S&R") alleged back rents exceeding $13 million. The lease under which S&R occupies the premises does not support plaintiff's claims, and accordingly, S&R moves this Court to dismiss plaintiff's action on the ground that it fails to state a claim for which relief may be granted.

## FACTS

The Lease at issue was created 94 years ago, in 1912, between The Realty Investment Company as lessor, and Salmon P. Halle and Samuel H. Halle, jointly, as lessees. (Compl. ¶ 21; Lease, Compl. Ex. A at 1-2.) The term of the Lease is 99 years. (Compl. ¶ 21.) S&R succeeded to the rights of the original lessee under the Lease when the Halle Brothers Company assigned the leasehold estate to S&R in 1982 (the "1982 Assignment"). (Compl. ¶ 31.) succeeded to the rights of the original lessor in February 2006 when Halle Cleveland, LLC ("Halle Cleveland") transferred to ownership of the land subject to the Lease. (Compl. ¶ 39.)

The Lease's rental provision provides that for the first two years of the term, rent was to be $10,000 per year, payable in quarterly installments. (Lease, Compl. Ex. A. at 2.) Then from April 1914 through March 1916, annual rent was to be $20,000; from April 1916 through March 1919, $25,000; from April 1919 through March 1922, $30,000; and rent for the remaining eighty-nine years of the lease is $35,000. (Id.) The Lease also states that all rents were to be paid in gold coin "in present standard of weight and fineness" (the "gold clause"). (Id.)

Since 1982, S&R complied with the Lease terms by paying rent of $35,000 per year. (Compl. ¶ 47.) Plaintiff does not allege that S&R has failed to pay $35,000 per year or that any lessor prior to plaintiff ever raised an issue concerning either the amount or method of S&R's rent payments.

## LAW AND ARGUMENT

Pursuant to Fed. R. Civ. P. 12(b)(6), a court may grant a motion to dismiss if the court finds that a plaintiff can prove no set of facts supporting the claims that would entitle the plaintiff to relief, even accepting all factual allegations in the plaintiff's complaint as true. *See, e.g., Columbia National Resources v. Tatum,* 58 F.3d 1101, 1109 (6th Cir. 1995). Legal conclusions alone cannot support a claim; a plaintiff must allege or plead facts that inferentially support each material element of a claim against the moving defendant. *Advocacy Organization for Patients and Providers v. Auto Club Ins. Ass'n.*, 176 F.3d 315, 319 (6th Cir. 1999) (*quoting Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)), *cert. denied*, 528 U.S. 871 (1999). In reviewing a motion to dismiss, the court must accept all of the plaintiff's well-pleaded factual allegations as true, but it need not accept unwarranted factual inferences as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

The Complaint does not support a cause of action against S&R for breach of contract because it neither alleges nor pleads facts supporting inferences that S&R failed to pay rent as required by the Lease. Specifically, plaintiff's allegations cannot support the conclusions (i) that the Lease requires S&R to pay more than $35,000 in rent per year; (ii) that the 1982 Assignment is an obligation "issued after" October 27, 1977, as required by federal law; (iii) that plaintiff has a right to sue for rent accruing before its assumption of the lease; and (iv) that plaintiff's claims have been timely brought.

**I.      The motion to dismiss should be granted because the Lease does not require S&R to pay more than $35,000 in annual rent.**

This dispute is whether plaintiff is obligated, as stated in the Lease, to accept $35,000 (whether in currency or gold) as full satisfaction of defendant's obligations to pay annual rent under the Lease, or whether, as plaintiff alleges, defendant is obligated to engage in complicated mathematical calculations to convert 1912 dollars to ounces of gold and then to reconvert ounces of gold to current dollars. There is nothing in the words in the lease to support plaintiff's contention.

A court must give a contract's words their plain and ordinary meaning unless an absurd interpretation would result or unless a different meaning is clearly evident from the document itself. *Medical Billing, Inc. v. Medical Mgmt. Sciences, Inc.*, 212 F.3d 332, 337 (6th Cir. 2000). This rule of interpretation applies to leases. *Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust, Inc.*, 804 N.E.2d 979, 992 (Ohio Ct. App. 2004).

