**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| _____ )  | |
| 216 JAMAICA AVENUE, LLC, ) | Civil Action No. 06-1288 |
| ) | |
| Plaintiff, ) | (Judge Boyko) |
| ) | |
| v. ) | |
| ) | |
| S & R PLAYHOUSE REALTY CO., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

James B. Niehaus (0020128)
jniehaus@frantzward.com
Christopher G. Keim (0067117)
ckeim@frantzward.com
FRANTZ WARD LLP
2500 Key Center
127 Public Square
Cleveland, Ohio 44114-1230
216-515-1660
216-515-1650 (fax)

Charles J. Cooper
ccooper@cooperkirk.com
David H. Thompson
dthompson@cooperkirk.com
David Lehn
dlehn@cooperkirk.com
COOPER & KIRK, PLLC
555 Eleventh Street NW
Suite 750
Washington, DC 20004
(202) 220-9600
(202) 220-9601 (fax)

November 14, 2006

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ..............................................................................................................1

COUNTER STATEMENT OF FACTS ..............................................................................2

ARGUMENT ......................................................................................................................2

I.      The Lease Sets the Rent Amount at 1,693 Ounces of Pure Gold per Year .........................3

II.     The Gold Clause Is Valid and Enforceable Against S & R ...............................................5

III.    Plaintiff's Claim Is Not Barred by Merger by Deed or Estoppel by Deed ......................10

        A.     Merger by Deed .................................................................................................11

        B.     Estoppel by Deed ...............................................................................................13

IV.    Plaintiff's Claim Is Not Barred by Waiver ......................................................................17

CONCLUSION..................................................................................................................20

Dec. 2005 estoppel certificate...........................................................................Exhibit A

## TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*37 Robinwood Assocs. v. Health Indus., Inc.*, 547 N.E.2d 1019, 47 Ohio App. 3d 156
    (1988)......................................................................................................................... 11, 13-15

*Allenbaugh v. City of Canton*, 28 N.E.2d 354, 137 Ohio St. 128 (Ohio 1940) ............................18

*Bahner's Auto Parts v. Bahner*, No. 97CA2538, 1998 Ohio App. LEXIS 3453
    (June 23, 1998)...........................................................................................................................18

*Bell v. Studdard*, 141 S.E.2d 536 (Ga. 1965)..............................................................................15

*Brunner v. Armbust*, No. CA83-01-002, 1983 Ohio App. LEXIS 15848 (Nov. 21, 1983)...........14

*Butler v. Horwitz*, 74 U.S. 258 (1869) ...........................................................................................4

*Charles A. Burton, Inc. v. Durkee*, 109 N.E.2d 265, 158 Ohio St. 313 (Ohio 1952) ...................9

*Davis v. Difilippo*, No. 95CA0046, 1996 Ohio App. LEXIS 1141 (Mar 27, 1996).....................12

*Dennistown, Wood & Co. v. Merchant's Bank*, 2 Ohio Dec. Rep. 24, 1858 Ohio Misc.
    LEXIS 104 (Super. Ct. 1858) ..................................................................................................15

*Ed Wolf, Inc. v. National City Bank*, No. 68898, 1997 Ohio App. LEXIS 237 (Jan. 23, 1997)....19

*Fay Corp. v. Frederick & Nelson Seattle, Inc.*, 896 F.2d 1227 (9th Cir. 1990) .........................6-7

*Frank B. Thomas Trust v. Imperial 400 Nat'l, Inc.*, No. 14202, 1990 Ohio App. LEXIS
    1242 (Mar. 28, 1990) .......................................................................................................... 16-18

*Fuller v. Drenberg*, 209 N.E.2d 417, 3 Ohio St. 2d 109 (Ohio 1965)........................................ 12

*Gatts v. E.G.T.G.*, 470 N.E.2d 425, 14 Ohio App. 3d 243 (1983).................................................15

*Gaul v. Olympia Fitness Ctr., Inc.*, 623 N.E.2d 1281, 88 Ohio App. 3d 310
    (1993)..........................................................................................................................................19

*Grand Avenue Partners, L.P. v. Goodan*, 25 F. Supp. 2d 1064 (C.D. Cal. 1996), *aff'd*, 160 F.3d
    580 (9th Cir. 1998).......................................................................................................................8

*Grant-Holub Co. v. Goodman*, 156 N.E. 151, 23 Ohio App. 540 (1926).......................................6

*Guida v. Thompson*, 160 N.E.2d 153, 80 Ohio L. Abs. 148 (C.P. 1957) .....................................15

*Hatry v. Painesville & Youngstown Ry.* Co., 1 Ohio Cir. Dec. 238, 1886 Ohio Misc.
    LEXIS 23 (Ohio Ct. App. 1886)...........................................................................................15, 17

*Heifner v. Swaney*, No. 1-91-82, 1992 Ohio App. LEXIS 4177 (Aug. 17, 1992)..........................5

*HUB Bldg. & Loan Co. v. Stone*, 28 Ohio L. Abs. 82, 1938 Ohio Misc. LEXIS 979
    (Ohio Ct. App. Oct. 28, 1938) ...................................................................................................19

*In re All Kelley & Ferraro Asbestos Cases*, 821 N.E.2d 159, 104 Ohio St. 3d 605
    (Ohio 2004)...................................................................................................................................5

*In re Potts*, No. 85-3764, 1986 U.S. App. LEXIS 32517 (6th Cir. Oct. 22, 1986) .......................14

*K.B. Oil Co. v. Ford Motor Credit, Inc.*, 811 F.2d 310 (6th Cir. 1987) .........................................19

*Katz v. M.M.B. Co.*, No. 50579, 1986 Ohio App. LEXIS 6734 (May 8, 1986)............................19

*Kelly v. Medical Life Ins. Co.*, 509 N.E.2d 411, 31 Ohio St. 3d 130 (Ohio 1987) .........................9

*Lewis & Michael Moving & Storage, Inc. v. Stofcheck Ambulance Servs., Inc.*,
No. 05AP-662, 2006 Ohio App. LEXIS 3775 (July 25, 2006)................................................19

*Lorenzen, Inc. v. North Star Recycling Co.*, No. 95-577, 1996 Ohio Misc. LEXIS 77
(C.P. Aug. 13, 1996) ............................................................................................................12, 15

*Mark-It Place Foods, Inc. v. New Plan Excel Reality Trust, Inc.*, 804 N.E.2d 979,
156 Ohio App. 3d 65 (2004) ...................................................................................................9, 20

*Nebel, Inc. v. Mid-City Nat'l Bank of Chicago*, 769 N.E.2d 45 (Ill. App. Ct. 2002) .....................5

