IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| 216 JAMAICA AVENUE, LLC, | CASE NO. 1:06CV1288 |
| Plaintiff, | JUDGE CHRISTOPHER A. BOYKO |
| v. | |
| S & R PLAYHOUSE REALTY CO., | DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| Defendant. | |

     Plaintiff 216 Jamaica Avenue LLC's ("Jamaica") claim in this action hinges upon an alleged breach of contract, whereby S&R has purportedly failed to pay adequate rent under a lease's gold clause. Jamaica, however, is estopped from making such a claim. The deed by which Jamaica acquired the Halle Building in February 2006 (the "Deed"), expressly provides that there had been no breach of the Lease. That Deed further states unambiguously that the rent is $35,000. Under Ohio law, Jamaica is bound by its Deed and is estopped from claiming that the Lease has been breached or that the rent is other than $35,000. Nothing has changed since February 2006 and the Court need look no further.

     Moreover, plaintiff cannot sustain a claim for breach and an almost thirty-fold increase in rent because the rent due is plain on the face of the 1912 Lease—$35,000. Jamaica seeks to show that the parties knowingly novated a "gold clause" in the 1912 lease through an Assignment and Assumption Agreement (the "1982 Assigment"), entered into more than 24 years ago; or alternatively, to show the gold clause was reactivated when Jamaica's predecessor

and S&R came into privity with one another. Plaintiff also argues that the gold clause was designed as a hedge against inflation. None of this is correct.

The cases that Jamaica relies upon for support either fail to stand for the propositions for which they are presented or are easily distinguished from the facts of this case. Further, Jamaica asserts its arguments although no evidence exists that over the past 96 years any lessee ever paid—or any lessor ever demanded—either rent in gold or in an amount greater than $35,000. No lessor has ever until now raised an issue with the gold clause. The lessor did not ask for an increase in rent at the time of the 1982 Assignment. Jamaica itself did not demand increased rent or point to the gold clause as a source of escalated rent at the time it acquired the Halle Building this year. It is beyond dispute that S&R paid $35,000 in rent under the Lease from 1982 to 2006 without objection of any kind from the lessor.

In addition, even if Jamaica were correct about the meaning of the gold clause in 1912, S&R did not agree under the 1982 Assigment to assume the 1912 Lease's obligations as they existed in 1912, but rather as they existed in 1982. In 1982 the gold clause was inoperative under federal law and nothing in the parties' conduct or the words of the operative documents has resurrected that clause. The very Deed by which Jamaica took the property states the amount of the rent and is evidence that nothing changed from the time of the 1982 Assignment to the time of Jamaica's acquisition of the property in 2006.

Finally, the doctrine of waiver also bars Jamaica's claims. As the evidence shows, the lessor—Jamaica's predecessor—had no expectation that rent would be paid in gold or some gold equivalent in 1982 at the time of the Assignment; in fact, the lessor at that time believed that the rent was stated in the Lease as $35,000. S&R accordingly paid rent of $35,000 per year for 24 years until this action was brought by Jamaica. Jamaica's demand for a dramatically

higher rent in February 2006 is inconsistent with the terms of the Lease, the terms of the 1982 Assignment Agreement, Jamaica's Deed, the parties' conduct, and importantly, S&R's justified expectations.

Jamaica's claims are thus fatally flawed for at least four reasons: (1) Jamaica is estopped by its own Deed from claiming there has been a breach of the Lease or that rent is greater than $35,000 under the Lease; (2) Jamaica's claims fail because the Lease does not contain language that indicates a rent greater than $35,000 or that the gold clause in the Lease was intended as a hedge against inflation; (3) Jamaica's claims fail because the 1982 Assignment expressly required S&R to assume the Assignor's obligations in effect as of May 21, 1982, a date on which the gold clause was indisputably inoperative; and (4) Jamaica's claims are barred by the doctrine of waiver.

## LAW AND ARGUMENT

### A. Jamaica Is Estopped By Deed from Claiming That Any Breach of the Lease Has Been Committed by S&R or that Rent Under the Lease Exceeds $35,000.

