## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **216  JAMAICA AVENUE, LLC,** | ) | **CASE NO. 1:06CV1288** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| v. | ) | |
| | ) | |
| **S & R PLAYHOUSE REALTY CO.,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DEFENDANT'S REPLY BRIEF IN SUPPORT OF DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT

**Table of Contents**

INTRODUCTION ...................................................................................................................... 1

LAW AND ARGUMENT ........................................................................................................ 2

A.     The Lease Speaks for Itself— The Annual Rent Set is $35,000 per year. ......................... 4

B.     Even if Jamaica Were Right and the "Gold Clause" Was Intended By the Original Parties as a Hedge Against Inflation, It Is Unenforceable Against S&R. ...................................... 6

    1.    Novation Under Ohio Law Requires A Complete Meeting of the Minds and Consent to Novation Must Be Contemporaneous Between the Parties. ................................................ 6

    2.    S&R Assumed Only the Assignor's Obligations as of 1982 on a Going Forward Basis. ... 8

    3.    The Affidavits Submitted By S&R in Support of Its Motion for Summary Judgment Are Admissible. .................................................................................................................. 9

C.     Jamaica Inconsistently Claims That an Affidavit Evidencing S&R's Loss Suffered on The Halle Building is Inadmissible Parol Evidence, Even Though it is Jamaica That Has Argued That S&R is Enjoying a Windfall by Paying $35,000. ....................................... 10

D.     Jamaica's Claims are Estopped by its Deed, But In Any Event Jamaica Has Admitted That the Rent Here is $35,000 Per Year And That No Default Has Occurred .................. 11

    1.    The Deed is Clearly Subject to the 2001 Estoppel Certificate. ....................................... 11

    2.    The 2001 Estoppel Certificate Was Presented to HSBC for the Benefit of S&R. ............ 12

    3.    The Deed is Not Collateral to this Dispute. .................................................................... 13

    4.    The 2001 Estoppel Certificate is Not Consistent With Jamaica's Claims. ...................... 13

E.     Jamaica Has Waived Its Claims. .................................................................................... 15

    1.    The Lease Is Not A Self-Executing Rental Increase. ....................................................... 15

    2.    The 1982 Assignment and the Parties' Conduct Waived the Right to any Rental Payments Different Than $35,000. .................................................................................. 16

    3.    S&R Needs No Consideration to Enforce Halle Cleveland's Waiver. ............................ 18

    4.    Plaintiff Bases Its Anti-Waiver Argument On Cases That Are Factually Dissimilar. ...... 19

CONCLUSION ...................................................................................................................... 21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Fay Corp. v. Frederic & Nelson Seattle, Inc.*, 896 F.2d 1227 (9th Cir. 1990)...............................6

*Fay v. BAT Holdings I*, 646 F. Supp. 946 (W.D. Wash. 1986) ....................................................6, 7

*Hazard Coal Corp. v. Ky. W. Va. Gas Co.*, 311 F.3d 733 (6th Cir. 2002) .................................16

*K.B. Oil Co. v. Ford Motor Credit Co.*, 811 F.2d 310 (6th Cir. 1987).........................................20

*Trostel v. American Life & Casualty Insurance Co.*, 133 F.3d 679 (8th Cir. 1998) ...........1, 5, 8, 9

*Vision Information Services v. Commissioner*, 419 F.3d 554 (6th Cir. 2005)................................9

*Ward et al. v. Flex-O-Tube Co.*, 194 F.2d 500 (6th Cir. 1952) ....................................................11

## STATE CASES

*Allenbaugh v. City of Canton*, 28 N.E.2d 354 (1940) ...................................................................18

*Bahner's Automobile Parts v. Bahner*, No. 97CA2538, 1998 Ohio App. LEXIS 3453
(Scioto Cty. June 23, 1998) ...............................................................................................7

*Baker v. All States Life Insurance Co.*, No. 4382, 1950 Ohio App. LEXIS 859 (Franklin
Cty. Mar. 30, 1950) ...........................................................................................................7

*Baughman v. State Farm Mutual Automobile Insurance Co.*, 160 Ohio App. 3d 642
(2005)................................................................................................................................17

*Bill Swad Chevrolet v. Ricart Jeep Eagle*, 129 Ohio App. 3d 501 (Ohio Ct. App. 1998) ............15

*Bucher v. Schmidt*, No. 5-01-48, 2002 Ohio App. LEXIS 4064 (Hancock Cty. Aug. 2,
2002)................................................................................................................................17

*Ed Wolf, Inc. v. National City Bank*, No. 68898, 1997 Ohio App. LEXIS 237 (Ct. App.
Jan. 23, 1997)...................................................................................................................19

*Emerson-Brantingham Implement Co. v. Sawyer*, 242 S.W. 1007 (Mo. Ct. App. 1922)................7

*Euclid Asphalt Paving Co. v. Pricom Asphalt Sealcoating, Inc.*, 2005 Ohio 7049.................10, 11

*Frank B. Thomas Trust v. Imperial 400 National, Inc.*, No. 14202, 1990 Ohio App.
LEXIS 1242 (Summit Cty. Mar. 28, 1990) ......................................................................15

*Garrett v. Lishawa*, 172 N.E. 845 (Ohio Ct. App. 1930) ................................................6

*Gaul v. Olympia Fitness Ctr.*, 88 Ohio App. 3d 310 (Ohio Ct. App. 1993)...............................19

*HUB Building & Loan Co. v. Stone*, No. 2884, 1938 Ohio Misc. LEXIS 979 (Franklin Cty. Oct. 28, 1938) ...........................................................................20, 21

*Lewis & Michael Moving & Storage, Inc. v. Stofcheck Ambulance Serv.*, No. 05AP-662, 2006 Ohio App. LEXIS 3775 (Franklin Cty. July 25, 2006) ................................20

*Lopresti & Sons, Inc. v. General Car & Truck Leasing Sys.*, 79 Fed. Appx. 764, 769 (6th Cir. 2003)..........................................................................................18

*Marfield v. Cincinnati, D. & T. Traction Co.*, 111 Ohio St. 139 (Ohio 1924).......................17, 18

