IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| 216 JAMAICA AVENUE, LLC, ) | |
| ) | Civil Action No. 06-1288 |
| Plaintiff, ) | |
| ) | Judge Boyko |
| v. ) | |
| ) | |
| S & R PLAYHOUSE REALTY CO., ) | **SUPPLEMENTAL BRIEF IN SUPPORT** |
| ) | **OF DEFENDANT'S MOTION FOR** |
| Defendant. ) | **SUMMARY JUDGMENT AND** |
| ) | **OPPOSED TO PLAINTIFF 216** |
| ) | **JAMAICA'S SUPPLEMENTAL** |
| ) | **MOTION IN SUPPORT OF** |
| ) | **SUMMARY JUDGMENT** |

**Introduction**

By way of an arcane provision in a 1912 Lease, plaintiff 216 Jamaica Avenue, LLC ("Jamaica"), the Halle Building's new owner, seeks a rent increase from its lessee that is almost thirty times the current rent. The rent demanded by Jamaica for a single year exceeds by more than $100,000 the entire purchase price paid by Jamaica for the property in this dispute. The opportunism suggested by such a rent demand is self evident, but even if were not, it is confirmed by the sworn testimony of Stuart Venner, Jamaica's owner and sole decision maker.[1] Jamaica's rent demand, if correct, would utterly destroy the reasonable commercial underpinnings of the 1982 Assignment and Assumption ("1982 Assignment") entered into by

---

[1] Jamaica is owned 50% by Stuart Venner, and 50% by his wife, Grace Venner. Ms. Venner has no role in the operations of Jamaica or input into any decisions made respecting Jamaica. "Q: By the way, what is Grace's role in all of these properties and memberships that she is a 50 percent owner of? A: She's my wife. That's it." (S. Venner Dep. p. 34, attached as Exh. A.) Ms. Venner confirmed that she had no role by her own testimony. (G. Venner Dep. p. 25, attached as Exh. B.) Ms. Venner further had "no idea" why Jamaica had even sued S&R. (Id. at 27.) The deposition transcripts of Stuart and Grace Venner are being filed contemporaneously with this brief.

1

S&R Playhouse Realty Co. ("S&R") and Jamaica's predecessor. It is undisputed that S&R has lost money for years on the Halle Building under even the current annual rent of $35,000.[2]

Indeed, Mr. Venner's testimony on behalf of Jamaica is compelling evidence that there was no meeting of the minds between the lessor and lessee in 1982 respecting Jamaica's "gold clause" theory.[3] Jamaica's theory is entirely dependent upon the argument that a supposed gold clause that was made inoperative by Congress more than 70 years ago, was knowingly novated by S&R and Jamaica's predecessor in the 1982 Assignment. In light of the fact that an "agreement" between the parties to the 1982 Assignment would have resulted in a commercially ridiculous transaction—not to mention a greatly escalated rent that never happened—it is obvious that that such an interpretation never entered into either parties' mind and thus Jamaica's novation theory is unavailing under Ohio law, which requires a complete meeting of the minds. In addition, no evidence adduced in this case remotely suggests that any party, or anyone else other than Jamaica, has ever interpreted the Lease to require more than the present rent of $35,000 per year.

Moreover, S&R has shown in its prior briefings that Jamaica itself agreed to documents that acknowledge the rent on the Halle Building is $35,000 per year. The very deed by which Jamaica took the property, and which it recorded in 2006, is on the face of the deed subject to an estoppel certificate that plainly states the amount of rent is $35,000. That deed estops Jamaica from now taking any different position. Even if the deed does not estop Jamaica from sustaining

---

[2] See Ross Aff., attached to Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment as Exh. F.

[3] The very price that Jamaica paid for the Halle Building presupposed a rent of $35,000, as will be shown below.

2

the claims in this action, the deed is compelling evidence of the true rent, and is a party-opponent admission.

In response to S&R's estoppel arguments, Jamaica has now filed a Supplemental Brief in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment (Plaintiff's Supplement). Jamaica argues that S&R's 30(b)(6) witness, Patrick Lott, has admitted that because S&R is not a party to the deed, Jamaica cannot be estopped by the deed under the principle of mutuality. Jamaica also asserts in its Plaintiff's Supplement that Mr. Lott testified that if the deed recited a term of the Lease differently than the Lease, then the deed would be mistaken.

