**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| 216 JAMAICA AVENUE, LLC, | ) | CASE NO. 1:06-CV-01288 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | |
| S & R PLAYHOUSE REALTY CO., | ) | OPINION AND ORDER |
| | ) | |
| Respondent. | ) | |

## CHRISTOPHER A. BOYKO, J:

This matter is before the Court on cross-filed Motions for Summary Judgment by Plaintiff Jamaica Avenue, LLC ("Jamaica"), and Defendant S & R Playhouse Realty Co. ("S & R"). For the following reasons, the Court grants Summary Judgment for Defendant and against Plaintiff.

Jamaica leases a parcel of land at 1228 Euclid Avenue in Cleveland, Ohio, to S & R ("Lease"). Plaintiff claims the Lease requires S & R to pay its annual rent in quarterly installments of a certain weight in gold, while S & R contends it has always paid, and continues to pay, its rent in U.S. currency. Jamaica claims S & R's payments in U.S. currency constitute a breach of the Lease.

1

Jamaica seeks compensatory damages for rent owed by S & R and prays the Court declare S & R is obligated to comply with Jamaica's interpretation of the Lease prospectively.

**FACTS**

On March 15, 1912, the Realty Investment Company agreed to lease a parcel of land at 1228 Euclid Avenue in Cleveland, Ohio, to Salmon and Samuel Halle ("Halle Brothers") for ninety-nine years. Pursuant to this Lease, the lessee holds an option to renew the Lease for twenty-five, fifty, or ninety-nine years. The Lease set the annual rent for the first two years at $10,000 payable in quarterly installments. It then increased the rent over a period of ten years and stabilized it for the remaining eighty-nine years at $35,000.

The Lease also states: "[a]ll of said rents shall be paid in gold coin of the United States of the present standard of weight and fineness" ("gold clause"). When the parties signed the Lease, the Gold Standard Act of 1900 defined the standard weight and fineness of a gold-coin dollar as "consisting of twenty-five and eight-tenths grains of gold nine-tenths fine." ("1912 gold-coin dollar"). Thus, in 1912, for example, the Lease required the Halle Brothers to pay the lessor an annual rent of ten thousand 1912 gold-coin dollars.

In 1933, Congress passed legislation allowing "dollar for dollar" payments in United States currency to discharge any obligation to pay in gold ("1933 Joint Resolution"). Joint Resolution of June 5, 1933, 48 Stat. 112, 113 (1933) (previously codified at 31 U.S.C. § 463 (1977)) (codified as amended at 31 U.S.C. § 5118(d)(2) (2006)). Thus, in 1933, the lessee could now discharge its annual rental obligation by tendering a payment of $35,000 in U.S. currency. In 1977, Congress amended this legislation to state it would not apply to any obligation to pay in gold issued after October 27, 1977. Pub. L. No. 95-147, § 4(c), 91 Stat. 1227, 1229 (codified as

amended at 31 U.S.C. § 5118(d)(2)).

On May 21, 1982, the Halle Brothers' successor-in-interest, the Halle Brothers Company, assigned its leasehold estate to S & R ("1982 Assignment"). Under the 1982 Assignment, the assignee "assume[d] and agree[d] to perform each and all of the covenants, obligations, and engagements of the Assignor and lessee under said Lease and all other terms and provisions thereof on the part of lessee to be observed and performed after the date hereof."

In 2006, Jamaica purchased the property at 1228 Euclid Avenue from the original lessor's successor-in-interest. Jamaica, the current lessor, now claims the 1982 Assignment caused all obligations under the Lease, including the gold clause, to issue anew. Primarily, it argues the 1982 Assignment effected a novation of the Lease, thus forming a new contract incorporating all of the Lease terms as valid new obligations. Alternatively, it argues S & R entered into all obligations under the Lease, including the gold clause, when it came into both privity of contract and privity of estate with the lessor under the 1982 Assignment. Because the 1933 Joint Resolution would not apply to any obligation issued in 1982, Jamaica claims the 1982 Assignment now requires S & R to pay an annual rent of thirty-five thousand 1912 gold-coin dollars pursuant to the Lease. Today, thirty-five thousand 1912 gold-coin dollars is worth nearly one million U.S. dollars.