Here, the Lease provides,

> For the remainder of said term, to wit: eighty nine (89) years the sum of thirty five thousand dollars ($35,000.00) per year, payable in advance in quarterly installments of eight thousand seven hundred and fifty dollars ($8,750.00) each upon the first day of April, July, October and January in each year. All of said rents shall be paid in gold coin of the United States

> in present standard of weight and fineness by depositing it to the credit of the lessor, its successors or assigns, with the Citizens Savings & Trust of Cleveland, Ohio, or at such other place in the City of Cleveland as the said lessor, its successors or assigns, may from time to time designate.

(Lease, Compl. Ex. A.)

The language of the lease is clear about what is owed—$35,000 payable in quarterly installments of $8,750 each. For unspecified reasons (the Lease is silent about the parties' intentions on this point), the landlord wished to be paid in gold instead of currency. That much in unambiguous. (As plaintiff describes in its Complaint, provisions requiring the payment of obligations in gold were outlawed by Congress after this lease was executed.) But what the Court will not find in the lease is any mention of inflation or any reference to potential escalations (or diminutions) in the value of gold and how those escalations or diminutions would affect the lessee's obligations to pay rent. Nor is there any mechanism provided for the establishment of current gold values or for the resolution of disputes about valuations. Presumably, sophisticated parties in a transaction like this one would have made express reference to these issues if they had any intention to provide for the kind of inflation hedge that plaintiff is advocating here.

What is clear from the Lease is that the original owner understood very clearly how to provide for an increase in rent. The Lease started at $10,000 and increased steadily and materially to $20,000, then to $25,000, then to $30,000 and finally to $35,000 over the first ten years of the Lease. Had the parties intended some further escalation in rent, they knew how to use words to express their intentions.

Plaintiff is guilty of trying to rewrite the Lease. Five different times in the Complaint, plaintiff alleges that S&R is required to make payments in the amount of gold "equivalent to" $35,000 in 1912, yet those words never appear in the Lease. "Weight" and "fineness" relate to

the quality of the ore, not to value, and nothing the plaintiff can write in its Complaint today can change the terms of the Lease.

The Lease is clear and unambiguous and does not require defendant to pay more than $35,000 annually. S&R's motion to dismiss should be granted.

**II.     The motion to dismiss should be granted; plaintiff's reliance on a payment in gold is unenforceable because the 1982 Assignment is not an obligation issued after October 27, 1977.**

In 1933, Congress declared gold clauses to be illegal, and therefore the gold clause in the Lease was made unenforceable by federal law more than 70 years ago. In 1977, Congress changed course and allowed parties to create gold clauses in obligations "issued" subsequent to October 27, 1977. 31 U.S.C.S. § 5118(d) (LexisNexis 2000) (the "Gold Clause Statute"). Based on legislative history, the word "issued" has been held to mean "entered into." *Rudolph v. Steinhardt*, 721 F.2d 1324, 1330 (11th Cir. 1983) (quoting 123 Cong. Rec. 635 (1977) (detailing a debate in which Sen. Jesse Helms, author of the 1977 legislation, explained the meaning of the bill's language)). The logic behind Congress's inconsistent actions is that in 1933, the United States abolished the gold standard, and thus declared gold clauses illegal. In 1977, Congress decided that if the parties so agreed in a *new obligation,* a new "gold clause" could be enforceable.