*Neil v. Board of Trustees*, 31 Ohio St. 15 (1876) .............................................................................9

*Newman v. Group One*, 2005 Ohio 1582, 2005 Ohio App. LEXIS 1529 (Mar. 24, 2005) .....11, 13

*Ohio Beef Processors, Inc. v. Consolidated Packers Mktg., Inc.*, No. 2310, 1987 Ohio App.
LEXIS 8880 (Sept. 23, 1987) .................................................................................................20

*Otto v. Keegan*, No. 13-82-26, 1983 Ohio App. LEXIS 13003 (May 18, 1983).......................... 15

*Perry v. United States*, 294 U.S. 330, 347 (1935) ..........................................................................3

*Rhodes v. Rhodes Indus., Inc.*, 595 N.E.2d 441, 71 Ohio App. 3d 797 (1991) .............................. 9

*Smith v. Harrison*, 42 Ohio St. 180, 1884 Ohio LEXIS 242 (1884)..............................................12

*Southgate Woods Apartments v. Lanier*, No. L-83-189, 1983 Ohio App. LEXIS 11994
(Nov. 25, 1983)........................................................................................................................20

*Tie Bar, Inc. v. Buffalo Mall, Inc.*, Nos. 78CA95-78CA100, 1979 Ohio App. LEXIS 8786
(Apr. 30, 1979)..........................................................................................................................19

*Trostel v. American Life & Cas. Ins. Co.*, 92 F.3d 736 (8th Cir. 1996)...................................... 8-9

*Trostel v. American Life & Cas. Ins. Co.*, 168 F.3d 1105 (8th Cir. 1999)............................ 3-7, 11

*Turner v. Fox*, 2005 Ohio 677, 2005 Ohio App. LEXIS 694 (Feb. 22, 2005) .............................15

*Ward v. Flex-O-Tube Co.*, 194 F.2d 500 (6th Cir. 1952) .............................................................15

*Wells Fargo Bank v. Bank of America*, 38 Cal. Rptr. 2d 521 (Cal. Ct. App. 1995) .....................6

*White Co. v. Canton Transp. Co.*, 2 N.E.2d 501, 131 Ohio St. 190 (1936)...................................18

*Winston Sav. & Loan Co. v. Eastfork Trace, Inc.*, 2002 Ohio 2600, 2002 Ohio App.
LEXIS 2730 (May 28, 2002) ....................................................................................................9

*Young v. Hargrave's Administrator*, 7 Ohio 63 (1836) ..................................................................7

## **Statutes**

Gold Standard Act, ch. 41, § 1, 31 Stat. 45 (1900).........................................................................4

## Treatises

Williston on Contracts § 39:20.................................................................................................20

## INTRODUCTION

As we explained in our opening brief, the lease at issue ran for 99 years and included an option to renew for up to another 99 years, and thus the landlord understandably insisted upon protection against inflation. The parties accomplished this by specifying that the annual rent at $35,000 "shall be paid in gold coin of the United States of the present standard of weight and fineness." *See* Pl.'s Mem. in Supp. of Mot. of Pl. 216 Jamaica Avenue LLC for Summ. J. ("Pl.'s Opening Br."), Ex. A ("Lease") at 2. The result was that the actual annual rent—whether in 1912, 2006, or 2110—is 1,693 ounces of gold. In effect, the parties indexed the rent amount to the price of gold, which was a common practice in 1912, the time of contract formation.

In an attempt to stabilize the economy during the Great Depression, Congress suspended the operation of all gold clauses by Joint Resolution in 1933. The Joint Resolution permitted the lessee to discharge its rent obligation under the Lease by paying only $35,000 in paper currency rather than 35,000 gold coin dollars as defined in 1912. As a result, the lessee received a windfall. In 1977, Congress amended the Joint Resolution to permit use of gold clauses in any "obligation" that "issued" after October 27, 1977. In May 1982, the Halle brothers' successor-in-interest assigned the Lease to defendant, S&R Playhouse Realty Co. ("S&R"), and S&R "assume[d] and agree[d] to perform **each and all** of the covenants, obligations, and engagements of the Assignor and lessee under said Lease." Pl.'s Opening Br., Ex. B ("1982 Assignment and Assumption") at 2 (emphasis added). Through this transaction, the dormant gold-coin obligation in the Lease issued against S&R, thereby binding S&R to pay 1,693 ounces of gold per year. Because S&R subleases the building on the premises at market rates, it has reaped an enormous

1

windfall over the past 24 years as a result of its breaches.[1]

## COUNTER STATEMENT OF FACTS

It should be noted that the documents attached to S&R's opening summary judgment brief as Exhibit B do **not** include the 1982 Assignment and Assumption at issue here, S&R's assertion to the contrary notwithstanding. *See* Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Opening Br.") at 2. The documents contained in S&R's Exhibit B pertain to a different property and therefore are irrelevant to this case.

## ARGUMENT

In order to succeed on its motion for summary judgment, S&R must "show that there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." FED R. CIV. P. 56(c). S&R has not met this burden. There are no genuine issues of material fact in this case because the parties have already stipulated to all of the material facts. *See* Parties' First Submission of Joint Stipulated Facts ("Joint Stipulations").[2] But, for the myriad reasons discussed below and in our opening summary judgment brief, all of S&R's arguments fail as a matter of law, and **plaintiff** is entitled to judgment as a matter of law.

---

[1] S&R mischaracterizes slightly the Amended Complaint when it says that plaintiff "abandon[ed] its retrospective claim for damages. The Amended Complaint seeks a declaration that future rent payments are to be escalated and paid in gold." Mem. in Supp. of Def.'s Mot. for Summ. J. at 1. Plaintiff withdrew its damages claim only with respect to rent obligations that came due prior to February 2006, when plaintiff purchased the underlying property and became lessor. Plaintiff did **not** withdraw its damages claim with respect to rent obligations that have come due since February 2006. Specifically, S&R has failed to comply with the plain terms of the Lease for the quarterly rental payments due April 1, July 1, and October 1, 2006. *See* Complaint, prayer for relief 1-3; Parties' First Submission of Joint Stipulated Facts ¶ 3.

[2] The facts that S&R attempts to develop through the affidavits of Robert Quesada, William Ross, and Thomas R. Ketterl, *see* Def.'s Opening Br. Exs. C, J; Def.'s *Instanter* Mot. for Leave to File Supplement to Def.'s Mot. for Summ. J., are, as explained further below, immaterial because they address irrelevant issues, are inadmissible parol evidence, or both. But if the Court finds that any of this factual material may be material to the parties' summary judgment motions, we respectfully request the opportunity to move under Rule 56(f) for the opportunity to depose the affiants and submit supplemental briefing prior to a decision on the merits.