If a grantee accepts a deed, the knowledge of all its provisions are legally imputed to him. *Turner v. Fox*, No. 2003-09-251, 2005 Ohio App. LEXIS 694, at *15 (Butler Cty. Feb. 22, 2005) (attached as Exh. A). Accepting the deed, the grantee becomes bound by all of the deed's provisions and estopped from denying the provisions' legal effects. *Id.* The grantee loses any cause of action with respect to the essential terms covered by the deed when he accepts the deed. *Davis v. DiFilippo*, No. 95CA0046, 1996 Ohio App. LEXIS 1141, at *8 (Wayne Cty. Mar. 27, 1996) (attached as Exh. B).

In this action, the linchpin of plaintiff's claim is that S&R breached the 1912 Lease by not paying rent in gold. Plaintiff alleges in its Amended Complaint:

> *This is an action for breach of contract.* Plaintiff, 216 Jamaica Avenue, LLC ("216 Jamaica"), leases to defendant, S & R Playhouse Realty Company ("S & R Playhouse"), a prime parcel of land situated at 1228 Euclid Avenue in downtown Cleveland, Ohio (the "Lease"). * * * Yet, S & R Playhouse has been paying only $35,000 per year to lease the land – in clear breach of the explicit and straightforward terms of the Lease – and in fact has paid no rent at all since 216 Jamaica acquired ownership of the land in February 2006.[1]

(Amended Complaint ¶ 1) (emphasis added).

Jamaica, however, is estopped from any claim that there has been a breach of the Lease or that rent is greater than $35,000 per year under the Lease. The Deed by which Jamaica took the Halle Building (attached as Exh. C), expressly states that S&R committed no default of the Lease. Specifically, the Deed provides that it is subject to a December 2001 estoppel Certificate from Jamaica's predecessor, Halle Cleveland, LLC, to HSBC Bank USA ("Certificate," attached as Exh. D). That Certificate provides in pertinent part that

> (1) there has occurred no default under the Lease and no event has occurred which, with the passage of time or the giving of notice or both will constitute a default on the part of the Lessee under the Lease;
>
> (2) [t]he base annual rent under the Lease is $35,000, exclusive of taxes and other items of additional rental and all other amounts payable under the Lease; and

(Certificate at 2.)

Jamaica is bound by these provisions. By accepting the property in February 2006 under a Deed expressly "subject to" the estoppel Certificate, Jamaica accepted that rent was $35,000 per year, payable in currency, and nothing more. Moreover, Jamaica accepted that S&R's performance did not constitute a default. No material fact is different today than when Jamaica accepted the Deed and thus there can have been no default under the Lease since.

---

[1] Plaintiff makes the statement that S&R has not paid rent to Jamaica based solely on Jamaica's refusal to accept S&R's tendered rent payment. That rent payment, however, was the same rent payment that S&R is obligated to pay under the Lease and that it has paid over the previous 24 years.

The language in both the Lease and the Deed are clear and unambiguous, and do not require judicial construction. Jamaica did not raise the issue of escalated rent or a gold clause prior to the closing of its acquisition of the property here and it cannot do so now. *See Fuller v. Drenberg*, 209 N.E.2d 417 (1965). Jamaica had every reason to know of the dispute that it raises in this action, but rather Jamaica accepted the Deed, which clearly contradicts its claims. Jamaica's claims are thus estopped.