*RWS Building Co. v. Freeman*, 2005 Ohio 6665 ...........................................................18

*Scioto Savings Association v. Porter*, No. 77AP-788, 1978 Ohio App. LEXIS 10229 (Franklin Cty. Mar. 2, 1978)..........................................................................7, 8

*Scott v. Wyoming Oils, Inc.*, 5 P.2d 764 (Wyo. 1938) .......................................................6

*Tie Bar, Inc. v. Buffalo Mall, Inc.*, Nos. 78 CA 100, 1979 Ohio App. LEXIS 8786 (Mahoning Cty. Apr. 30, 1979) ...............................................................................20

*Turner v. Fox*, No. 2003-09-251, 2005 Ohio App. LEXIS 694 (Butler Cty. Feb. 22, 2005)........13

*White Co. v. Canton Transport Co.*, 2 N.E.2d 501 (1936) ...............................................16

# INTRODUCTION

For the past 24 years, lessee S&R Playhouse Realty Co. ("S&R") has paid $35,000 per year in rent without a word of objection from its lessor. Likewise, when plaintiff 216 Jamaica Avenue, LLC ("Jamaica") acquired the Halle Building earlier this year there was no mention of an escalation in rent. Indeed, the escalation sought by Jamaica in this action would raise the rent from $35,000 per year to more than $970,000 per year, more than Jamaica's entire purchase price for the Halle Building. No prior mention has ever been made of such an increase in rent because it defies sense and Ohio law.

Jamaica purports to rely upon various "gold clause" cases that it asserts decide this case, but those prior cases will not do the work that Jamaica asks of them. The "gold clause" in this Lease is more sparse than in any of the cases Jamaica attempts to rely upon, and the critical 1982 Assignment and Assumption Agreement ("1982 Assignment") that Jamaica argues "reactivates" the "gold clause" is materially different than those in the prior cases, and particularly different than that in the *Trostel* matter upon which Jamaica places so much weight. In 1982, S&R only assumed the obligations of the assignor going forward, and it is beyond dispute that the assignor did not have an obligation to pay in gold in 1982.

Moreover, Ohio law will neither allow Jamaica to sustain claims that are contradicted by the terms of its own deed or to novate a lease where all the parties did not knowingly and contemporaneously consent to a novation. Jamaica is also estopped by deed from claiming that the Lease has been breached. The deed recorded at the time of Jamaica's acquisition ("Deed," attached as Exh. D to Dft's Mot. for Summ. J.), expresses clearly that rent is $35,000 per year and that there has been no default under the Lease. Even if Jamaica were not *estopped* by its Deed, the Deed and the documents to which the Deed is subject represent clear and unambiguous *admissions* that rent is *$35,000 per year* and that there has been *no default under the Lease.*

Finally, Jamaica cannot overcome the course of conduct between the lessee and lessor. No evidence exists that any party intended Jamaica's interpretation of the Lease, or that any party has ever even interpreted the Lease the way that Jamaica does now. Years of conduct by both the lessee and the lessor—particularly at the time S&R entered into the 1982 Assignment—defy Jamaica's claims. Any claim for rent other than $35,000 per year was long ago waived by Jamaica's predecessor, in whose shoes Jamaica now stands.

In short, Congress made the Lease's "gold clause" inoperative more than 70 years ago and no party to any governing document or this action has done anything to change that.

## LAW AND ARGUMENT

For all the reasons contained in Defendant's Motion for Summary Judgment and S&R's Brief in Opposition to Plaintiff's Motion for Summary Judgment, material facts sufficient to grant summary judgment in favor of S&R are not in dispute. S&R, however, disagrees with Jamaica's assertion that *all* material facts have been stipulated to by the parties. In light of Jamaica's refusal to stipulate to material facts presented to it by S&R, its claim that all material facts have been stipulated to is simply wrong. (*See* Ptf's Mem. in Opp. to Dft's Mot for Summ. J. ("Ptf's Opp. Br.") at 2.)

Jamaica concedes, for example, that payment under the Lease for the first 70 years is relevant minimally to the theory of waiver in this action, and Jamaica concedes as well that it has no knowledge of how those payments were made. (Ptf's Opp. Br. at 9-10.) Indeed, no evidence has been adduced by Jamaica that any lessee ever paid in gold or in the equivalent of gold during the term of the Lease. Nor is there any evidence that prior to Jamaica's claims just this year that any lessor ever made a demand for anything other than the rental amount of $35,000 listed plainly in the Lease.

Jamaica refused to agree to at least two stipulations concerning rent payments that would have clarified the issues of amount and method of payment. (*See* corresp. from G. Walters to D. Thompson of 9/1/2006, ¶¶ 6, 7 attached as Exh. A.) Rather, Jamaica, objected to these requested stipulations concerning the history of rent payment and the lessor's conduct by responding to each identically: "216 does not agree to this proposed stipulation. Without the benefit of discovery, 216 Jamaica has no way of knowing whether this proposed stipulation is accurate." (Corresp. from D. Thompson to S. Williger of 9/8/2006, ¶¶ 6, 7 attached as Exh. B.) The parties' course of conduct here is highly relevant to S&R's defense of waiver as well as to *Jamaica's* interpretation of the Lease's language. Should the Court not grant S&R's Motion for Summary Judgment, S&R respectfully requests that Jamaica's own Motion for Summary Judgment be denied so that the parties may complete discovery of all the relevant facts related to S&R's defenses and denials.[1]

Further, Jamaica asks this Court to interpret the language of the Lease and the 1982 Assumption and Assignment Agreement and to conclude that the documents unambiguously resurrect a minimalist reference to "gold" in the Lease.[2] According to Jamaica, the Lease provides that annual rent is to paid in an amount that is almost thirty times the rent that has been paid by S&R since it became lessee. Jamaica insists that the "gold clause" is novated and that such an escalation is required though no evidence exists that either party to the 1982 Assignment remotely considered either the payment of an escalated rent in gold or a novation. In 1982,

---

[1] In addition, the parties have agreed to dates for the depositions of Jamaica's principals in early December 2006. S&R anticipates requesting leave of the Court to file a supplemental brief as may be necessary based upon that deposition testimony. Furthermore, the parties have agreed to the deposition of Thomas Ketteler and S&R may need to supplement its summary judgment briefing based upon that testimony as well.