Jamaica's supplemental arguments are entitled to no weight whatsoever. Jamaica's arguments involve questions of law for the Court, not for an expert witness, and certainly not for Mr. Lott, who was not put forward as an expert on the law or any other subject. At bottom, the admissions in the estoppel certificate attached to the deed are Jamaica's admissions, and thus are party-opponent admissions that cut directly against Jamaica's "gold clause" theory.

**Law and Argument**

A. **Jamaica's Owner's Testimony Underscores Plaintiff's Opportunistic Behavior and That the Parties to the 1982 Assignment Did Not Contemplate an Escalated Rent Under a "Gold Clause" Theory.**

To begin, Mr. Venner, in his deposition, confirmed that the value of the property and the transaction presented to him by the property's broker, Kimco Realty Corporation ("Kimco"), was based upon a rent of $35,000. (S. Venner Dep. p. 167 and see Kimco offer sheet, both attached as Exh. C.) The capitalization rate (or "cap rate") presented to Mr. Venner by Kimco was listed at 3.911%.[4] (S. Venner Dep. p. 166.) Mr. Venner concedes that this cap rate was based upon

---

[4] **Capitalization Rate** is a measure of the ratio between the cash flow produced by an asset (usually real estate) and its capital cost, which is the purchase price. The rate is calculated as follows:

3

two numbers: $35,000 in annual rent and the offered purchase price of $895,000. Mr. Venner further stated that the cap rate was computed correctly based upon those two numbers—the rent and offered purchase price.[5] (S. Venner Dep. p. 167.) These admissions coupled with the offer sheet presented to Mr. Venner by Kimco at the inception of the transaction (Exh. C), are compelling evidence of the correct rent due under the Lease.[6] The purchase price paid by Jamaica for the Halle Building was expressly based upon a rent of $35,000. Mr. Venner admits that he was satisfied, even pleased, with the cap rate of 3.911% as stated by Kimco:

> Q. Was [3.911%] a satisfactory cap rate with respect to this purchase?
>
> A. Yes.
>
> Q. Were you pleased with that cap rate?
>
> A. On this purchase, yes.

(S. Venner Dep. p. 93.) Despite being pleased with the cap rate, Mr. Venner now asserts that he is entitled to a commercially outrageous cap rate exceeding 100%.

Mr. Venner also conceded that if the rent on the Halle Building was actually $1,000,000 per year as plaintiff asserts in its Amended Complaint and briefings, then the value of the Halle Building would have been far greater than the purchase price paid by Jamaica. (S. Venner Dep.

---

    Annual cash flow / Capital Cost = Capitalization Rate

For example, if a building is purchased for $1,000,000 sale price and it produces $100,000 in positive net cash flow (the amount left over after fixed and variable costs are subtracted from gross lease income) during one year, then: $100,000 / $1,000,000 = 0.10 = 10% Thus, the asset's capitalization rate is ten percent. A property's capitalization rate is a commonly-used method for determining a property's worth.

[5] It is undisputed that Jamaica paid a total price of $845,000 for the Halle Building. (Parties' First Submission of Joint Stipulated Facts, ¶ 2.)

[6] Mr. Venner's only response to the fact that Kimco presented the rent as $35,000 was to say that there is a "common kind of dictum in the real estate business that you never believe anything that a broker says anyway." (S. Venner Dep. at 116.) Mr. Venner's explanation falls flat, however, since he paid a purchase price that nearly perfectly matched the broker's offer sheet.

p. 116.) Mr. Venner goes so far as to concede that the Halle Building would have certainly been worth five times more than the purchase price under plaintiff's "gold clause" theory, and he could not say that it would not have been worth ten times more than the purchase price. (Id.) In other words, under plaintiff's "gold clause" theory, Mr. Venner concedes that the Halle Building would have been worth millions of dollars more than the $845,000 paid by Jamaica. This means that the purchase price paid by Jamaica is entirely inconsistent with the rent that it demands of S&R.