S & R rejects Jamaica's interpretation of what the gold clause requires and raises two defenses to its enforcement. First, it contends the gold clause does not require the lessee to pay an annual rent of thirty-five thousand 1912 gold-coin dollars; rather, it merely requires the lessee to pay its annual rent in gold coins totaling $35,000 in value. Further, S & R claims an estoppel certificate signed by Jamaica's predecessor in 2001 precludes Jamaica from asserting its present

claim, because the estoppel certificate plainly states the base annual rent for the property is $35,000. Finally, it claims Jamaica's predecessor waived any right to payment in 1912 gold-coin dollars by continually accepting $35,000 in U.S. currency as satisfactory payment of rent after the 1982 Assignment.

This Court, however, must not interpret the meaning of the gold clause, nor must it consider the defenses raised by S & R. For the reasons stated below, Jamaica has failed to establish the 1982 Assignment caused the lessee's obligations under the Lease to issue after October 27, 1977. The 1933 Joint Resolution, therefore, continues to apply, and S & R may continue to discharge its rental obligations by paying its $35,000 annual rent in U.S. currency.

## **STANDARD OF REVIEW**

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. V. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issue of material fact rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323. A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

4

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. Of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985). However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 317). Further, this Court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Betkerur v. Aultman Hosp. Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996). "Rather, the burden falls on the non-moving party to designate specific facts or evidence in dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## **The 1982 Assignment**

As stated above, Congress amended the 1933 Joint Resolution in 1977 to allow for the enforcement of any new obligation to pay in gold. Pub. L. No. 95-147, § 4(c), 91 Stat. at 1229. The amended statute now states: "An obligation issued containing a gold clause or governed by a gold clause is discharged on payment (dollar for dollar) in United States coin or currency that is legal tender at the time of payment. *This paragraph does not apply to an obligation issued after October 27, 1977*." 31 U.S.C. 5118(d)(2) (emphasis added). While the meaning of the term "issued" is unclear from the plain language of the statute, the Eleventh Circuit has defined this

term as meaning "entered into." *Rudolph v. Steinhardt*, 721 F.2d 1324, 1330 (11th Cir. 1983).

Jamaica provides three reasons why S & R entered into the gold clause under the 1982 Assignment. First, it argues S & R entered into all obligations under the Lease by coming into privity of contract with lessor under the 1982 Assignment. Second, it argues S & R came into privity of estate with the lessor, thus requiring S & R to perform all covenants running with the land, including the covenant to pay its rent in 1912 gold-coin dollars. Third, Jamaica argues the gold clause issued with the 1982 Assignment because the assignment effected a novation of all the original Lease terms, including the gold clause. As the moving party, Jamaica bears the burden of demonstrating it is entitled to judgment as a matter of law on these claims.

A novation is the substitution of a new obligation for an old one. *Scioto Savings Ass'n v. Porter*, 1978 Ohio App. LEXIS 10229 at *2 (Mar. 2, 1978). Under Ohio law, a novation requires four essential elements: (1) a previous valid obligation; (2) an agreement to the new contract by all parties involved in either the old or new contract; (3) a new contract that is so complete as to extinguish the old contract; and (4) the making of a valid new contract. *Grant-Holub Co. v. Goodman*, 156 N.E. 151, 153 (Ohio Ct. App. 1926). A novation cannot be presumed, *Citizens State Bank v. Richart*, 476 N.E.2d 383, 385 (Ohio Ct. App. 1984), and the burden of proving a novation lies with the party asserting its presence. *Braun v. Danter*, 1975 Ohio App. LEXIS 8224 at *9 (May 20, 1975).

Because a novation requires a new contract, there must be a meeting of the minds. *Bahner Auto Parts v. Bahner*, 1998 Ohio App. LEXIS 3453 at *24 (June 23, 1998) (citing *State ex. rel. Bettman v. Court of Common Pleas of Franklin Cty.*, 178 N.E. 258 (Ohio 1931)). Thus, the party asserting a novation must demonstrate it was the clear and definite intention of *all* parties to effect

one. *Garret v. Lishawa*, 172 N.E. 845, 846 (Ohio App. Ct. 1930) (emphasis added). The parties must share this intention at the time the novation is said to occur. *Scioto*, 1978 Ohio App. LEXIS 10229 at **2-3. Such an intention need not be expressed in words. *Union Central Life Insurance Co. v. Hoyer*, 64 N.E. 435, 436 (Ohio 1902). Instead, it may be shown "by sufficient attending facts, circumstances and subsequent course of conduct." *Id*.