While parties can now under federal law enter into a gold clause by creating an original obligation containing such a clause, some courts outside Ohio have held that the novation of a pre-existing contract may under narrow circumstances constitute "entering into" a new obligation. In those cases, courts have allowed parties to reactivate an old gold clause in a novated contract. *Grand Ave. Partners v. Goodan*, 25 F. Supp. 2d 1064, 1066 (C.D. Cal. 1996), *aff'd,* 160 F.3d 580 (9th Cir. 1998). State law determines whether a contract is novated. *Id.*

The initial question is whether under Ohio law the defendant's acceptance of the assignment of the Lease was an obligations "issued" after October 1977. If it is not, then plaintiff's case fails. S&R contends that a new contract, one that is formed between parties intended to start a new relationship and further expressly intending to utilize a gold clause, is required, at lease under Ohio law, to satisfy the requirements of the 1977 Gold Clause Statute. Here, plaintiff's attempt to drag the 1912 Lease into the 1977 law seems to fly in the face of what Congress was doing when it renewed the ability to provide for payment in gold. This is a matter of first impression in Ohio, and there are no additional authorities to assist the Court in reaching a conclusion on this point.

Even in this Court were to conclude that novation of an earlier contract is sufficient to meet the Gold Clause Statute, there has been no novation here. The existing Lease is still in place, and the parties have done nothing to effect a novation of that agreement.

Under Ohio law, a novation occurs when a valid obligation is completely extinguished by a new valid obligation. *McGlothin v. Huffman*, 640 N.E.2d 598, 601 (Ohio Ct. App. 1994). The standard for concluding that an existing obligation constitutes a novation is high, and novation is never presumed. *See Bahner's Auto Parts v. Bahner,* No. 97CA2538, 1998 Ohio App. LEXIS 3453, at *24 (Ohio Ct. App. June 23, 1998). The court must find that the parties intended to effect an actual novation (as opposed to a mere assignment), and that they consented to novation with full knowledge of their actions. *See Garrett v. Lishawa*, 172 N.E. 845, 846 (Ohio Ct. App. 1930); 18 Oh. Jur. 3d Contracts § 247 (2005).

A court can examine the language of the writing purported to novate the obligation to determine whether novation has occurred. *See Snell v. Salem Ave. Assocs.* 675 N.E.2d 555, 561-62 (Ohio Ct. App. 1996). A court will not find novation unless all parties have evidenced a

"clear and definite intent" to "completely do away with the original contractual obligation." *Wenner v. Marsh USA, Inc.*, No. 01AP-1211, 2002 WL 826021, at *2 (Ohio Ct. App. May 2, 2002).

In order for a novation to be valid, there must also be a complete meeting of the minds among the parties to substitute the new agreement for the old one. *Bahner's Auto Parts*, 1998 Ohio App. LEXIS 3453, at *23 (*citing State ex rel. Bettman v. Ct. Com. Pl. of Franklin County.*, 124 Ohio St. 269, 283-84 (1931)). Novation requires the parties' negotiation of a common understanding of their arrangement. *Wenner,* 2002 WL 826021, at *3. Each party must manifest knowledge and consent not only to the novation itself but to the terms of the new obligation they create through novation. *See Bahner's Auto Parts*, 1998 Ohio App. LEXIS 3453, at *24.

The language in both the Lease and the Assignment shows there was no novation. One aspect of the assignment that demonstrates this conclusion is the treatment of the prior lessee's (the assignor's) liability under the Lease. In order to effect a novation, the assignor's liability would have had to have been extinguished; if that occurred, the Court could conclude that the "new contract" (the assignment) had replaced the prior contract. But here, S&R did not accept all of the assignor's obligations under the Lease. S&R agreed to assume only those obligations of the Assignor and lessee "to be observed and performed after the date hereof." (Assignment and Assumption, Compl. Ex. C at 2.) Moreover, the Lease releases an assignor only from "personal liability." (Id.) Mere release of "personal liability" is not equivalent to release of all liability. *See Young v. M. Hargrave's Adm'r.,* 7 Ohio 63, 68-69 (1836).

The distinction about the extent of the release of an assignor's liability has been the controlling factor in other "Gold Clause" cases. In *Grand Avenue Partners v. Goodan*, 25 F. Supp. 2d 1064 (C.D. Cal. 1996), *aff'd,* 160 F.3d 580 (9th Cir. 1998), the Court held that an

assignment was not a novation because the assignment did not completely extinguish all liability of the assigning lessee. The original lease provided that an assignment meeting all of the lease's requirements would release the assignor from all "direct" liability under the lease. *Id.,* at 1069. The court noted that if the lessor had intended to release the assigning lessee of all liability, it could have done so by omitting the qualifying word "direct" between "all" and "liability." *Id.*, at 1070.