# I.      The Lease Sets the Rent Amount at 1,693 Ounces of Pure Gold per Year.

S&R contends that the Lease requires payment of nothing more than $35,000 in currency for the duration of its tenancy. Def.'s Opening Br. at 5. Such an interpretation is utterly implausible in light of the plain terms of the Lease and the myriad, uniform judicial decisions—from the Supreme Court and federal and state courts of appeal—dealing with gold clauses, all of which S&R ignores completely. Because we anticipated in our opening brief all of S&R's arguments on this point, we provide below only brief responses to S&R's arguments and references to the fuller discussion in our opening brief.

A.      S&R's argument rests on the premise that the parties included a gold clause "[f]or unspecified reasons." Def.'s Opening Br. at 6. But the litany of gold clause decisions cited in our opening brief demonstrates conclusively that the reason that the parties to this Lease (and every other contract with a gold clause) included a gold clause was to hedge against currency inflation. *See* Pl.'s Opening Br. at 1 (citing, *e.g.*, *Trostel v. American Life & Cas. Ins. Co.*, 168 F.3d 1105, 1106-07 (8th Cir. 1999), 5 & n.5 (citing, *e.g.*, *Perry v. United States*, 294 U.S. 330, 347 (1935)). S&R points out that the Lease does not contain "any mention of inflation or any reference to potential escalations (or diminutions) in the value of gold." Def.'s Opening Br. at 6. Parties to a lease, of course, are not required to state the **reason** for their agreement in order for the agreed-upon terms to be binding as written. In any event, in light of these decisions, there can be no doubt about the purpose of the gold clause in 1912 or today.

B.      Similarly, S&R contends that the Lease does not provide "any mechanism . . . for the establishment of current gold values or for the resolution of disputes about valuation." Def.'s Opening Br. at 6. On the contrary, the Lease states that the gold due shall be in the "present standard of weight and fineness." Lease at 2. This provision completely settles all questions

about valuation. The "present standard of weight and fineness" in 1912 was defined with certainty and precision by federal statute. Once the standard of weight and fineness is set, rudimentary arithmetic yields the amount of gold that is due pursuant to a gold clause. *See Trostel v. American Life & Cas. Ins. Co.*, 168 F.3d 1105, 1108-09 (8th Cir. 1999). Here, the amount due is 1,693 ounces of gold per year, or 423 ounces of gold per quarter.[3] And there is no need to ascertain the "current" value of gold in order to comply with the gold clause because the standard of weight and fineness in 1912 fixed the amount of gold due for the duration of the Lease.[4] Courts have repeatedly and uniformly recognized that gold clauses operate in precisely this fashion. *See* Pl.'s Opening Br. at 1, 3-4, 6 & nn.6, 7.

C.      S&R points to the Lease's escalation of rent from $10,000 per year in the first year to $35,000 per year in the eleventh year and thereafter as evidence that if the parties had "intended some further escalation in rent, they knew how to use words to express their intentions in a clear manner." Def.'s Opening Br. at 6-7. Indeed, the parties knew how to express a desire to adjust the rent for inflation, and they did so by including a gold clause, which they set down in the conventional manner of the time, as the numerous precedents that we cited previously illustrate.

---

[3] The Gold Standard Act of 1900 provided that "the dollar consisting of twenty-five and eight-tenths grains of gold nine-tenths fine . . . shall be the standard unit of value" for all gold coins of the United States. Gold Standard Act, ch. 41, § 1, 31 Stat. 45, 45 (1900). Accordingly, one gold coin dollar in 1912 contained 23.22 grains of pure gold, or 9/10ths of the coin's total weight of 25.80 grains. Consequently, paying $35,000 in gold coin was tantamount to paying 812,700 grains of pure gold, that is, 35,000 multiplied by 23.22. Because there are 480 grains of gold in an ounce, the gold clause "in substance and legal effect," *Butler v. Horwitz*, 74 U.S. 258, 260 (1869), requires the lessee to pay 1,693.125 ounces of gold per year, or 812,700 divided by 480. The quarterly payment owed, therefore, is 423.281 ounces of gold, or 1,693.125 divided by 4. The same result can be obtained through the shortcut of dividing the annual rent in gold coin dollars, or 35,000, by the price of gold in 1912, or $20.671835 per ounce, which yields 1,693.1249 ounces per year. *See* Pl.'s Opening Br. at 3-4 & n.3.

[4] Of course, the parties are free to agree that the lessee has discharged its rent obligation by tendering currency in an amount equal to 1,693 ounces of gold at the **current** price of gold, but such a tender is neither required nor permitted by the terms of the **Lease**.

Moreover, understanding this escalation clause to be a hedge against inflation is absurd because it would reflect an assumption that, after the first 10 years of the Lease, inflation would be **0 percent over the next 188 years**. Finally, S&R's contention that the presence of this escalation clause somehow precludes the gold clause from operating as a hedge against inflation in the manner we have described is inconsistent with multiple judicial decisions, including the Eight Circuit's decision in *Trostel* and the Illinois Appellate Court's decision in *Nebel, Inc. v. Mid-City Nat'l Bank of Chicago*, 769 N.E.2d 45 (Ill. App. Ct. 2002). *See* Pl.'s Opening Br. at 7.

As S&R seems to view the gold clause, the lessee is only required to tender the amount of gold equal to $8,750, that is, a quarter of $35,000, **on the date quarterly rent is due**. Thus, if the price of gold is $600 per ounce when S&R's next quarterly rental payment is due, S&R would be obligated to tender 14.58 ounces of gold.[5] If S&R's view were correct, however, the gold clause would serve no function whatsoever, and the Supreme Court and the numerous other courts referred to in our opening brief would have analyzed the gold clauses before them incorrectly. But it is well-established that "a court must construe the agreement to give effect to every provision in the agreement." *In re All Kelley & Ferraro Asbestos Cases*, 821 N.E.2d 159, 168, 104 Ohio St. 3d 605 (2004); *Heifner v. Swaney*, , No. 1-91-82, 1992 Ohio App. LEXIS 4177, at *6 (Aug. 17, 1992). This teaching is particularly compelling when the clause at issue— governing the amount of rent due—is central to the bargain.