Moreover, as S&R set forth in its Motion for Summary Judgment (Mem. in Spt. at 14), which is incorporated herein, Jamaica is also estopped by the doctrine of merger by deed, which provides that "where a deed is delivered and accepted *without qualification pursuant to agreement*, no cause of action upon the prior agreement thereafter exists." *Fuller,* 209 N.E.2d at 417 (emphasis added). The grantee loses any cause of action with respect to the essential terms covered by the deed when he accepts the deed. *Davis,* 1996 Ohio App. LEXIS 1141, at *8 (attached as Exh. B.); *Zilka v. Central South Ltd.,* No. 99CA007482, 2000 Ohio App. LEXIS 3217, at *15-16 (Lorain Cty. Jul. 19, 2000) ("Under the doctrine of merger, when a deed is delivered and accepted without qualification pursuant to a real estate purchase contract, the contract becomes merged into the deed, and no cause of action upon the prior agreement exists.") (attached as Exh. E); *Endersby v. Schneppe,* 73 Ohio App. 3d 212, 214 (Ohio Ct. App. 1991) (noting "[w]here a deed is delivered and accepted without qualification pursuant to agreement, no cause of action upon the prior agreement thereafter exists."). At that point, the parties are limited to the express covenants of the deed. *Id.*

As S&R further explains in its Motion for Summary Judgment, no exceptions to the doctrine of merger by deed are applicable here. (Mem. in Spt. at 15.) Jamaica is thus estopped from claiming that it is owed a rent different than $35,000 per year, or from claiming there has

been any breach of the Lease by S&R. Accordingly, Jamaica's Motion for Summary Judgment should be denied.

### B. The Lease Does Not Contain Language that Indicates a Rent Greater than $35,000 or that the Gold Clause in the Lease Was Intended as a Hedge Against Inflation.

The language of the Lease is clear that rent due under the Lease is $35,000 payable in quarterly installments of $8,750 each. Nowhere in the Lease is there any mention of inflation or any reference to potential fluctuations in the value of gold and how those fluctuations would affect the lessee's obligations to pay rent. Nor is there any mechanism provided for the establishment of current gold values or for the resolution of disputes about valuations. *See, e.g., Butler v. Horwitz*, 74 U.S. 258, 258 (1868). The language in this Lease is substantially different than in the cases relied upon by Jamaica.

Jamaica strains the language of the 1912 Lease to reach its conclusion that the "gold clause" in the Lease was intended by the Lease's original parties as a hedge against inflation. Jamaica relies upon a group of cases to stand for this proposition that are distinguishable from this Lease and its gold clause. In relying on these cases, Jamaica is asking the Court to add into the Lease terms that were never drafted by any party.

In hopes to bolster its argument that the gold clause's purpose was to hedge against inflation, plaintiff selectively relies on *Butler v. Horwitz*, 74 U.S. 258 (1869). While Jamaica points out that the court in *Butler* found that that gold clause's purpose was to purportedly hedge against inflation, Jamaica neglects to mention the precise terms of *Butler's* gold clause— terms that make a difference. In *Butler,* the lease specifically provides how and when the price of gold will be measured over time. *Butler's* gold clause provides that the weight and price of the gold will be measured "at their present established weight and rate according to act of Assembly, on the 1st day of January in each and every year during the continuance of the

present demise." *Butler*, 74 U.S. at 258 (1869). The drafters of *Butler's* gold clause provided the how, when, and at what frequency the price of the lease would be measured. Based upon this language, the Court in *Butler* found that the purpose of that particular gold clause was to "provide against fluctuations in the medium of payment." *Butler*, 74 U.S. at 260.[2]

The drafters of the gold clause in this case, however, included nothing like the language in the *Butler* lease. Instead, the drafters set rent in the Lease at $35,000. Unlike *Butler*, the Lease provides the parties no specific annual measure for the price of the lease. Thus there is no evidence that the parties included the gold clause to hedge against inflation. Had the parties been concerned about inflation, they would have included an express provision to detail how the rent would be calculated for the entirety of the lease, as the parties did in *Butler*. Jamaica asks the Court to read in language that cannot be found in the Lease.

To further its flawed argument, Jamaica asserts that the gold clause in *Perry v. United States*, 294 U.S. 330 (1935) is "just like the Lease here," yet, the gold clause discussed in *Perry* was neither in a lease, nor between two private parties. *Perry* deals exclusively with a government bond that was called for redemption. *Perry*, 294 U.S. at 347. The gold clause in the bond applied to the principal and interest payable on the bond. *Id.* The court specifically noted that "the [government] bond in suit differs from an obligation of private parties." *Perry*, 294 U.S. at 348. A gold clause in a government bond is hardly analogous to a retail lease between two private parties.