[2] Jamaica raises to the Court's attention in its Counter Statement of Facts in Ptf's Opp. Brf., that Exhibit B attached to Dft's Mem. in Spt. of Summ. J. pertains to a different property. While that is true, the operative language is identical to the proper Assigment and Assumption Agreement, which is attached here as Exh. C.

under Jamaica's supposed "clear" interpretation of the 1982 Lease and Assignment and Assumption Agreement, the annual rent for the Halle Building would have been in excess of $570,000 per year. Yet the Lease stated, as well as the prior lessee, that the rent was $35,000 per year. S&R paid and has continued to pay $35,000 per year in U.S. currency. It is clear from the course of conduct between the parties to the 1982 Assignment, as well as from all conduct during the subsequent quarter of a century, that none of the parties contemplated an escalation in rent of any amount, much less the more than 2700% increase now sought by Jamaica. Nevertheless, Jamaica argues that the documents are clear and unambiguous—and that S&R must now pay in a single year's rent more than Jamaica's entire purchase price for the real estate being leased. Jamaica's claims and arguments, however, distort the agreements between the parties, and Ohio law will not support Jamaica's claims.

A.      **The Lease Speaks for Itself— The Annual Rent Set is $35,000 per year.**

Contrary to plaintiff's assertions, and as the prior summary judgment briefings make evident, S&R has not ignored previous decisions involving gold clauses, but has rather explained the significant differences between the operative documents at the center of this action and those in the cases relied upon by plaintiff. (*See* Ptf's Mem. in Opp. to Dft's Mot. for Summ. J. ("Ptf's Opp. Br.") at 3.) Instead, it is plaintiff that fails to account for these differences between the operative documents here and those in prior cases. Jamaica attempts to shoehorn the 1912 Lease and the 1982 Assignment and Assumption Agreement into prior "gold clause" decisions, where the facts will just not fit. Furthermore, none of those prior decisions occurred in Ohio or were based on Ohio law.

For the reasons set forth in S&R's prior summary judgment briefings, the rent in this 1912 Lease was set after ten years at $35,000 per year. (*See* Lease at 2, attached as Exh. A to Dft's Mot. for Summ. J.) The Lease states plainly on its face that the rent will be $35,000 for

the next "89 years" or until 2012. (*Id.*) The Lease also states that "[a]ll of said rents shall be paid in gold coin of the United States of the present standard of weight and fineness...." (*Id.*) That is all.[3]

Though plaintiff repeatedly injects the words "equivalent to" in its briefings and its Complaint with respect to the supposed requirement to pay in gold, those words never appear in the 1912 Lease as they did in the *Trostel* lease interpreted by the Eighth Circuit. *See Trostel v. American Life & Cas. Ins. Co.*, 133 F.3d 679 (8th Cir. 1998). No indication exists here that the original parties intended that the fluctuating price of gold would operate as an index against inflation or anything else. Here, the original lessor simply declared that rent was to be paid in gold. Furthermore, no evidence exists that after the first ten years of the Lease any lessee paid rent to any lessor in gold or by other than $35,000 in U.S. currency per year.[4] The parties to this action have stipulated that S&R has paid $35,000 in U.S. currency from 1982 to the beginning of this year. (Parties' First Submission of Joint Stipulated Facts at ¶ 3).

Moreover, even Jamaica's predecessor never believed that rent was anything other than $35,000 per year payable in U.S. currency. (Quesada Aff., attached as Exh. C to Dft's Mot. for Summ. J.) Mr. Quesada was the manager of the property subject to this dispute. This position held by a sophisticated party, as well as the course of conduct by which Jamaica's predecessor demanded and S&R paid $35,000 per year in rent, is strong evidence that *Jamaica's* interpretation, which would require a re-writing of the Lease, is wrong. It is overwhelming evidence that *Jamaica's* interpretation is unclear and ambiguous.

---

[3] Jamaica's Deed recorded contemporaneously with its acquisition of The Halle Building confirms these facts.

[4] Nor is there any evidence that rent was paid in gold during the first 10 years of the Lease.

**B.** **Even if Jamaica Were Right and the "Gold Clause" Was Intended By the Original Parties as a Hedge Against Inflation, It Is Unenforceable Against S&R.**

It is indisputable that the "gold clause" contained in the Lease was rendered inoperative by Congress in 1933. Jamaica concedes as much throughout its pleadings and briefs. (*See, e.g.,* Ptf's Opp. Brf. at 5.) Jamaica's entire argument for enforcing its interpretation of the "gold clause" against S&R hinges upon the creation of a new obligation whereby S&R agreed to be bound by such an interpretation. In effect, this means that at the time S&R became the lessee in 1982, S&R had to knowingly agree that a new obligation was created, including that rent (under Jamaica's theory) was in excess of $570,000 per year, rather than the $35,000 per year actually paid by S&R's predecessor, demanded by S&R's lessor, and actually paid by S&R over the next 24 years. (*See* Quesada Aff. at ¶ 4.) Obviously, no such meeting of the minds occurred.

**1.** **Novation Under Ohio Law Requires A Complete Meeting of the Minds and Consent to Novation Must Be Contemporaneous Between the Parties.**

Under Ohio law a court must find that the parties intended to effect an actual novation (as opposed to a mere assignment, which is the case here), and that the parties *consented to novation with full knowledge of their actions. See Garrett v. Lishawa*, 172 N.E. 845, 846 (Ohio Ct. App. 1930); 18 Oh. Jur. 3d Contracts § 247 (2005) (emphasis added). Jamaica relies upon the Ninth Circuit's decision in *Fay Corp. v. Frederic & Nelson Seattle, Inc.*, 896 F.2d 1227 (9th Cir. 1990) for its claim that a novation has occurred on the facts in this case. Yet the *Fay* case is illustrative of why no novation has occurred here under *Ohio* law.