These simple facts reveal not only Mr. Venner's unabashed greed, but also the implausibility of plaintiff's claims in this action.[7] The parties to the 1982 Assignment did not contemplate, and their minds certainly did not meet on, a provision in the Lease that would result in a rent tens of times more than the rent being paid both before and after the 1982 Assignment. Contrary to plaintiff's arguments, the Lease does not clearly require an annual rent indexed to some value of gold, as evidenced by the fact that no party to the Lease has ever read it that way. It is not reasonable to conclude that the parties' minds met at the time of the 1982 Assignment, which is a requirement for novation under Ohio law, and that they agreed to pay an escalated amount of rent, when the parties from 1982 to 2006 (when Jamaica acquired the Halle Building) consistently paid and accepted without complaint the $35,000 rent referenced in the Lease. Indeed, under Ohio law, there must be a <u>complete</u> meeting of minds among the parties to

---

[7] Mr. Venner's deposition testimony resonates throughout with pride at how clever he has been with respect to this transaction and litigation. When, for instance, Mr. Venner was asked whether a rent of $1,000,000 represented a windfall for Jamaica (in essence, an unjust enrichment), the deposition goes on for several pages because Mr. Venner would not reasonably apply his own definition of "windfall" to the $1,000,000 rent he demands. He ends the discussion by stating that the word "windfall" is not a word that he would apply to himself:

    Q. Under your definition, it would never apply to yourself but would always apply to someone else?
    A. It is a word that is used that way, yes. <u>I would say I made a very good deal</u>.

(S. Venner Dep. p. 171) (emphasis added). In contrast, Mr. Venner had no difficulty in applying the term "windfall" to S&R, even though S&R was losing money on the Halle Building. (Id. pp. 162 *ff.*)

5

substitute the new agreement for the old one. Bahner's Auto Parts, 1998 Ohio App. LEXIS 3453, at *23 (Scioto Cty. June 23, 1998), attached as Exh. F to Defendant's Motion for Summary Judgment. Each party must manifest knowledge and consent <u>not only to the novation itself</u> <u>but to the terms of the new obligation they create through novation</u>. Id. at *24. Plaintiff has the burden to show that a novation occurred. Parkway Bus. Plaza Ltd. P'ship v. Custom Zone, Inc., 2006 Ohio 5255, P22 (Ohio Ct. App. 2006) ("The burden of proving a novation rests upon him who sets it up as a claim"). Given the undisputed fact that S&R has paid rent in the amount of $35,000 for the past twenty-four years, it is only obvious that this is what the parties agreed to do.

Furthermore, Mr. Venner knew that Jamaica's theory of rent being based upon a gold clause would blindside the affected parties:

> Q. You know, forgive me, but if I am looking at rent and it is not right, I think I want to ask: What is going on here? What don't I know?
>
> A. That was not the way I looked at it.
>
> Q. How did you look at it?
>
> A. That if I was wrong in my impression that there was something going on here, that I would be happy to own the building and get my 4.2 percent return. If something was--if my conclusions were right, **then I had what amounted to some sort of opportunity**. I didn't feel I had any obligation to share it with the seller. I didn't feel any need.

(S. Venner Dep. pp.123-24) (emphasis added). The "some sort of opportunity" that Mr. Venner is talking about here relates to his secret reading of a Lease that is nearly 100 years old. Other than the deal presented to Mr. Venner by Kimco, there was no commercially reasonable "opportunity" existing in this transaction based on good faith, fair dealing, and sound business principles, but rather only on a contrived interpretation of a Lease. That Mr. Venner sat quietly on his theory of rent at the time of the transaction proves that he knew the parties had never

6

contemplated such an interpretation, and there was thus no meeting of the minds between the parties at the time of the 1982 Assignment. Further evidencing Mr. Venner's and Jamaica's knowledge that these parties to the Lease never contemplated a "gold clause" theory is that Jamaica hired its present litigation counsel even prior to entering into the purchase of the Halle Building:

> Q. So that sometime after the due diligence period, but before closing, you contacted litigation counsel?
>
> A. Yes.

(S. Venner Dep. pp. 200-01.) There can be no question what Mr. Venner anticipated in advance of his new interpretation of the Lease. He knew that S&R and his predecessor would be shocked by his theory and he accordingly kept his mouth shut and braced for a lawsuit. All parties to the novation must agree. In this case, Mr. Venner essentially admits that S&R did not do so.