Neither party has offered any Ohio case law as to whether a lease provision may operate as a lessor's contemporaneous consent to a novation of the lease when it (1) grants the power of assignment to the lessee and (2) extinguishes the lessee's liability upon assignment. Many courts outside this jurisdiction have answered in the affirmative. *See, e.g., Fay Corp. v. Bat Holdings I, Inc.*, 646 F. Supp. 946 (W.D. Wash. 1986) (applying Washington law), aff'd, 896 F.2d 1227 (9th Cir. 1990); *Trostel v. American Life & Casualty Insurance Co.*, 92 F.3d 736 (8th Cir. 1996), vacated sub. nom. *American Life & Casualty Insurance Co.*, 519 U.S. 1104 (1997) (remanding case to Eighth Circuit Court of Appeals for further consideration in light of intervening legislation).

In *Trostel*, the terms of a ninety-nine-year commercial lease "provided that the lessee could transfer the leasehold and that upon such transfer the lessee would be released from any personal liability." 92 F.3d at 741 n.8. Noting the lessors did not challenge the validity of a lease provision operating as prior consent to a subsequent novation, the Court held the provision was a clear indication of the lessor's consent to the novation upon transfer of the leasehold. *Id*.

In *Fay Corp.*, the terms of a ninety-nine-year lease (1) granted the lessee the power to assign the lease to a third party and (2) released the lessee from all obligations upon assignment, provided the assignment satisfied certain conditions. *Id.* at 949 n.4-5. Because the assignment met

these conditions, the Court held the lease provision represented the lessor's prior consent to the assignment operating as a novation of the lease. *Id.* at 952-53.

In this case, as in *Trostel*, the 1912 Lease releases the lessee from "personal liability" upon assignment. However, the 1912 Lease grants the lessee the power of assignment only if the lessor provides written consent or, similar to *Fay Corp.*, the parties to the assignment satisfy the following four conditions: (1) the lessee pays all rents and charges and satisfy all covenants before assignment; (2) the assignee "expressly assume[s] the lessee's engagements" under the 1912 Lease; (3) the parties record instrument in the proper recorder's office; and (4) the parties "place[] in the hands of the lessor for inspection during a period of ten (10) days a legal and sufficient instrument of assignment and acceptance."

There is no evidence the lessor agreed in writing to the 1982 Assignment. Instead, Jamaica relies on the terms of the 1912 Lease to prove the lessor's consent at the time of the alleged novation. Pursuant to these terms, however, the lessor's consent to an assignment is contingent upon the satisfaction of the above four conditions. Here, while Jamaica has presented evidence of the first three conditions being satisfied, there is no evidence either party to the 1982 Assignment placed the assignment in the hands of the Lessor for the ten-day inspection period. Thus, Jamaica has not proven all four conditions were satisfied, and the Court, therefore, cannot hold the Lease proves the Lessor consented to a novation at the time of the 1982 Assignment. Because a novation requires such consent, Jamaica has not proven the 1982 Assignment was a novation of the 1912 Lease.

Jamaica has offered no authority for its argument that a preexisting, yet unenforceable, gold clause obligation issues anew when a party comes into privity of either contract or estate.

Also, Plaintiff is still not released under its alternate theory from demonstrating the original lessor either consented to the assignment in writing or was given the assignment and acceptance for ten days. As discussed above, Plaintiff has failed to demonstrate either of these conditions occurred. Therefore, the Court finds Plaintiff has failed to demonstrate assignor's liability was extinguished and, consequently, the gold clause did not issue after October 27, 1977, the date of the assignment.

Jamaica has failed to prove the gold clause issued after October 27, 1977, and, therefore, has not established S & R is now obligated to pay its $35,000 annual rent in anything other than U.S. currency. The Court, therefore, grants Summary Judgment for S & R and against Jamaica.

IT IS SO ORDERED

July 2, 2007  s/Christopher A. Boyko
Date  CHRISTOPHER A. BOYKO
United States District Judge