In contrast, *Trostel v. American Life and Casualty Ins. Co.*, 92 F.3d 736, 739 (8th Cir. 1996), *vacated* 519 U.S. 1104 (1997), *remanded to* 133 F.3d 679 (8th Cir. 1998), *appeal after remand*, 168 F.3d 1105 (8th Cir. 1999), involved a case where expressly both parties acknowledged that an instrument of assignment used in 1969 fully released the previous lessee from all liability and therefore constituted a novation. *Id. See Nebel v. The Mid-City Nat'l Bank of Chicago*, 769 N.E.2d 45 (Ill. App. Ct. 2002), (the court concluded that a material amendment of a lease was a novation because the new lease, as amended, completely replaced the old obligation). This dispute presents similar facts to those in Grand Avenue.

The 1982 Assignment language of the Lease did not completely release Halle Brothers Company from liability under the Lease. No novation occurred, and the Lease's gold clause is as unenforceable today as it was in 1933.

**III. The plaintiff's claims for rents accruing prior to February 2006 must be dismissed because plaintiff does not have a right to sue for rent accruing before its assumption of the lease.**

Plaintiff's Complaint is based on its allegation that it can reach back before its purchase to collect rents allegedly owed to prior owners of the property. Plaintiff could only have the right to sue for rents accruing prior to February 2006 if Halle Cleveland

11205028.8                                8

specifically assigned to plaintiff a chose in action for unpaid portions of rent. Plaintiff cannot satisfy this requirement.

The transferee of a reversion, as plaintiff is here, is one who obtains, whether by sale, devise, or descent and distribution, a landlord's future right to possess and enter freely upon the leased premises when the leasehold estate ends. *See Black's Law Dictionary*, 1345 (8th ed. 2005). Absent a specific grant of a chose in action for unpaid portions of rent, the transferee does not have the right to sue for a breach occurring before the transfer. *Wessel v. Newhof Stores*, 11 Ohio Op. 476 (Hamilton County Ct. Com. Pl. 1938) (also available as 1938 Ohio Misc. LEXIS 1189).

Under Ohio law, a right to collect rents accruing before one's gaining an interest in the leased property does not run with the land; rent is due to the owner of the property at the time the rent accrues. In *Smith v. Harrison,* 42 Ohio St. 180, 185 (1884), the Ohio Supreme Court stated that an action to sue for and recover rent "must be brought in the name of the owner of the fee at the time the rent accrues." In light of this rule, Ohio courts have held that a transferee may sue for back rent only if he shows that he received a specific conveyance of claims for unpaid portions of rent, above and beyond the conveyance of the reversion. In *Wessel*, the court held that the plaintiff could not recover back rent because she failed to show that she received a specific, definite grant of the grantor's claims for unpaid portions of rent. *Wessel*, 1938 Ohio Misc. LEXIS 1189, at *7. The plaintiff in *Wessel* lacked standing to sue even though the deed for the leased property conveyed all of the previous owner's interest in the property, "[t]ogether with all the privileges and appurtenances to the same belonging *and all the rents, issues, and profits thereof.*" In *Jaeger v. Goldzwig*, 60 N.E.2d 625 (Ohio Ct. App. 1944) (also available as 1944 Ohio App. LEXIS 473, at *7), the Court of Appeals explained the rationale of the court's

findings in *Wessel*: "under no circumstances could the back rent inure to the benefit" of the transferee. Thus, Ohio law has determined that a right to sue for back rent does not run with the land because failure to pay rent does not injure someone who does not own the land. Accordingly, plaintiff could not have been damaged in any way prior to February 2006 because prior to that time, it had no interest in the Lease.