**II.     The Gold Clause Is Valid and Enforceable Against S&R.**

Congress declared all gold clauses unenforceable through a Joint Resolution in 1933, but later amended the Joint Resolution to permit gold clauses in an obligation "issued" after October 27, 1977. *See* Pl.'s Opening Br. at 2, 4; Def.'s Opening Br. at 7. S&R claims that the gold

---

[5] $35,000 per year divided by 4 quarters per year, divided by $600 per ounce.

clause was not "issued" after October 27, 1977, because the 1982 Assignment and Assumption did not effect a novation of the Lease. S&R's arguments, however, are foreclosed by the unambiguous terms of the Lease and the 1982 Assignment and Assumption, by long-standing Ohio common law, and by numerous decisions addressing gold clauses, notably the Eighth Circuit's decision in *Trostel*. Again, we anticipated in our opening brief all of S&R's arguments on this point, and so we provide below only brief responses to S&R's arguments and references to the fuller discussion in our opening brief.

A.      S&R first attempts halfheartedly to cast doubt on the proposition that a post-October 27, 1977, novation of the Lease is sufficient to resurrect a dormant gold clause. Def.'s Opening Br. at 8 ("[S]ome courts outside Ohio have held that the novation of a pre-existing contract may under narrow circumstances constitute 'entering into' a new obligation."). In fact, an uncontradicted line of authoritative decisions, including the Eighth Circuit's decision in *Trostel* and the Ninth Circuit's decision in *Fay Corp. v. Frederick & Nelson Seattle, Inc.,* 896 F.2d 1227 (9th Cir. 1990), has established, without qualification, that a post-October 27, 1977, novation of a lease containing a dormant gold clause is sufficient to resurrect the gold clause against the assignee. *See* Pl.'s Opening Br. at 8-10. Consistent with the prevailing common law elsewhere, a novation under Ohio law entails the "making of a valid new contract." *Grant-Holub Co. v. Goodman*, 156 N.E. 151, 153, 23 Ohio App. 540 (1926); *see* Pl.'s Opening Br. at 17 n.12. Therefore, a post-October 27, 1977, novation under Ohio law is sufficient to resurrect the gold clause, just as it was in *Trostel*, *Fay*, *Wells Fargo Bank v. Bank of Am.*, 38 Cal. Rptr. 2d 521, 525 (Cal. Ct. App. 1995), and other cases.

B.      S&R then posits several supposed reasons why the 1982 Assignment and Assumption did not effect a novation of the Lease or why such a novation did not include the gold clause. None

of these reasons is availing.

1.      Pointing to the clause of the 1982 Assignment and Assumption in which S&R stated that it assumed the Lease's obligations "to be observed and performed after the date hereof," S&R argues that the 1982 Assignment and Assumption did not result in S&R's being substituted for the assignor because "any obligations assignor had continued to exist after execution of the 1982 Assignment."  Def.'s Opening Br. at 10.  This argument is untenable in light of the decisions in *Trostel* and *Fay*, since the leases at issue there contained substantially similar language.  *See* Pl.'s Opening Br. at 8-9, 11.  Moreover, for a novation to occur, the assignee need only assume all the obligations going forward—there is no need to also assume all the obligations that have already accrued against the assignor.  And here, S&R unambiguously assumed all the obligations going forward, as S&R concedes.  In any event, this clause is irrelevant here because there were no outstanding past obligations for S&R to assume.  *See* Pl.'s Opening Br. at 11-12.

2.      S&R argues that the old Lease was not extinguished because "the Lease releases an assignor only from 'personal liability' [and] [m]ere release of 'personal liability' is not equivalent to release of all liability."  Def.'s Opening Br. at 10 (citation omitted).  But under Ohio law, the Lease in effect discharged the assignor of all liability under the Lease upon the 1982 Assignment and Assumption.  *See* Pl.'s Opening Br. at 12-14.  Ordinarily, an assignor of a lease is relieved automatically of principal liability but not of secondary, or surety, liability.  *See* Pl.'s Opening Br. at 13.  In the context of a lease assignment, the term "personal liability" is synonymous with surety liability.  *See* Pl.'s Opening Br. at 13-14.  Thus, the practical effect of the Lease's discharge of "all personal liability" upon assignment was to relieve the assignor of all remaining liability under the Lease.  S&R cites *Young v. Hargrave's Administrator*, 7 Ohio 63 (1836), but that decision is silent on whether a discharge of "all personal liability" under a

lease extinguishes all of the assignor's remaining obligations.

Moreover, S&R's argument is once again flatly inconsistent with the Eighth Circuit's decision in *Trostel*, in which the lease discharged the assignor only of "any further personal liability." *Trostel v. American Life & Cas. Ins. Co.*, 92 F.3d 736, 738 (8th Cir. 1996). And the decision in *Grand Avenue Partners, L.P. v. Goodan*, 25 F. Supp. 2d 1064 (C.D. Cal. 1996), *aff'd*, 160 F.3d 580 (9th Cir. 1998), which S&R also discusses, Def.'s Opening Br. at 10-11, confirms the conclusion that the Lease here discharged all of the assignor's remaining liability. In that case, the lease discharged only "direct" liability, which the court distinguished from "surety" liability. Thus, whereas the assignor in *Grand Avenue* retained surety liability after assignment, so that there was no novation, the discharge of "all personal liability" here completely extinguished all of the assignor's remaining liability. *See* Pl.'s Opening Br. at 8, 16.

3.      Pointing to past actions, S&R asserts that the parties to the 1982 Assignment and Assumption did not intend to include the gold clause in the Lease because it has paid only $35,000 in currency since the 1982 Assignment and Assumption. Def.'s Opening Br. at 8-9, Ex. C (Aff. of Robert Quesada ¶ 4); Joint Stipulation ¶ 3. But the Lease and the 1982 Assignment and Assumption evince on their face—in clear and unambiguous terms—the parties' intention that they be bound by the gold clause, and thus evidence of past actions is irrelevant. *See* Pl.'s Opening Br. at 14-16.[6] Under venerable principles of Ohio law, "[t]he intent of the parties to a

---

[6] The Lease requires as a condition of assignment that the assignee "expressly assume the lessees['] engagements hereunder," one of which is, of course, the gold clause. Lease at 4. The Lease also provides that "assigns . . . shall become such in accordance with the terms and conditions hereof, with like force and effect in all respects as the same accrue to and are binding upon said original . . . lessees." Lease at 6. The 1982 Assignment and Assumption states that S&R "assumes and agrees to perform **each and all** of the covenants, obligations, and engagements" under the Lease, and took the rights under the Lease "subject, nevertheless, to the payment of the rents and the observance of **all** and singular the covenants, conditions, terms, and agreements in said Lease contained." 1982 Assignment and Assumption at 2 (emphases added).

contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v.*

*Medical Life Ins. Co.*, 509 N.E.2d 411, 413, 31 Ohio St. 3d 130 (1987). Accordingly, a "written

contract must be construed and interpreted from its four corners without consideration of parol

evidence, i.e., evidence that would contradict or vary the terms of the contract." *Winston Sav. &*

*Loan Co. v. Eastfork Trace, Inc.*, 2002 Ohio 2600, 2002 Ohio App. LEXIS 2730, at *5 (May 28,

2002).[7] Therefore, whatever evidence S&R may have that it has paid less than required under

the gold clause is inadmissible on the question of the meaning of the terms of the Lease and the

1982 Assignment and Assumption. Indeed, in *Trostel*, the Eighth Circuit rejected reliance on

"affidavits to the effect that [the defendant] did not intend to assume an obligation to pay rent in

gold" because, as here, the defendant's "intent . . . to be bound" by the terms of the lease it

assumed—"which included an explicit gold clause"—was "expressed in clear and unambiguous

language." 92 F.3d at 742-43 (explaining that "unless there is ambiguity, intent is determined by

what the contract itself says" and concluding that "the contract thus should be enforced as

written").