Further, Jamaica cites *Perry* to stand for the proposition that gold clauses were designed to solely hedge against inflation, yet *Perry* makes no reference to inflation. Instead, the gold

---

[2] It is not at all clear from this case that the Court interpreted the gold clause to be a *hedge against inflation*. The *Butler* Court did not use the word "inflation." Inflation is not the only possible cause of fluctuation in the medium of payment.

clause in *Perry* sought to protect against loss resulting from the government's deliberate *depreciation of the dollar*. In *Perry*, the obligation was that of the government and not a private party. The distinction is critical because the government had the ability to do what a private party could not do—devalue the dollar. By devaluing the dollar, the government would have been able to pay the bond holder a lesser amount. The gold clause in *Perry* secured a standard measure of the *government's* obligation. *Id.* at 348. The government holds distinctly different powers than the powers of a private party. As such, *Perry* offers no guidance in interpreting the Lease's gold clause or its purpose. *Perry*, does, however, show that there is an alternative reason (other than hedging against inflation), for including a gold clause in a lease—to protect a party from the government's devaluation of the currency.

In addition, Jamaica would have the court read the intent from the *Trostel* gold clause into the gold clause here. The lease that Jamaica touts as "just like the Lease here" is actually not like the Lease in a number of critical ways.[3] Here, S&R has not stipulated to the purpose and the function of the gold clause. Unlike this case, in *Trostel*, there was no dispute as to the gold clause's purpose. *See Trostel v. American Life & Casualty Ins. Co.*, 168 F.3d 1105, 1109 (8th Cir. 1999). Nor did the *Trostel* Court address any possible alternative theory regarding the reason for the clause. Gold clauses can be intended as a hedge against inflation, but they may also be designed to protect the parties to a contract from the government's deliberate devaluation of the currency or to simply secure payment in gold.

Finally, relying on *Fay Corp. v. BAT Holdings I, Inc.*, 682 F. Supp. 1116, 1118 (W.D. Wash. 1988), Jamaica seeks to sway the Court with an allegation that the $35,000 rent paid by

---

[3] Further, the lease in Trostel requires that "all payments under this lease shall be made in gold coin of the United States of America, of *or equal to* the present standard of weight and fitness." *Trostel v. American Life & Casualty Ins. Co.*, 92 F.3d 736, 738, (8th Cir. 1996) (emphasis added). Further evidencing that this gold clause is not one designed to hedge against inflation is that there is no such "equal to" language in the Lease.

Jamaica represents a windfall. However, the Halle Building—the premises subject to the Lease—has suffered a net negative cash flow in every year since 2002. (Aff'd of William Ross at ¶ 2, attached as Exh. F.) In 2002, the building operated at a loss of $1,482,458; in 2003, a loss of $867,235; in 2004, a loss of $1,552,005; and in 2005, a loss of $4,671,743. (*Id.*) Operating at a net loss of over $8 million over the past four years is no windfall.[4]

### C. The 1982 Assignment Did Not Reactivate the Gold Clause.

#### 1. The 1982 Assignment Expressly Requires S&R to Assume the Obligations after May 21, 1982—the Gold Clause was Indisputably Inoperative on that Date.

Jamaica does not dispute that the so-called gold clause in the 1912 Lease was rendered inoperative by Federal Law in 1933. (Amended Complaint ¶ 5.) Jamaica, however, misplaces its reliance upon the 1982 Assigment to argue that the 1912 Lease's terms, including the gold clause, were novated by the 1982 Assignment; or alternatively, that the 1982 Assigment independently created contractual privity between parties and thus means the parties entered into the 1912 Lease as a new obligation on that date. As the language of the 1982 Assignment makes clear, S&R's obligations as of the date of the 1982 Assignment were only those of its predecessor's the day before and did not suddenly include an obligation to pay a greatly inflated rent under a 49-year-old dormant gold clause. Jamaica's argument fails.