In *Fay*, defendant relied upon Wyoming and Missouri cases articulating a requirement for contemporaneous consent, but the Court construed the facts under Washington law and could find no Washington law requiring a contemporaneous requirement. *Fay v. BAT Holdings I*, 646 F.Supp. 946, 951-52 (W.D. Wash. 1986) *; see also Scott v. Wyoming Oils, Inc.*, 5 P.2d 764

(Wyo. 1938); and *Emerson-Brantingham Implement Co. v. Sawyer*, 242 S.W. 1007 (Mo. Ct. App. 1922). Under Ohio law, however, consent for a novation must be *contemporaneous. See Baker v. All States Life Ins. Co.*, No. 4382, 1950 Ohio App. LEXIS 859, at *17 (Franklin Cty. Mar. 30, 1950) (holding that the parties must intend to effect a novation "at the time the novation [takes] place.") (attached as Exh. D). That is, Ohio law, unlike Washington law, does reflect the same contemporaneous consent requirement that the *Fay* defendant relied upon to show there could be no novation. It is indisputable that no contemporaneous consent occurred in this case. The 1982 Assigment and Assumption Agreement is between only the prior and current lessee, and as it states on its face, is an assignment and nothing more.

Jamaica glosses over the requirement for assent of all the parties in this matter. It relies upon language contained only in the 1912 Lease that ostensibly allows for assignment. (1982 Assignment at 1.) That language does not, however, constitute the basis for novation under Ohio law. The 1982 Assignment was between the old and new lessee only *and did not include the lessor*. To reiterate the Ohio requirement for contemporaneous consent, in *Scioto Savings Ass'n v. Porter*, No. 77AP-788, 1978 Ohio App. LEXIS 10229, at *3-4 (Franklin Cty. Mar. 2, 1978) (attached as Exh. E), the Court held "that not only must there be an obligation that is extinguished but that, the parties *at the time the novation took place* intended a novation and both parties consented thereto." *Scioto Savings Ass'n*, 1978 Ohio App. 10229, at *3-4 (emphasis added). Contemporaneous consent is thus essential in Ohio, as novation requires a complete meeting of the minds among all the parties. *See, e.g., Bahner's Auto Parts v. Bahner*, No. 97CA2538, 1998 Ohio App. LEXIS 3453, at *24 (Scioto Cty. June 23, 1998) (holding that "[n]ovation is based upon the theory that a new contract has been made, in which there has been a *complete* meeting of the minds. Thus, for a novation to be effective, *all parties* must agree to

the new or changed terms pursuant to which the substitution is made.") (emphasis added) (attached as Exh. F). As is evident from the facts here, all parties did not consent to a novation in 1982—the lessor did not—contemporaneously or otherwise, and thus under Ohio law, there was no novation.[5] The "gold clause" relied upon by Jamaica accordingly remains inoperative under federal law. This result is consistent with the parties' conduct over the past quarter of a century, and it is highly likely that further discovery would show that this conduct goes back to the Lease's inception.

### 2. S&R Assumed Only the Assignor's Obligations as of 1982 on a Going Forward Basis.

Jamaica further contends that the 1982 Assumption and Assignment Agreement in this case is just like that in *Trostel v. American Life & Cas. Ins. Co.*, 133 F.3d 679 (8th Cir. 1998), and thus the *Trostel* decision forecloses S&R's argument that the 1982 Assignment did not effect a novation. (Ptf's Opp. Brf at 6.) Jamaica, however, glosses over not only important differences in State law between this case and the prior "gold clause" cases, but also differences in the language between the 1982 Assignment here and the assignment in *Trostel*. The *Trostel* provision and the provision from the 1982 Assignment here are set forth immediately below.

The *Trostel* Court considered the following language in the assignment agreement in that case:

> [Defendant] . . . hereby accepts, assumes and agrees to be bound by all of the terms and conditions to be kept, observed, and performed by the lessee in said lease, as amended above described, from and after August 1, 1990. . . .

*Trostel*, 133 F 3d at 682. The assignment language from *Trostel* only refers to the *lessee's* obligations. The assignment language in this case is materially different:

---

[5] S&R also denies that it consented to a novation, either contemporaneously or at any other time.

> Assignee hereby accepts the foregoing *assignment* and transfer of
> said Lease, the leasehold estate thereunder, and said other property,
> and hereby assumes and agrees to perform each and all of the
> covenants, obligations, and engagements of the *Assignor* and
> lessee. . . .

(1982 Assignment and Assumption Agreement at 2) (emphasis added). The language in the

1982 Assignment clearly evinces the parties' intent to make an assignment, not to create a new

obligation. In addition, the parties' intended that S&R would assume the obligations of the

*Assignor* as of the date of the 1982 Assignment, and those obligations indisputably did not

include payment under a "gold clause."[6] The "gold clause" was rendered inoperative by federal

law in 1933, and on May 21, 1982, S&R stepped into the shoes of the prior lessee, which also

did not observe the dormant "gold clause."

### 3. The Affidavits Submitted By S&R in Support of Its Motion for Summary Judgment Are Admissible.

Jamaica contends—again relying on *Trostel*—that the affidavits submitted by Quesada

and Ketteler are inadmissible to show the intent of the parties to the 1982 Assignment. Jamaica

argues that the Eighth Circuit rejected similar affidavits in that case because the *Trostel* lease

"expressed in clear and unambiguous language" defendant's intent to be bound by the terms of

the lease. (Ptf's Opp. Brf at 9.) Jamaica runs rough shod over differences in this case.