**B.  Plaintiff's Supplemental Brief in Support of Summary Judgment and In Opposition to Defendant's Motion for Summary Judgment is Entitled to No Weight.**

Plaintiff has filed its Supplement to bolster arguments that it is not bound by its own admissions contained in the estoppel certificate attached to the deed at the time of Jamaica's purchase of the Halle Building. The estoppel certificate states the amount of rent due under the Lease: "The base annual rent under the Lease is $35,000 exclusive of taxes and other items of additional rental and all other amounts payable under the Lease." (Estoppel Certificate, attached as Exh. E to Dft's Mot. for Summ. J'ment.) Plaintiff argues two points.

First, plaintiff attempts to distance itself from its admission in the estoppel certificate by arguing that S&R's 30(b)(6) witness, Patrick Lott, stated over an objectionable question that it is "impossible for an estoppel certificate to modify an underlying lease because the estoppel certificate is 'not between the parties' to the Lease." (Plaintiff's Supplement at 2.)

7

Mr. Lott, however, was not offered as an expert and is not a lawyer. Nor was he involved with S&R at the time of the 1982 Assignment and thus had no firsthand knowledge of that assignment. (P. Lott Dep. at 16, attached to Plaintiff's Supplement as Exh. B.) In addition, this line of questioning asked by counsel for plaintiff certainly exceeded the scope of plaintiff's 30(b)(6) notice of deposition.

Second, plaintiff also seeks to show that if the estoppel certificate recites a fact from the Lease that varies from the Lease, then the Lease is correct and the estoppel certificate is mistaken.

Plaintiff confounds both points.

1.  **Plaintiff's attestations in the 2001 estoppel certificate are at least clear party-opponent admissions that contradict plaintiff's allegations in the Amended Complaint.**

Plaintiff's position in its Supplement can be summed up that because S&R was not a party to the 2006 Halle Building purchase and deed, Jamaica therefore cannot be bound with respect to recitals in the estoppel certificate attached to the deed and to which the deed is subject. S&R, however, was not a mere stander-by to the estoppel certificate. While the lender, HSBC Bank, required the estoppel certificate to be signed by Jamaica's predecessor as the lessor of the Halle Building, it is clear that the certificate was demanded in part because of credit extended to S&R. The estoppel certificate attached to the deed states on its face that the lender required the estoppel certificate in part as a condition to certain letter of credit facilities provided "for the benefit of S&R and Halle."[8]

Jamaica's predecessor was clear on what the bank required, which, among other things, was a simple statement of the rent owed by S&R under the Lease. Jamaica's predecessor, in

---

[8] S&R is mentioned no less than seven times in the 2 1/2 page estoppel certificate dated December 2001.

whose shoes Jamaica now stands, accurately reported to the bank the amount of rent owed by S&R to the lessor under the Lease. Anything else would have been a fraudulent or negligent misrepresentation of the rent owed.[9]

In fact, no reason exists to believe that the rent reported by Jamaica's predecessor was either unimportant or fraudulent. Rather, the report by Jamaica's predecessor to HSBC is a party-opponent admission concerning the correct amount of rent. Jamaica is bound by these admissions and cannot escape these attestations made to a federally-chartered bank so easily and cavalierly as attempted by Mr. Venner in his deposition:

> Q. You never saw or reviewed the Estoppel Certificate dated December 2001?
>
> A. No. And I never reviewed and saw the temporary right of way, use of easement to the Greater Cleveland Transit Authority. I never saw that either.
>
> Q. Why did you not review those things?
>
> A. I never thought about it.
>
> Q. You did not think they were important?
>
> A. I didn't think they were important.
>
> Q. Do you still believe they are not important?
>
> A. Yes.

(S. Venner Dep. pp. 184-85.)

Mr. Venner makes the statement that he never saw the 2001 estoppel certificate even though he signed a document as part of the Halle Building purchase wherein he "confirmed" that he did review it.

---

[9] 18 U.S.C. § 1344 is titled "Bank fraud," and makes it illegal to "knowingly" execute a "scheme or artifice … to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises…."