The rule that the transferee of a reversion may not sue for breaches occuring before the transfer also comports with the requirement that a suit be brought by the real party in interest. In *Lyons v. Chapman,* 178 N.E. 24, 26 (Ohio Ct. App. 1931), the court concluded that the plaintiff was indeed the real party in interest because he was the party who sustained the loss when a covenant was breached. *Id.* If a court allows a suit to be brought by one other than the real party in interest, the defendant is unable to take advantage of the defenses and evidence he could use against the real party in interest. *In re Highland Holiday Subdivision,* 273 N.E.2d 903, 906 (Ohio Ct. App. 1971) (*quoting Celanese Corp. of America v. John Clark Indus.,* 214 F.2d 551, 556 (5th Cir. 1954)). The defendant is left unprotected from an identical suit if the real party in interest chooses later to sue. *Id.*

Plaintiff's suit against S&R is similar to the suits in which Ohio courts have denied current lessors the right to recover for past breaches. Plaintiff is the transferee of the reversion, yet purports to sue for rent accruing prior to its having any interest in the leased property. Ohio law does not support that claim.

**IV.    Because the statute of limitations precludes an action for all of the alleged breaches prior to May 24, 1991, the portion of the claim for rents accruing before May 24, 1991 must be dismissed.**

The statute of limitations for breach of a written contract is fifteen years. Ohio Rev. Code Ann. § 2305.06 (West 2006). Because a lease is a contract (*Mark-It Place Foods, Inc. v.*

*New Plan Excel Realty Trust, Inc.,* 804 N.E.2d 979, 992 (Ohio Ct. App. 2004)), the statute of limitations for written contracts applies to the breach of a lease.

When a wrongful act is continuous or repeated, so that the injured party could bring separate actions for damages as they accrue, the statute of limitations runs from the successive dates of the accrual of the damages. *Ott v. Marion Plaza, Inc.*, No. 9-85-27, 1987 Ohio App. LEXIS 8545, at *15 (Ohio Ct. App. Aug. 31, 1987). In *Ott*, a landlord's failure to fully repair a leaking roof was initially a repeated wrong. *Id.,* at *14-*15. When the leaks became continuous, the failure to repair likewise became continuous. *Id.*, at *15.

The fifteen-year statute of limitations applies to plaintiff's suit against S&R and bars plaintiff's claims for any breach of the lease between 1982 and May 24, 1991. As a written contract, the Lease is within the scope of Ohio Rev. Code § 2305.06. Plaintiff prays that the Court finds S&R to have breached the lease "each time rent has come due since the 1982 Assignment." This language indicates that 's claim involves repeated alleged breaches of a contract. It follows that plaintiff can bring an action upon any alleged breach of the Lease no later than fifteen years after each date on which rent was due and was not paid.

In sum, because at least fifteen years have elapsed since May 24, 1991, to the date on which date plaintiff filed its complaint, and because plaintiff seeks recovery for alleged breaches of a repeated nature, the court should dismiss all portions of plaintiff's claim for damages accruing prior to May 24, 1991.

## CONCLUSION

For the foregoing reasons above in Sections I, II, and III of S&R's Law and Argument, S&R respectfully requests that this Court grant Defendant's Motion to Dismiss Plaintiff's Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can

be granted.  Alternatively, for reasons stated above in Section IV of S&R's Law and Argument, S&R respectfully requests that this Court dismiss all claims against S&R accruing before May 24, 1991.

Respectfully submitted,

/s/ Stephen D. Williger
Stephen D. Williger (0014342)
Gary L. Walters (0071572)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio  44114-1291
(216) 566-5500
(216) 566-5800 – Fax
Stephen.Williger@ThompsonHine.com
Gary.Walters@ThompsonHine.com

*Attorneys for Defendant*
*S & R Playhouse Realty Co.*

**CERTIFICATE OF SERVICE**

A copy of the foregoing *Defendant's Motion to Dismiss Plaintiff's Complaint* was filed electronically this 11th day of August, 2006.  Parties will receive notice through the Court's electronic filing system.

/s/ Stephen D. Williger
One of the Attorneys for Defendant
S & R Playhouse Realty Co.