Moreover, even if evidence of past actions were admissible to determine the meaning of

the lease, the past actions cited by S&R are irrelevant. S&R's evidence pertains to the conduct

of the parties **after** the 1982 Assignment and Assumption—some 70 years after the Lease was

---

[7] *See also, e.g.*, *Mark-It Place Foods, Inc. v. New Plan Excel Reality Trust, Inc.*, 804 N.E.2d 979, 994, 156 Ohio App. 3d 65 (2004) ("When a contract is unambiguous, intentions not expressed by writing in the contract are deemed to have no existence and cannot be shown by parole evidence."); *Rhodes v. Rhodes Indus., Inc.*, 595 N.E.2d 441, 445-46, 71 Ohio App. 3d 797 (1991) ( "Generally, parol evidence is inadmissible to contradict the terms of an unambiguous contract . . . . The salutary effects of barring evidence of prior negotiations which vary or contradict the express language of a written agreement . . . ."); *Charles A. Burton, Inc. v. Durkee*, 109 N.E.2d 265, 270-71, 158 Ohio St. 313 (Ohio 1952) (refusing to consider oral evidence to alter "[t]he language of the written contract" that was "clear and unambiguous"); *Neil v. Board of Trustees*, 31 Ohio St. 15, 19 (Ohio 1876) (invoking "the familiar rule that excludes all oral testimony offered to vary or control the written stipulations of the parties").

formed. Thus, that evidence saying nothing about the intention of the original parties to the Lease. If relevant to this case at all, it would pertain to whether the gold clause has been waived, which we discuss in detail below.

Other alleged facts S&R adduces fail to support its argument for the same reasons. S&R notes that plaintiff purchased the property for $845,000. Def.'s Opening Br. at 2, Ex. C (Aff. of Robert Quesada ¶ 2); Joint Stipulation ¶ 2. This evidence is irrelevant because it pertains to an event that occurred long after the Lease and 1982 Assignment and Assumption were executed and did not even involve the lessee. S&R also notes that the Halle Building "has suffered a negative cash flow in each of the past four years, and is projected to continue doing so for at least the next two years." Def.'s Opening Br. at 3 n.2, Ex. J (Aff. of William Ross ¶¶ 2-4). Again, this evidence is irrelevant because it pertains to events that occurred long after the Lease and 1982 Assignment and Assumption were executed and does not involve the lessor. Moreover, compliance with the Lease, and in particular with the gold clause, is not conditioned on S&R's profitability. And even if plaintiff's purchase price or S&R's cash flows were somehow relevant to the meaning of the Lease, such evidence would be inadmissible parol evidence.[8]

## III.    Plaintiff's Claim Is Not Barred by Merger by Deed or Estoppel by Deed.

Invoking the doctrines of merger by deed and estoppel by deed, S&R contends that the deed by which the former owner of the underlying land conveyed the property to plaintiff ("Deed") bars enforcement of the gold clause as written. Def.'s Opening Br. at 14. But common

---

[8] Through a separate motion, S&R has attempted to introduce the affidavit of Thomas R. Ketteler. For reasons we explain elsewhere, Mr. Ketteler's affidavit is not probative of any issue in this case and constitutes inadmissible parol evidence on the question of the meaning of the Lease. *See* 216 Jamaica's Opp'n to Def.'s *Instanter* Mot. for Leave to File Supplement to Def.'s Motion for Summ. J. at 2-4. In any event, should the Court grant S&R's motion to supplement its brief with Mr. Ketteler's affidavit, then we respectfully request the opportunity to move under Rule 56(f) for the opportunity to depose Mr. Ketteler and submit supplemental briefing before the Court renders its decision on the merits.

sense demonstrates that neither of these doctrines is capable of altering the terms of the Lease. If

S&R were correct, then plaintiff could just as easily have **increased** the rent or otherwise altered

the terms of the Lease at its whim merely by including the new terms in the Deed. Having had

no involvement in the land conveyance whatsoever, S&R would, of course, hardly be bound by

such a scheme. Similarly, S&R cannot use the Deed to alter the terms of the Lease to its

advantage. As the Eighth Circuit said in *Trostel*, "one party to a contract cannot alter its terms

unilaterally or without assent of the other party"—and specifically, the "lessee side of the ledger

[cannot] affect the rights of the lessors . . . on the other side of the lease." 168 F.3d at 1109. As

explained below, examination of these arcane doctrines confirms common sense. In fact, neither

of these doctrines even reaches the Lease.

### A. Merger by Deed.

The doctrine of merger by deed "is merely an application of the contract doctrine of

integration. Under this doctrine, all prior documents are considered to be integrated into the final

contract, and only the provisions contained in the final contract are part of the agreement."

*Newman v. Group One*, 2005 Ohio 1582, 2005 Ohio App. LEXIS 1529, at *9 (Mar. 24, 2005).