The 1982 Assigment was entered into on May 21, 1982. The gold clause was inoperative on that date. (Amended Complaint ¶ 5.) Contrary to Jamaica's arguments, however—which, if true, would without a word of discussion between the parties raise the rent on the Halle Building many times over by resurrecting the entire Lease and its inoperative gold

---

[4] The actual windfall in this case is the one Jamaica hopes to receive. If the gold clause is enforced as suggested by Jamaica, a single year's rent paid by S&R would far exceed Jamaica's entire purchase price for the property. Jamaica paid a total of $845,000 for the property upon which it bases this action. (Parties' First Submission of Joint Stipulated Facts at ¶ 2.)

clause—S&R did not agree to assume the Lease's "covenant's, obligations, and engagements" as they existed in 1912, but rather as of "the date hereof." (1982 Assignment at 2.) On May 21, 1982—the "date hereof"—neither the Assignor nor the lessee had any obligation to pay in gold or rent in an amount greater than $35,000. S&R stepped into the same shoes worn by the Assignor, The Halle Brothers Company, and assumed its obligations, which did not include payment of a greatly inflated rent. *See, e.g.*, *Spain v. Hamilton's Adm'r*, 68 U.S. 604, 624 (1863) (an "assignee . . . is subject to all the equities between the assignor and his debtor").

Jamaica relies heavily upon the Eighth Circuit's decision in *Trostel* for the proposition that the 1982 Assignment here is a novation of the 1912 Lease, but in *Trostel*, the Court expressly found that the defendant there did not argue that the "transaction was anything other than a novation." *Trostel*, 92 F. 3d at 740-41. The *Trostel* Court did not analyze or hold that the facts present in *Trostel* amounted to a novation. They concluded there was a novation because the defendant conceded it.[5] Here, as S&R makes clear in its Motion for Summary Judgment, S&R does not concede that the 1982 Assignment novated the 1912 Lease but rather disputes that any novation of the gold clause occurred.

Moreover, contrary to Jamaica's assertions, this case is very different than *Trostel* for more than the reason that S&R disputes there was a novation. The lease in *Trostel* is not like the Lease here. In *Trostel*, the language of the assignment provides that the defendant "hereby accepts, assumes and agrees to be bound by all of the terms and conditions to be kept, observed and performed by the lessee in said lease...." *Trostel*, 92 F. 3d at 739. The *Trostel* lease refers

---

[5] *Trostel's* conclusion that the parties to the new transaction did intend to revive the gold clause is not helpful in determining whether a novation occurred. The Ninth Circuit has addressed and validated this reasoning in *Grand Ave. Partners, L.P. v. Goodan*, 160 F.3d 580 (9th Cir. 1998). There, the Ninth Circuit agreed that "the lessee in *Trostel* did not dispute that a valid new obligation was formed by the assignment, but rather contended that there was no novation as to the gold clause itself because the parties did not intend to incorporate that clause into the new lease. Therefore, the court in *Trostel* had to construe the terms of the new contract, not, as is our task, the old one." *Grand Ave. Partners, L.P. v. Goodan*, 160 F.3d 580, 581-82 (9th Cir. 1998).

only to the <u>lessee's</u> performance under the lease and makes no reference to the assignor's obligations, which in 1990, at the time of the *Trostel* assignment, would not have included payment under a gold clause. The *Trostel* Court reasoned that the defendant agreed to be bound by terms of the original lease in that action and since the lease included a gold clause, the parties were free to reactivate that clause. In this action, the 1982 Assignment expressly refers to S&R's acceptance of the *Assignor's* and lessee's performance under the Lease, and that S&R would perform the "terms and provisions thereof on the part of the lessee to be observed and performed after the date hereof." It is beyond dispute that the *Assignor* here did not have an obligation to pay an inflated rent under an inoperative gold clause at the time of the 1982 Assignment (or for that matter at any other time).