As S&R sets forth in the previous section, the language of the 1982 Assignment here is

different than that in *Trostel*. In the 1982 Assigment, the parties agreed that S&R would assume

the obligations of the Assignor—The Halle Brothers Company—an obligation to pay rent in gold

---

[6] S&R finds the language of the 1982 Assignment unambiguous, expressing the parties' clear intent for S&R to step into the shoes of The Halle Brothers Company. To the extent that Jamaica contends that the lessee's obligations under the 1982 Assignment and Lease are different than those of the Assignor's, the 1982 Assignment is at least ambiguous under Jamaica's theories and creates an issue that cannot be resolved on a motion for summary judgment. "Once the language of a contract has been held to be ambiguous, the interpretation of such language is a question of fact that turns on the intent of the parties." *Vision Info. Servs. v. Comm'r*, 419 F.3d 554, 558 (6th Cir. 2005) (citations omitted).

in an escalated amount was not among the obligations that the Assignor, The Halle Brothers Company, performed. However, to the extent that the 1982 Assignment is unclear about which obligations were being assumed by S&R—the Assignee's (as is readily evident) or the lessee's as they existed in 1912 (as contended by Jamaica) —the 1982 Assumption Agreement is ambiguous and parol evidence is necessary to clarify the intent of the parties. "[W]here a term is ambiguous, parol evidence is admissible to interpret, but not contradict, the express language of the contract." *Euclid Asphalt Paving Co. v. Pricom Asphalt Sealcoating, Inc.*, 2005 Ohio 7049, P16 (Lake Cty. 2005).

In this case, Jamaica attempts to argue against *both* parties to the 1982 Assignment and attempts to show that those parties intended to novate the 1912 Lease when both parties to the 1982 Assignment aver that a payment of rent other than $35,000 was never even considered.

**C.  Jamaica Inconsistently Claims That an Affidavit Evidencing S&R's Loss Suffered on The Halle Building is Inadmissible Parol Evidence, Even Though it is Jamaica That Has Argued That S&R is Enjoying a Windfall by Paying $35,000.**

Further evidencing the intent of the parties in this matter is that S&R has suffered a substantial loss over the past several years on The Halle Building. (*See* Ross Aff. ¶¶ 2-4, attached as Exh. J to Dft's Mot. for Summ. J and Amended Complaint ¶ 7.) If Jamaica were right, the Lease would have been extraordinarily and even more unreasonably unprofitable. Jamaica originally asserted in its Amended Complaint and Memorandum in Support of Summary Judgment that S&R was reaping a windfall by paying $35,000 in annual rent. (Amended Complaint ¶ 5; Ptf's Mem. in Spt. of Summ J. at 3-4.) S&R responded with the affidavit of William Ross to show that S&R was not reaping a windfall but rather was rather suffering a substantial loss. (Ross Aff. ¶¶ 2-4.) That affidavit also shows that Jamaica's

interpretation of the 1912 Lease and 1982 Assignment are entirely inconsistent with economic realities.

Jamaica now argues that the affidavit of Ross is inadmissible parol evidence and that compliance with the Lease, and particularly, the "gold clause" was not "conditioned on profitability." (Ptf's Opp. Brf at 10.) Jamaica cannot have it both ways. It cannot—in an attempt to sway this Court—argue incorrectly, and obviously with no factual support, that S&R is reaping a windfall and then turn about and argue that facts disproving that contention are inadmissible. Furthermore, to the extent that the terms of the Lease or 1982 Assignment are ambiguous, parol evidence is admissible to interpret the language. *Euclid Asphalt,* 2005 Ohio 7049 at 16. Unsurprisingly, the evidence in this matter is one sided.

### D.  Jamaica's Claims are Estopped by its Deed, But In Any Event Jamaica Has Admitted That the Rent Here is $35,000 Per Year And That No Default Has Occurred.

Jamaica recorded the Deed in this action, which conveys the property that is the subject of the Lease at the heart of this action. The Lease, the 2001 estoppel Certificate, and the 1982 Assignment are all documents to which the Deed is subject, as the Deed makes clear. (Deed at 2.) Jamaica is thus estopped from making claims that contradict its Deed. Even if Jamaica were not estopped from the claims it makes here, the admissions contained in the Deed, even if falling short of an estoppel, are nevertheless entitled to full evidentiary weight. *Ward et al. v. Flex-O-Tube Co.,*194 F.2d 500, 503 (6th Cir. 1952). The admissions in Jamaica's Deed by way of the 2001 estoppel Certificate are entirely consistent with the facts asserted by S&R in this action and inconsistent with Jamaica's claims.

### 1.  The Deed is Clearly Subject to the 2001 Estoppel Certificate.

The Deed filed by Jamaica is by its own terms subject to the 2001 estoppel Certificate. (Deed at 2.) Jamaica argues that the 2001 estoppel Certificate is null and void because a later

estoppel certificate was issued in 2005, but Jamaica offers no law in support of this assertion.  In

fact, the 2005 estoppel Certificate Jamaica relies upon for its argument was issued before the

Deed was recorded, yet the Deed recorded *by Jamaica* nevertheless plainly states that it is

subject to the terms of the 2001 estoppel Certificate.  Jamaica cannot run away from its own

Deed.

It is also worth noting that even though the Deed is clearly subject to the 2001 estoppel

Certificate, the 2005 estoppel Certificate contains all of the same essential terms as the 2001

estoppel Certificate, including that the annual rent is $35,000 and that no default has occurred

under the Lease. ("2005 estoppel Certificate," attached as Exh. G.)  The 2005 Certificate is thus a

further admission by Jamaica (through its predecessor) that rent is $35,000 and that no default

under the Lease occurred.  Further and importantly, the 2005 estoppel Certificate provides that

the "base annual rent" ($35,000), and not some other escalated rent, is to be paid in quarterly

installments.  (2005 estoppel Certificate at 2.)[7]

### 2. The 2001 Estoppel Certificate Was Presented to HSBC for the Benefit of S&R.

S&R was the intended beneficiary of the 2001 estoppel Certificate, which the Deed is

subject to.  (2001 estoppel Certificate at 1.)  As the beneficiary of the 2001 Certificate, S&R

certainly relied upon the terms of the Certificate, which include that the annual rent was $35,000,

that no default had occurred under the Lease, and that the "base annual rent" was due in quarterly

installments.  (2001 estoppel Certificate at 2.)  S&R has continually relied on the fact that each

---

[7]As is explained further below, Jamaica argues that the "base annual rent" is $35,000 but that amount is only a "base" and is nevertheless subject to the "gold clause." (Ptf's Opp. Brf at 16.)  Both the 2001 and 2005 estoppel Certificates, however, contradict Jamaica's assertions by stating that "the base annual rent in the foregoing paragraph is to be paid in equal quarterly installments...." (2001 and 2005 estoppel Certificates at 2.)  The estoppel Certificates are plainly not referring to a rent inflated by Jamaica's interpretation of the Lease's "gold clause," but rather are confirming that rent is $35,000.