9

> Q. Then it says, "Gentlemen: With respect to our Contract of Sale dated today, this shall confirm that we have reviewed the copies of the following actual or formed documents."
>
> Do you see that?
>
> A. Yes.
>
> Q. Look at No. 11. What does it say?
>
> A. Estoppel Certificate dated December 1, 2001 to HSBC Bank.
>
> Q. Did you or did you not review the Estoppel Certificate?
>
> A. I don't recall.
>
> Q. Your testimony earlier was that you had never seen it before litigation. Do you recall that?
>
> A. If that's what I said, yes. I really basically just signed the sheet. I guess I never really looked at it.

(S. Venner Dep. p. 189.)

Minimally, Jamaica's statements concerning rent in the 2001 estoppel certificate are party-opponent admissions pursuant to Fed. R. Evid. 801(d)(2).

### 2. **The rent stated in the 2001 estoppel certificate correctly reflects the language of the Lease.**

Jamaica also takes the position in its Plaintiff's Supplement that Mr. Lott confirmed that if a recital in a document refers to a provision in a Lease and misstates the Lease's provision, it is simply in error and cannot alter the terms of the Lease. Jamaica, however, misleadingly points away from the real issue.

The 2001 estoppel certificate's statement of rent does not alter the Lease's plain language or the parties' long time course of conduct but, instead, confirms and explains it. The Lease and the 2001 estoppel certificate both state that the rent under the Lease is $35,000 per year. The two provisions are in accord by a plain reading of the Lease. Only when the Lease is given a strained

interpretation, such as by Plaintiff's insistence that the Lease requires that gold be used as an index for a constantly varying rent, are the 2001 estoppel certificate and Lease at odds. In such an instance, the 2001 estoppel certificate demonstrates that Jamaica's reading of the lease is not clear and is not unambiguous. While the Court should decide the ambiguity or not of a contract's provisions, it is for a fact-finder to determine the meaning of an ambiguous provision. See, e.g., Heights Driving Sch. v. Top Driver, 51 Fed. Appx. 932, 937 (6th Cir. 2002) ("To the extent that the meaning of the contract may have been ambiguous, the district court properly left its interpretation to the jury").

### 3. **Mr. Lott was presented as a corporate witness on behalf of S&R pursuant to Fed. R. Civ. P. 30(b)(6), not as an expert witness.**

Mr. Lott was presented as a fact witness on behalf of S&R pursuant to Fed. R. Civ. P. 30(b)(6). The entirety of Plaintiff's Supplement attempts to apply Mr. Lott's testimony to issues of law. The question of whether the doctrine of mutuality applies to S&R's theories of merger and estoppel by deed under the facts of this case is unquestionably an issue of law for the Court. As well, whether or not the language of the 2001 estoppel certificate and the language of the Lease complement or contradict one another are questions of contract interpretation and in the first instance are questions for the Court, and in the second instance (resolving an ambiguity) for the fact-finder. See, e.g., United States ex rel. Compton v. Midwest Specialties, 142 F.3d 296, 302 (6th Cir. 1998) ("The interpretation of a contract is an issue of law which this court reviews de novo. . . . Expert testimony is not proper for issues of law."). Accordingly, Plaintiff's Supplement is entitled to no weight in this matter.

## Conclusion

For all the reasons above, as well as those in S&R's prior summary judgment briefings, S&R respectfully requests that the Court grant S&R's Motion for Summary Judgment and deny Jamaica's.

Respectfully submitted,

s/ Gary L. Walters
Stephen D. Williger (0014342)
Gary L. Walters (0071572)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio  44114-1291
(216) 566-5500
(216) 566-5800 – Fax
Stephen.Williger@ThompsonHine.com
Gary.Walters@ThompsonHine.com

Attorneys for Defendant
S & R Playhouse Realty Co.

# **CERTIFICATE OF SERVICE**

A copy of the foregoing Supplemental Brief in Support of Defendant's Motion for Summary Judgment and Opposed to Plaintiff 216 Jamaica's Supplemental Motion in Support of Motion for Summary Judgment was filed electronically this 8th day of May, 2007. Parties will receive notice through the Court's electronic filing system.

/s/ Gary L. Walters
One of the Attorneys for Defendant
S & R Playhouse Realty Co.