Thus, the doctrine applies to bar only enforcement of the underlying purchase contract by a party

to the transaction conveying the land—that is, by the buyer or seller of the land—once the deed

has been delivered and accepted. The doctrine does **not** bar enforcement of agreements that are

collateral to the conveyance. *See id*. at *8 ("[W]hen a deed is delivered and accepted without

qualification, the underlying purchase contract becomes merged into the deed and a cause of

action no longer exists upon the contract."); *37 Robinwood Assocs. v. Health Indus., Inc.*, 547

N.E.2d 1019, 1021, 47 Ohio App. 3d 156 (1988) ("[W]henever a deed is delivered and accepted

'without qualification' pursuant to a sales contract for real property, the contract becomes

merged into the deed and no cause of action upon said prior agreement exists."); *Fuller v. Drenberg*, 209 N.E.2d 417, 417, 419, 3 Ohio St. 2d 109 (1965) (barring buyer's enforcement of provision of underlying purchase contract); *Lorenzen, Inc. v. North Star Recycling Co.*, No. 95-577, 1996 Ohio Misc. LEXIS 77, at \*5-\*6 (C.P. Aug. 13, 1996) (barring seller's enforcement of underlying purchase agreement); *Davis v. Difilippo*, No. 95CA0046, 1996 Ohio App. LEXIS 1141, at \*8 (Mar 27, 1996) (barring buyer's enforcement of underlying purchase contract).[9]

A typical example of the application of the doctrine of merger by deed is the following. A buyer executes a contract with a seller to buy 10 acres of land. At the closing, the seller delivers a deed covering only 9 of those acres, which the buyer accepts. Short of fraud, the buyer cannot now sue the seller for conveying only 9 acres because the agreement to sell 10 acres "merged" into the deed for 9 acres. Thus, the rationale behind the doctrine of merger by deed is to resolve inconsistencies between documents prepared in anticipation of a conveyance , such as a purchase agreement, and the deed effecting the conveyance in favor of the deed. And this is eminently sensible since deeds are public records relied upon by others. That rationale, however, has no application whatsoever in the context of a lease where the lessee is not a party to the purchase agreement or the conveyance.

S&R claims that the Lease merged into the Deed, but both the Lease and the 1982 Assignment and Assumption are plainly collateral to Halle Cleveland's conveyance of the land to plaintiff. Neither agreement was prepared in contemplation of that conveyance; indeed, the Lease was executed 94 years before the conveyance and the 1982 Assignment and Assumption preceded the conveyance by 24 years. Furthermore, S&R (as well as all of its predecessor

_____

[9] In addition to the authorities cited in the text, S&R also cites *Smith v. Harrison*, 42 Ohio St. 180, 1884 Ohio LEXIS 242 (Ohio 1884), but the court there held only that an original lessor's successor-in-interest can collect the rent due under a lease. *Smith* has nothing to do with the doctrine of merger by deed whatsoever.

lessees), though a party to the Lease and the 1982 Assignment and Assumption, is a stranger to the conveyance effected by the Deed, which was solely between Halle Cleveland and plaintiff. S&R cites no authority for extending the doctrine of merger by deed to apply to a contract that was not prepared in contemplation of the transaction effected by the deed. Nor does it cite authority for extending the doctrine to apply to a contract to which a stranger to the conveyance transaction is a party. Thus, the Lease and the 1982 Assignment and Assumption were wholly collateral to the conveyance effected by the Deed, and the doctrine of merger by deed consequently has no application to them.[10]

Finally, the doctrine of merger by deed is only a default rule, such that, "if it can be shown that the parties actually intended that the provisions of a prior agreement continue in force, then the provisions do so continue." *Newman*, 2005 Ohio App. LEXIS 1529, at * 9. Here, the deed expressly provides that it is "subject to" the Lease. *See* Def.'s Opening Br., Ex. D (Deed & Schedule A ("Deed")) at 1. Thus, any merger that might otherwise have occurred was specifically precluded by the express terms of the Deed.

### B. Estoppel by Deed.

The doctrine of estoppel by deed "precludes a party from denying a certain fact recited in a deed executed by or accepted by him in an action brought upon the instrument." *Robinwood*, 547 N.E.2d at 1022. In S&R's view, one of the facts recited in the Deed that plaintiff is precluded from denying is that the rent is only $35,000 per year. S&R reasons as follows: First, the Deed provides that the property conveyed to plaintiff is "subject to the matters set forth in

---

[10] S&R appears to argue that merely because a covenant to pay rent runs with the land, the Lease is merged into the Deed. Def.'s Opening Br. at 14. Although it is necessary that the covenant run with the land in order for it to merge, that is not sufficient for merger. As discussed in the text, the covenant must also be set forth in an agreement that is integral, not collateral, to the transaction conveying the land.

Schedule A." Def.'s Opening Br. at 13; Deed at 1. Second, Schedule A lists an estoppel certificate dated December 2001. Deed at 3. Third, this certificate states, "The base annual rent under the Lease is $35,000, exclusive of taxes and other items of additional rental and all other amounts payable under the Lease." Def.'s Opening Br. at 13, Ex. E (Dec. 2001 estoppel certificate ("2001 Certificate")) at 2. The 2001 Certificate also states, "To the best of the knowledge of [plaintiff's predecessor-in-interest], there has occurred no default under the Lease and no event has occurred which, with the passage of time or the giving of notice or both will constitute a default on the part of the Lessee under the Lease." Def.'s Opening Br. at 13; 2001 2001 Certificate at 2. This argument fails in numerous ways:

1.      S&R has not argued, let alone offered any evidence suggesting, that S&R relied to its detriment in any way on the Deed's reference to the 2001 Certificate. Estoppel by deed may "be invoked when a party has, by his representations or conduct, **caused another party to rely to his detriment on such representations** or conduct." *Brunner v. Armbust*, No. CA83-01-002, 1983 Ohio App. LEXIS 15848, at *8 (Nov. 21, 1983) (emphasis added); *see also In re Potts*, No. 85-3764, 1986 U.S. App. LEXIS 32517, at *10 (6th Cir. Oct. 22, 1986). Given that the Deed was executed long after S&R became lessee under the Lease, and that S&R has specifically represented that it has never paid more than $35,000 a year since it assumed the Lease, *see, e.g.*, Def.'s Opening Br. at 3, any claim that S&R changed its position in reliance on the deed is highly implausible.

2.      This is not "an action brought upon the instrument," that is, for violation of the **deed**. *Robinwood*, 547 N.E.2d at 1022. Rather, this is an action brought exclusively upon the Lease, namely, for breach of the gold clause. Indeed, as discussed above, the Lease is wholly collateral to the Deed. As with merger by deed, " '[t]he estoppel of a deed will be limited to actions based

upon it or growing out of the transaction in which it was executed and does not extend to a collateral action where the cause is different.' " *Bell v. Studdard*, 141 S.E.2d 536, 541 (Ga. 1965) (citing 2 HERMAN, ESTOPPEL & RES JUDICATA 714 § 580); *see Robinwood*, 547 N.E.2d at 1022; *Otto v. Keegan*, No. 13-82-26, 1983 Ohio App. LEXIS 13003, at *8 (May 18, 1983); *Lorenzen*, 1996 Ohio Misc. LEXIS 77 at *6.[11]