Indeed, it appears that Jamaica understands well the distinction between the assignment here and that in *Trostel*. Jamaica states in its Motion for Summary Judgment that S&R "'assume[d] and agree[d] to perform *each and all* of the covenants, obligations, and engagements' under the Lease...." (Ptf's Mem. in Spt. of Mot. for Summ. J'ment at 15) (quotation marks and emphasis in original). Jamaica deceptively follows the inner-quoted words above as shown with the words "under the Lease." The actual next words in the 1982 Assignment are "of the <u>Assignor</u>," not "under the Lease." (1982 Assignment at 2) (emphasis added).

  **2. Jamaica's "Privity Arguments" Fail to Show that the Gold Clause was Resurrected in 1982 and Further Fail for All the Same Reasons that Jamaica's Novation Argument Fails.**

In addition to its "novation argument," Jamaica makes the novel, alternative argument that the gold clause in the 1912 Lease was reactivated because Jamaica's predecessor and S&R came into "privity" with one another as a result of the 1982 Assignment. (Ptf's Mem. in Spt. of Mot. for Summ. J'ment at 16.) The cases relied upon by Jamaica simply do not stand for the

proposition that privity reactivates an inoperative gold clause. The entirety of Jamaica's arguments are aimed at showing that privity exists between S&R and Jamaica's predecessor, but indeed, Jamaica's reasoning begs the question. The issue is not whether Jamaica's predecessor came into privity with S&R, but rather did Jamaica's predecessor and S&R do or write anything to resurrect the gold clause—did they enter into a *new* agreement including a gold clause? They could have done that by novating the 1912 Lease, including its gold clause, or by drafting an agreement containing a gold clause. They did neither. To the contrary, S&R agreed only to assume the Assignor's obligations. Those obligations did not include payment under the inoperative gold clause.

Jamaica's "privity" arguments further make nonsense of the gold clause cases Jamaica cites in its Memorandum in Support of Summary Judgment. For example, Jamaica asserts that the *Trostel* and *Fay* assumption clauses are "materially indistinguishable" from the one in this case (Ptf's Mem. in Spt. of Summ. J'ment at 11), but neither the *Fay* nor *Trostel* Courts relied on such an argument. If Jamaica were right in its simplistic arguments, those courts would have been spared the analysis of a novation. Indeed, in making its "privity arguments," Jamaica makes no citation to a gold clause case for support because it cannot. This is because the issue, at least as identified in *Trostel*, is whether a *new* obligation was formed, not whether there is privity among the parties. Jamaica offers nothing to show that the creation of privity means the formation of a new obligation.

The entirety of Jamaica's reasoning for stretching its "privity" arguments to this "gold clause" case rest in this scant statement by the *Trostel* Court: "American Life states in its briefs that the 1990 transaction was not a novation, but it does not dispute that a valid new obligation was formed." (Ptf's Mem. in Spt. of Summ. J'ment at 18.) This statement proves nothing other

than that the defendant in *Trostel* conceded that a new obligation was formed. No new obligation was formed in this action after October 27, 1977, and Jamaica's "privity arguments" fail for this reason and all the others recited in S&R's summary judgment briefings.

**D.     Any Requirement that S&R Pay Rent under the Lease Other than $35,000 under the Lease Has Been Waived.**

Waiver is an intentional relinquishment of a known right. *Bahner's Auto Parts v. Bahner*, No. 97CA2538, 1998 Ohio App. LEXIS 3453, at *18 (Scioto Cty. June 23, 1998) (quoting *Russell v. Fourth Nat. Bank*, 102 Ohio St. 248, 269 (1921)) (attached as Exh. G). A party can waive a right either expressly or constructively. *Id.*