12

quarterly installment was and will be one-fourth of $35,000. As the Deed is subject to that Certificate, S&R's reliance extends to the Deed, which was recorded in February of this year.

### 3. The Deed is Not Collateral to this Dispute.

Jamaica also argues that the Deed is collateral to the present action and thus S&R's theories of merger by deed and estoppel by deed fail because here the "cause is different." (Ptf's Opp. Brf at 15.) The cause here is not different. While Jamaica obviously is not relying upon the Deed in making its claim in this action due to its contradictory terms, the Deed Jamaica recorded is inextricably intertwined with all of the critical documents in this action, including the Lease, the 1982 Assignment, and the 2001 estoppel Certificate. S&R is the assignee of the first, a signatory of the second, and the beneficiary of the third. The Deed is on its face subject to each of these documents. The Deed is thus not collateral to this action, but is rather at the center of the matter. Jamaica acquired the Lease by its purchase of The Halle Building and the recording of the Deed was central to Jamaica's acquisition. The Halle Building is the real estate in dispute here. Jamaica is aware of the Deed's terms. If a grantee accepts a deed, the knowledge of all its provisions are legally imputed to him. *Turner v. Fox*, No. 2003-09-251, 2005 Ohio App. LEXIS 694, at *15 (Butler Cty. Feb. 22, 2005) (attached as Exh. H).

### 4. The 2001 Estoppel Certificate is Not Consistent With Jamaica's Claims.

Jamaica further attempts to avoid the clear statements in the 2001 estoppel Certificate by stating that the language of the Certificate is consistent with Jamaica's interpretation of the terms of the Lease. Jamaica begins by stating that the $35,000 rental amount listed in the Certificate is only a "base rent" and that it is still subject to the escalations of the "gold clause." (Pltf's Opp. Brf. at 16.) Jamaica's argument, though, defies the very next provision of the 2001 estoppel Certificate:

> The base annual rent in the foregoing paragraph is payable in equal quarterly installments in advance. . . . All payments of rental due and all other sums due under the Lease up to and including the date of this Agreement have been paid[.]

(2001 estoppel Certificate at 2.) It is the base annual rent that is due to be paid by S&R, not a rent escalated by the "gold clause." Thus, contrary to Jamaica's argument, the provisions of the 2001 estoppel Certificate do not fit Jamaica's theories regarding the payment of rent.

Jamaica further attempts to undermine its own Deed by arguing that the 2001 estoppel Certificate was "plainly designed to protect only HSBC's security interest under its mortgage." Jamaica then misleads the Court by stating that the notice provision "is for the sole and exclusive benefit of Mortgagee and shall not benefit or be deemed an agreement running to either S&R or Halle." The 2001 estoppel Certificate by its own language, however, is only referring to the notice provision of paragraph (f). The 2001 estoppel Certificate makes clear that the Certificate is a condition required by HSBC for letter of credit facilities being issued for the benefit of S&R. (2001 estoppel Certificate at 1.)

Finally, Jamaica states that the language to the "best of [Halle Cleveland's] knowledge" is no more than a representation as to Halle Cleveland's knowledge and is not a representation of fact, and thus "this limitation" is fatal to S&R's estoppel argument. (Pltf's Opp. Brief at 16, fn 13.) Jamaica's half-hearted argument is offered in a footnote without support of law, and regardless of its force with regard to an estoppel, the Certificate—actually both the 2001 and 2005 estoppel Certificates—represent clear admissions that annual rent is $35,000, that no default occurred under the Lease, and that the base rent of $35,000 is to be paid in quarterly installments. (*See* Dft's Opp. Brf. at 3-5.) These admissions are Jamaica's by way of its predecessor and the Deed it recorded earlier this year. These admissions by Jamaica contradict its claims in this case.

### E. Jamaica Has Waived Its Claims.

#### 1. The Lease Is Not A Self-Executing Rental Increase.

Fundamentally, and contrary to Jamaica's arguments, the Lease here is not self-executing and thus Jamaica has affirmatively waived any entitlement to payment under the purported "gold clause." Jamaica relies on *Frank B. Thomas Trust v. Imperial 400 National, Inc.*, No. 14202, 1990 Ohio App. LEXIS 1242 (Summit Cty. Mar. 28, 1990) (attached as Exhibit I). to support its assertions that a gold clause is a self-executing rental increase, yet that case involves neither a gold clause nor a lease with language remotely similar to the 1912 Lease. In *Imperial*, the central issue was the enforceability of a self-executing rental increase. *Imperial*, 1990 Ohio App. LEXIS 1242, at *3. The lease at issue in *Imperial* contained a provision that provided:

> ...the rent ***shall be adjusted*** for the following ten (10) year period by the percentage       change of the U.S. Department of Labor Wholesale Commodity Price Index (or a        comparable index replacing such Bureau of Labor Index) from the latest figure  published prior to the date of this lease to the last figure published prior to the start of each such ten (10) year period.

*Id.* at *4-5 (emphasis added).

Only where lease terms *clearly and expressly* make a rental increase automatic upon renewal does the lease create an affirmative duty upon the lessee to tender the amount. *Bill Swad Chevrolet v. Ricart Jeep Eagle*, 129 Ohio App. 3d 501, 504 (Ohio Ct. App. 1998). Without question, *Imperial's* lease was clearly and expressly self-executing; however, the terms of S&R's Lease neither clearly nor expressly create a self-executing rental increase. The *Imperial* Court specifically noted that leases with the language "shall be increased" create a self-executing lease. *Imperial*, 1990 Ohio App. LEXIS 1242, at *4-5. Any such language is absent from the Lease here. While the court in *Imperial* considered the "shall be adjusted" language in *Imperial's* lease sufficient to create a self-executing lease provision, nowhere in *Imperial* did the court stretch self-executing lease provisions to reach to the term "shall be paid, which is the term found in the

1912 Lease"[8]  Because the Lease does not contain the language to create a self-executing lease Jamaica would have the court equate "shall be increased" to "shall be paid."  The court in *Imperial* made no such holding, and neither should this Court.  Because the Lease does not contain a self-executing rental increase, Halle Cleveland's failure to make an affirmative demand may be construed as an act of affirmative waiver.