3.     Indeed, plaintiff could not have brought an action against S&R "upon the deed" even if it had wanted to because S&R was not a party to the conveyance of land effected by the Deed and accordingly S&R could not have been bound by the transaction.  This reality provides a further reason why S&R's estoppel argument fails: "estoppels by deed are mutual."  *Hatry v. Painesville & Youngstown Ry.* Co., 1 Ohio Cir. Dec. 238, 1886 Ohio Misc. LEXIS 23, at *7 (Ct. App. 1886). That is, one "who could not have been bound by the transaction . . . could not rely on it as an estoppel, by deed or record."  *Dennistown, Wood & Co. v. Merchant's Bank*, 2 Ohio Dec. Rep. 24, 1858 Ohio Misc. LEXIS 104, at *3 (Super. Ct. 1858); *see also Ward v. Flex-O-Tube Co.*, 194 F.2d 500, 503 (6th Cir. 1952) (estoppel by deed is "ordinarily limited to the parties to an instrument of conveyance").[12]

4.     In any event, regardless of whether estoppel by deed could theoretically apply in a case such as this one, nothing in the Deed can reasonably be read to bar plaintiff from enforcing the gold clause.  The Deed does not purport to modify or alter the terms of the Lease.  On the

---

[11] According to the classic application of the doctrine, "where a grantor of real estate who has a defective title, or no title, conveys with a covenant of warranty, or its equivalent, and subsequently acquires the title, then such after-acquired title will inure to the benefit of the grantee by estoppel."  *Gatts v. E.G.T.G.*, 470 N.E.2d 425, 429, 14 Ohio App. 3d 243 (1983).

[12] S&R cites *Turner v. Fox*, 2005 Ohio 677, 2005 Ohio App. LEXIS 694 (Feb. 22, 2005), which did involve a suit brought against parties who were strangers to the deed.  This case did not, however, hold that the deed had created or modified the defendants' rights.  Rather, it upheld defendants' rights under a separate dedication.  *See id*. at *12-13.  And *Guida v. Thompson*, 160 N.E.2d 153, 80 Ohio L. Abs. 148 (Ohio C.P. 1957), also cited by S&R, did not address estoppel by deed but rather simply refused to consider parol evidence to modify the plain terms of a deed.

contrary, the Deed expressly says that it is "subject to" the Lease, which, of course, includes the gold clause (as well as "subject to" the 1982 Assignment and Assumption, pursuant to which S&R assumed "each and all" of the obligations under the Lease). *See* Deed at 1, 4. And, the terms of the 2001 Certificate, to which the Deed is also "subject," are entirely consistent with the plain terms of the Lease. The 2001 Certificate states that "[t]he base annual rental under the Lease is $35,000." 2001 Certificate at 2. This is consistent with the Lease, which sets the base annual rent at $35,000 and then calls for adjustments to that base amount by virtue of the gold clause. *See Frank B. Thomas Trust v. Imperial 400 Nat'l, Inc.*, No. 14202, 1990 Ohio App. LEXIS 1242, at *2, at *10 (Ct. App. Mar. 28, 1990) (where lease provided that rent be adjusted every ten years to reflect inflation, referring to unadjusted rent as "base rent"). Indeed, the 2001 Certificate states that the "base annual rental" is "exclusive of . . . other items of additional rental and all other amounts payable under the Lease," 2001 Certificate at 2, which can readily be construed to include the enhanced rental payments required by the gold clause.[13]

Even if the certificate and the Lease were inconsistent, the plain terms of the Lease should control over the 2001 Certificate. The Deed does not expressly incorporate the terms of either the Lease or the 2001 Certificate. Rather, the Deed states that it is "subject to" these documents. Whereas the Lease is a valid agreement that remains in force, the 2001 Certificate has been expressly superseded by a subsequent certificate, and is accordingly now "null and void." *See* Ex. A (Dec. 2005 estoppel certificate) at 3.[14] In addition, although S&R is a party to

---

[13] The other provision of the 2001 Certificate on which S&R relies—Halle Cleveland's statement that "[t]o the best of the knowledge of the undersigned, there has occurred no default under the Lease," 2001 Certificate at 2, plainly constitutes only a representation as to Halle Cleveland's knowledge, not a representation that there had not in fact been any default. This limitation alone is fatal to S&R's invocation of this representation as an estoppel to bar plaintiff's claim.

[14] Furthermore, the Lease nowhere required Halle Cleveland to issue the 2001 Certificate and the 2001 Certificate nowhere indicates that it was supported by any consideration. Accordingly,

the Lease, it is not a party to the 2001 Certificate, which was given by Halle Cleveland to HSBC and was plainly designed to protect only HSBC's security interest under its mortgage. *See* 2001 Certificate at 2 (lessor's obligation to give HSBC notice of default "is for the sole and exclusive benefit of Mortgagee and shall not benefit or be deemed an agreement running to either S&R or Halle"). Thus, the Lease, not the 2001 Certificate, clearly remains the authoritative document regarding S&R's obligations as lessee. *See Hatry*, 1886 Ohio Misc. LEXIS 23 at *6 (where mortgage recited corporate resolution inaccurately, defendant was not estopped "from showing what, in fact, was the resolution").

**IV.    Plaintiff's Claim Is Not Barred by Waiver.**

S&R's final argument is that Halle Cleveland's acceptance of $35,000 in currency each year without protest bars plaintiff from enforcing the gold clause in accordance with the plain language of the Lease under the doctrine of waiver. Def.'s Opening Br. at 15-16, Ex. C (Aff. of Robert Quesada ¶ 4); Joint Stipulation ¶ 3. Halle Cleveland's conduct, however, has not waived plaintiff's right to enforce the gold clause, for at least four reasons.

A.    Halle Cleveland's acceptance of $35,000 in currency each year did not waive the gold clause even for the payments it accepted because the gold clause is a "self-executing rental increase provision," which obligates the lessee regardless of whether the lessor "make[s] an affirmative demand for the increased rent." *Frank B. Thomas Trust*, 1990 Ohio App. LEXIS 1242, at *5, at *9. Specifically, the gold clause provides, "All of said rents **shall be paid** in gold coin of the United States of the present standard of weight and fineness." Lease at 2 (emphasis added). Thus, "[s]ince no demand was required," any prior failure "to affirmatively make such a demand cannot be taken as an act of affirmative waiver." *Frank B. Thomas Trust*, 1990 Ohio

---

even at the time the Deed was executed the 2001 Certificate may have been void for lack of consideration.