Waiver may be implied through conduct. Under Ohio law, waiver may be construed from conduct on the part of an obligee which misleads an obligor to believe that his performance satisfies a condition of an obligation. *Lewis & Michael Moving & Storage, Inc. v. Stofcheck Ambulance Service, Inc.*, No. 05AP-662, 2006 Ohio App. LEXIS 3775, at *16 (Franklin Cty. July 25, 2006) (attached as Exh. H). Waiver allows a party's inconsistent conduct, rather than a party's intent, to establish a waiver of rights. *Id.* An example of such conduct is acceptance of partial or defective performance of the precise kind alleged by Jamaica here. *Komes v. Turner*, No. CA88-09-074, 1989 Ohio App. LEXIS 1564, at *3 (Warren Cty, May 1, 1989) (citing *Allen v. Curles*, 6 Ohio St. 505, 508 (1856)) (noting that acceptance of partial performance of a contract may operate as a waiver of strict compliance with the contract) (attached as Exh. I).

A significant difference between this case and those relied upon by Jamaica to show a novation of a gold clause, is that Jamaica here attempts to reach back more than 24 years to seize upon its predecessor's 1982 Assignment. Jamaica insists there was a novation and that the gold clause was reactivated in 1982, although it is clear its predecessor held no such position.

(Aff. of Robert Quesada at ¶¶ 4-6, attached as Exh. J.) The course of conduct between the parties is crystal clear—rent was and is $35,000 per year.

Halle Cleveland, Jamaica's predecessor, accepted S&R's payments in cash and never suggested there was an expectation of payment in gold. (*Id.*) If Halle Cleveland and S&R had wished to recreate the obligation to pay in gold, they could have done so, either by entering into a new contract containing a gold clause (which was not done) or by expressly recognizing that the 1982 Assignment triggered the gold clause in the original lease. But they did not do that either. In fact, Halle Cleveland continued the practice of accepting $35,000 in cash in satisfaction of its expectations of rent. (*Id.*) If the 1982 Assignment created any opportunity for Halle Cleveland to demand payment in gold, it waived its right to do so by consistently accepting S&R's cash payments.

Jamaica has stepped into the shoes of Halle Cleveland. Jamaica is bound by Halle Cleveland's waiver of any right to collect rent in gold. "It is well established that an assignee stands in the shoes of the assignor, and that by assignment the assignee could acquire no greater rights than its assignor. . . ." 3 Williston on Contracts 182-83 (3d ed. 1960) (citations omitted). *Dana Corp. v. Fireman's Fund Ins. Co.*, No. 3:83CV1153, 1997 U.S. Dist. LEXIS 16413, at *11 (S.D. Ohio 1997) (attached as Exhibit K). This is a universally acknowledged doctrine of long-standing; *see, e.g., Spain v. Hamilton's Adm'r*, 68 U.S. 604, 624 (1863) ("assignee . . . is subject to all the equities between the assignor and his debtor"); *Allstate Ins. Co. v. Administratia Asigurarilor De Stat*, 875 F. Supp. 1022, 1026 (S.D.N.Y. 1995) ("an assignee never stands in any better position than his assignor").

Jamaica's claims are barred because Halle Cleveland waived any right to receive escalated rents or payment in gold. For this reason alone, the Court should deny Jamaica's Motion for Summary Judgment.

## CONCLUSION

For all the reasons above and those contained in Defendant's Memorandum in Support of Motion for Summary Judgment, plaintiff 216 Jamaica Avenue LLC's Motion for Summary Judgment should be denied and defendant S&R Playhouse Realty Co.'s Motion for Summary Judgment granted.

Respectfully submitted,

/s/ Gary L. Walters
Stephen D. Williger (0014342)
Gary L. Walters (0071572)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
(216) 566-5500
(216) 566-5800 – Fax
Stephen.Williger@ThompsonHine.com
Gary.Walters@ThompsonHine.com

Attorneys for Defendant
S & R Playhouse Realty Co.

## CERTIFICATE OF SERVICE

A copy of the foregoing *Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment* were filed electronically this 14th day of November, 2006. Parties will receive notice through the Court's electronic filing system.

                                                 /s/ Gary L. Walters
                                                 One of the Attorneys for Defendant
                                                 S & R Playhouse Realty Co.