Jamaica's caution to the Court in finding waiver is also ill founded in light of the facts. Unlike *White Co. v. Canton Transp. Co.*, 2 N.E.2d 501 (1936), cited by Jamaica, here there is overwhelming conduct evidencing Halle Cleveland's waiver of the gold clause.  In *White*, the court properly expressed reluctance toward finding waiver because there was scant evidence proving waiver.  *White*, 2 N.E.2d at 505 (noting that the "only vestige of testimony tending to show waiver" was a single oral conversation.)  Here, it should be beyond dispute that S&R entered into the 1982 Assignment because the annual rent was $35,000, and it is beyond dispute that from 1982 to 2006 S&R paid $35,000 per year without objection of any kind from the lessor.  Additionally, Jamaica's reliance on *White* to support its waiver counter arguments is misguided, as the court in *White* did not address whether there was a waiver in that case.  *White*, 2 N.E.2d at 505 ("It is not necessary for this court to determine whether or not there was a waiver....").

## 2.    The 1982 Assignment and the Parties' Conduct Waived the Right to any Rental Payments Different Than $35,000.

The repeated rental payments and acceptance of those payments combined with the 1982 Assignment provide ample evidence of Jamaica's waiver to demand any rent exceeding $35,000. It is true that "mere silence," standing alone, cannot constitute waiver by acquiescence.  *Hazard*

---

[8] Any such stretch would seek to read self-executing rental increases into virtually all leases.  One would unlikely find any lease without terms instructing how the rent "shall be paid."

*Coal Corp. v. Ky. W. Va. Gas Co.*, 311 F.3d 733, 741 (6th Cir. 2002). However, silence coupled with an agreement or negotiation can constitute waiver. *See Id.* Here, there is not "mere silence." The 1982 Assignment and the repeated acceptance of $35,000 all evidence an agreement between S&R and Halle Cleveland that constituted waiver. Indeed, Halle Cleveland, through the property's manager, Robert Quesada, has stated "[a]t all times, rent payable under the 1912 Lease was payable and paid in United States currency in the annual amount of $35,000." (Quesada Aff. ¶ 4.) The 1982 Assignment did not ask for an increase in rent, even though the original lease contained a "gold clause." Halle Cleveland cannot and does not deny that it knew or should have known the contents of the 1912 Lease. To the contrary, it states unequivocally that rent was $35,000 per year.

Further, intentionally engaging in an act inconsistent with claiming a right constitutes waiver. *Bucher v. Schmidt*, No. 5-01-48, 2002 Ohio App. LEXIS 4064, at *8-9 (Hancock Cty. Aug. 2, 2002) (attached as Exh. J); *Marfield v. Cincinnati, D. & T. Traction Co.*, 111 Ohio St. 139, 145 (Ohio 1924) ("A 'waiver' is the voluntary surrender or relinquishment of a known legal right or intentionally doing an act inconsistent with claiming it."); *Baughman v. State Farm Mut. Auto. Ins. Co.*, 160 Ohio App. 3d 642, 646 (2005) ("'Waiver' is the voluntary surrender or relinquishment of a known legal right or intentionally doing of an act inconsistent with claiming it."). Failing to request an increase in rent at the time of the 1982 Assignment coupled with the acceptance of $35,000 in rent for 24 years after the 1982 Assignment, clearly is inconsistent with a right to increase the rent under the "gold clause."[9]

---

[9] Reliance by S&R, contrary to Jamaica's arguments, is self evident. S&R relied upon the lessee's and lessor's prior and present conduct in 1982 in determining that rent was $35,000 per year. Based on this reliance, S&R entered into the 1982 Assignment. S&R has furthermore continued its tenancy based upon that reliance.

While Jamaica asserts that the Ohio Supreme Court has rejected the proposition that "accepting checks for lesser amounts than due, without protest" necessarily constitutes "a waiver of the right to the unpaid portion" of the amount due by quoting *Allenbaugh v. City of Canton*, 28 N.E. 2d 354, 357 (1940), the Supreme Court rejected the proposition in the context of a classified civil service employee's unpaid salary. *Allenbaugh*, 28 N.E. 2d at 357 (holding that a fireman was entitled to unpaid salary as a result of the city's conduct in laying the fireman off on several different occasions because it was in violation of a certain statutory provision). The *Allenbaugh* Court made no holding regarding leases, let alone leases involving gold clauses.

### 3.  S&R Needs No Consideration to Enforce Halle Cleveland's Waiver.

Halle Cleveland's acts of accepting $35,000 for 24 years and failing to request an increase in rent at the time of the 1982 Assignment are so inconsistent with the intent to claim the right to raise the rent under the "gold clause" that no consideration is necessary to enforce the waiver. The waiver of contractual rights typically requires consideration *unless* the actions of the party making the waiver are such that he must be estopped from insisting upon the right claimed to have been relinquished. *RWS Bldg. Co. v. Freeman*, 2005 Ohio 6665, P23 (Ohio Ct. App. 2005); *Marfield v. Cincinnati, D. & T. Traction Co.*, 111 Ohio St. 139, 145 (Ohio 1924). "Waiver by estoppel" occurs when the acts and conduct of a party are inconsistent with an intent to claim a right, and have misled the other party to his prejudice thereby estopping the party having the right from acting upon it. *RWS*, 2005 Ohio 6665, at P23. "The general view is that a party to a written contract can waive a provision of that contract by conduct expressly or surrounding performance, despite the existence of a so-called anti waiver or 'failure to enforce' clause in the contract." WILLISTON ON CONTRACTS § 36 (4th ed. 1990); *see also Lopresti & Sons, Inc. v. General Car & Truck Leasing Sys.*, 79 Fed. Appx. 764, 769 (6th Cir. 2003) (Courts finding such "non-waiver" provisions to have been waived, rely, in part, on a conclusion that a

party has reasonably relied on the other party's conduct.) Here, Halle Cleveland's representations at the time of the 1982 Assignment, and the continued acceptance of $35,000 for 24 years confirms S&R's justified belief that the rent was $35,000. (*See* Aff. of Robert Quesada at ¶ 5-6.) S&R detrimentally relied on the rent being and remaining $35,000 per year. S&R entered into the 1982 Assignment based on this reliance.