App. LEXIS 1242, at *9 (where lease automatically adjusted rent every ten years to account for inflation as measured by a nationally recognized price index, lessor did not waive right to collect arrearages on past adjustments despite lessor's silent collection of unadjusted rent for previous fourteen years); *see also Bahner's Auto Parts v. Bahner*, No. 97CA2538, 1998 Ohio App. LEXIS 3453, at *21-*22 (Ct. App. June 23, 1998) (failure to demand compliance with "self executing" provision of contract "does not constitute a clear, unequivocal and decisive act amounting to a waiver" of that provision). More generally, as the Ohio Supreme Court has explained, courts must "move slowly and carefully when the claim is made that a party has waived the terms of a written contract and agreed to different terms by parole," especially where, as here, the claim of waiver is that a party has agreed to receive payments "less in amount than that stipulated in the original written contract." *White Co. v. Canton Transp. Co.*, 2 N.E.2d 501, 505, 131 Ohio St. 190 (1936). Notably, the Ohio Supreme Court has rejected the proposition that "accepting checks for lesser amounts than due, without protest" necessarily constitutes "a waiver of the right to the unpaid portion" of the amount due. *Allenbaugh v. City of Canton*, 28 N.E.2d 354, 357, 137 Ohio St. 128 (1940).

B.     Regardless of whether Halle Cleveland waived its right to enforce the gold clause with respect to obligations that came due in the past, it could not and did not waive plaintiff's right to require that **future** payments be made in accordance with the gold clause.[15] The Lease contains an express anti-waiver provision, which provides "that the waiver by the lessor, its successors or assigns, of any covenant, agreement, stipulation or condition herein contained shall not be construed as a waiver of any subsequent breach of such covenant, agreement, stipulation, or condition." Lease at 5. Pursuant to this provision, Halle Cleveland's past acceptance of partial

---

[15] As noted above, the Amended Complaint seeks damages only for breaches that occurred after plaintiff became lessor in February 2006.

rent plainly does not waive any subsequent breach of the gold clause. *See, e.g.*, *Gaul v. Olympia Fitness Ctr., Inc.*, 623 N.E.2d 1281, 1286, 88 Ohio App. 3d 310 (Ct. App. 1993); *Ed Wolf, Inc. v. National City Bank*, No. 68898, 1997 Ohio App. LEXIS 237, at *21-22 (Ct. App. Jan. 23, 1997); *K.B. Oil Co. v. Ford Motor Credit, Inc.*, 811 F.2d 310, 312-13 (6th Cir. 1987) (Ohio law); *Tie Bar, Inc. v. Buffalo Mall, Inc.*, Nos. 78CA95-78CA100, 1979 Ohio App. LEXIS 8786, at *8 (Ct. App. Apr. 30, 1979). Indeed, S&R's own authority recognizes that in light of a non-waiver provision, the argument that "failure to demand strict compliance with [the provisions] of the lease agreement constitutes waiver is unconvincing." *Lewis & Michael Moving & Storage, Inc. v. Stofcheck Ambulance Servs., Inc.*, No. 05AP-662, 2006 Ohio App. LEXIS 3775, at *17-*18 (Ct. App. July 25, 2006).

Furthermore, the obligation to pay rent under a lease is an ongoing obligation and, as such, "is susceptible of a continuing breach." *HUB Bldg. & Loan Co. v. Stone*, 28 Ohio L. Abs. 82, 1938 Ohio Misc. LEXIS 979, at *7 (Ct. App. Oct. 28, 1938). "In such a case a waiver of a breach extends only to past breaches, and will not preclude the lessor from taking advantage of a forfeiture incurred subsequent to such waiver." *Id.*; *see also Katz v. M.M.B. Co.*, No. 50579, 1986 Ohio App. LEXIS 6734, at *9 (Ct. App. May 8, 1986).

C.     Even if Halle Cleveland's past annual acceptance of $35,000 in currency under the Lease could somehow be construed as a waiver of the right to enforce the gold clause in the future, such a waiver would still not bar plaintiff's claim because the waiver would have been rescinded. It is well-settled under Ohio law that a lessor may prospectively rescind even an express waiver of rights by giving "some advance notice to the [lessee] of his revocation of the waiver and of his intention to again require strict compliance with the terms of the contract." *Ohio Beef Processors, Inc. v. Consolidated Packers Mktg., Inc.*, No. 2310, 1987 Ohio App. LEXIS 8880, at

*6 (Ct. App. Sept. 23, 1987); *see also Southgate Woods Apartments v. Lanier*, No. L-83-189, 1983 Ohio App. LEXIS 11994, at *4 (Ct. App. Nov. 25, 1983); *cf.* WILLISTON ON CONTRACTS § 39:20 ("an anti-waiver provision will be construed to mean that once a party waives a provision, such a waiver is not to have a permanent effect and the party can reinstate his or her contractual right to strict performance of the contract according to its terms, provided reasonable notice and an opportunity to comply are accorded the person whose performance has been excused").  By bringing this action in May 2006, plaintiff put S&R on notice that it would enforce the Lease strictly and afforded S&R ample time to comply with the gold clause on all subsequent rent payments, the next of which was not due until July 1.  Accordingly, plaintiff has rescinded any waiver that might conceivably be inferred from Halle Cleveland's actions.

D.      Finally, S&R is not situated to enforce such a waiver, even if it existed.  "[T]he waiver of contractual rights typically requires consideration unless" it is appropriate to estop the one from enforcing a contract because the other, "having a duty to perform [under the contract], . . . has changed his or her position as a result of the waiver."  *Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust, Inc.*, 804 N.E.2d 979, 1000, 156 Ohio App. 3d 65 (Ct. App. 2004).  S&R has made no claim that the alleged waiver was supported by any consideration.  Nor has S&R provided any evidence that it changed its position in reliance on the alleged waiver.

## CONCLUSION

For the foregoing reasons and the reasons articulated in our opening summary judgment brief, the Court should deny S&R's motion for summary judgment and grant plaintiff's motion for summary judgment.

November 14, 2006

Respectfully Submitted,

/s/ Charles J. Cooper

_____

James B. Niehaus (0020128)
jniehaus@frantzward.com
Christopher G. Keim (0067117)
ckeim@frantzward.com
FRANTZ WARD LLP
2500 Key Center
127 Public Square
Cleveland, Ohio 44114-1230
216-515-1660
216-515-1650 (fax)

Charles J. Cooper
ccooper@cooperkirk.com
David H. Thompson
dthompson@cooperkirk.com
David Lehn
dlehn@cooperkirk.com
COOPER & KIRK, PLLC
555 Eleventh Street NW
Suite 750
Washington, DC 20004
(202) 220-9600
(202) 220-9601 (fax)

*Attorneys for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify on November 14, 2006, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this through the Court's system.

/s/ Charles J. Cooper
_____

Charles J. Cooper
COOPER & KIRK, PLLC
555 Eleventh Street NW
Suite 750
Washington, DC 20004
(202) 220-9600
(202) 220-9601 (fax)
ccooper@cooperkirk.com