### 4. Plaintiff Bases Its Anti-Waiver Argument On Cases That Are Factually Dissimilar.

Jamaica asserts that past acceptance of partial rent does not waive a subsequent breach, yet none of the cases cited by Jamaica stands for this proposition. First, Jamaica cites *Gaul v. Olympia Fitness Ctr.*, 88 Ohio App. 3d 310 (Ohio Ct. App. 1993) to stand for the proposition that past acceptance of partial rent does not waive a subsequent breach of the "gold clause." *Gaul*, however, does not discuss leases or partial payments of rent or a "gold clause." *Gaul*'s holding and analysis only involved mortgagors and mortgagees—neither of which are applicable to the facts of this case. *Gaul*, 88 Ohio App. 3d at 317 (noting that a mortgagee's past acceptance of late loan payments did not constitute a waiver of the mortgagee's right to accelerate and foreclose on a loan following a subsequent default where the relevant loan documents contain "anti-waiver" provisions).

Further misleading the court, Jamaica cites *Ed Wolf, Inc. v. National City Bank*, No. 68898, 1997 Ohio App. LEXIS 237, at *21-22 (Ct. App. Jan. 23, 1997) (attached as Exh. K), yet again, this case does not even mention leases or payments of a lesser amount. Instead, *Ed Wolf, Inc.* discusses late payments on a loan in relation to floorplan financing agreements. *Ed Wolf, Inc.*, 1997 Ohio App. LEXIS 237, at *21-22 (noting that past acceptance of late payments does not constitute a waiver of the creditor's right to accelerate on a loan following a subsequent default where the loan document contains an anti-waiver provision). Plaintiff's string cite of

dissimilar cases continues with *K.B. Oil Co. v. Ford Motor Credit Co.*, 811 F.2d 310 (6th Cir. 1987). In *K.B. Oil Co.*, the facts involved a debtor who argued that the creditors unlawfully or wrongfully repossessed trucks, that one secured creditor tortiously interfered with the debtor's sale of some trucks, and that the sale of some trucks was commercially unreasonable. *K.B. Oil Co.*, 811 F.2d at 312-13. Again, there was no discussion of partial or lesser payments of rent. *Id.* Finally, Jamaica cites a case that involves a commercial lease. However, in *Tie Bar, Inc. v. Buffalo Mall, Inc.*, Nos. 78 CA 95 to 78 CA 100, 1979 Ohio App. LEXIS 8786, at *8 (Mahoning Cty. Apr. 30, 1979) (attached as Exh. L), the non-waiver provision discussed by the court addressed only the acceptance of late rental payments. *Tie Bar* does not discuss partial payments and waiver, let alone stand for the proposition that their acceptance would not constitute a waiver.

Further, the waiver clause cited by Jamaica in *Lewis & Michael Moving & Storage, Inc. v. Stofcheck Ambulance Serv.*, No. 05AP-662, 2006 Ohio App. LEXIS 3775 (Franklin Cty. July 25, 2006) (attached as Exh. M) is entirely different than the waiver clause here. That clause expressly addressed "strict performance" by the Lessor or Lessee. *Lewis & Michael Moving & Storage, Inc.*, 2006 Ohio App. LEXIS 3775, at *17-18. That waiver provided:

> Any failure of Lessor or Lessee to insist upon strict performance of any terms, conditions and covenants herein shall not be deemed as a waiver of any right or remedies upon any default by the other, neither shall it prejudice nor affect ether's [sic] respective rights or remedies in the event of subsequent defaults.

*Id.* Here, the waiver provision in the Lease only discusses waiver in general.

Finally, Jamaica's reliance on *HUB Bldg. & Loan Co. v. Stone*, No. 2884, 1938 Ohio Misc. LEXIS 979, at *6-8 (Franklin Cty. Oct. 28, 1938) (attached as Exh. N) is also misguided. In *HUB*, the court looked at the failure to pay rent as well as the breach of three other covenants of the lease. The court did *not* specifically hold, as Jamaica suggests, that breach by partial

payment of rent does not waive subsequent obligations to pay rent. The court held that "the breach of the covenant to pay rent does not waive breaches of other covenants." *HUB*, 1938 Ohio Misc. LEXIS 979, at *6-8. Additionally, *HUB* did not discuss partial payment, rather only a complete failure to pay rent. Here, there is not a failure to pay rent. S&R has consistently and timely paid $35,000 per year under the plain terms of the Lease. Also, the only covenant allegedly breached is S&R's alleged partial payment of rent.

## CONCLUSION

For all the reasons above and those contained in Defendant's Memorandum in Support of Motion for Summary Judgment, and S&R's Response Brief in Opposition to Plaintiff's Motion for Summary Judgment, which are incorporated herein, plaintiff 216 Jamaica Avenue LLC's Motion for Summary Judgment should be denied and defendant S&R Playhouse Realty Co.'s Motion for Summary Judgment granted.

Respectfully submitted,

/s/ Gary L. Walters
Stephen D. Williger (0014342)
Gary L. Walters (0071572)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
(216) 566-5500
(216) 566-5800 – Fax
Stephen.Williger@ThompsonHine.com
Gary.Walters@ThompsonHine.com

Attorneys for Defendant
S & R Playhouse Realty Co.

## CERTIFICATE OF SERVICE

A copy of the foregoing *Defendant's Reply Brief in Support of Defendant's Motion for Summary Judgment* was filed electronically this 27th day of November, 2006. Parties will receive notice through the Court's electronic filing system.

/s/ Gary L. Walters
One of the Attorneys for Defendant
S & R Playhouse Realty Co.