**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| 216 JAMAICA AVENUE, LLC, )| Civil Action No. 06-1288 |
| ) | |
| Plaintiff, ) | (Judge Boyko) |
| ) | |
| v. ) | |
| ) | |
| S & R PLAYHOUSE REALTY CO., ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION FOR LEAVE TO AMEND ANSWER *INSTANTER*

Instead of responding to Jamaica's renewed summary judgment motion, S&R moved for

leave to amend its Answer to add two defenses and for a continuance under Rule 56(f) so that it

could take additional discovery. The Court should deny both motions. Jamaica here responds to

S&R's motion for leave to amend, and responds to S&R's motion for a continuance in a separate

brief filed today.

Because S&R's proposed defenses – equitable estoppel and

"impracticability/impossibility" – are affirmative defenses,[1] S&R must state them in its Answer.

FED. R. CIV. P. 8(c). By waiting until this late stage of the litigation, S&R has waived the

defenses. Even if S&R could in theory cure its failure to have asserted these defenses by seeking

leave to amend its Answer, such leave would be inappropriate under the circumstances. A

motion to amend an answer should be denied if there is "undue delay, bad faith or dilatory

motive on the part of the movant, … undue prejudice to the opposing party by virtue of

---

[1] *See* FED. R. CIV. P. 8(c)(1); *Jacobs v. Jacobs*, No. 07-1043, 2008 U.S. Dist. LEXIS 23968, at
*3 (N.D. Ohio Mar. 26, 2008) (Boyko, J.) (Ex. A); *Roth Steel Prods. v. Sharon Steel Corp.*, 705
F.2d 134, 149 (6th Cir. 1983); *State v. Curtis*, 2008 Ohio 5643 ¶ 31 (Ohio Ct. App. 2008).

Dockets.Justia.com

allowance of the amendment, futility of amendment, etc.," *Foman v. Davis*, 371 U.S. 178, 182

(1962).  Leave to amend is futile if "the new defense proposed in the amendment is frivolous or

based on legally insufficient grounds."  *Broad v. Barnes*, 1983 U.S. App. LEXIS 13083, at *5

(6th Cir. 1983) (Ex. B); *Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir.

2005).  Moreover, because S&R's proposed defenses are affirmative defenses, S&R bears the

ultimate burden of proof.  Thus, S&R's motion for leave should also be denied because it has

unduly delayed asserting these defenses, to Jamaica's detriment, and because its proposed

defenses are legally insufficient.

## I.    S&R HAS WAIVED ITS PROPOSED AFFIRMATIVE DEFENSES

By waiting until now, S&R has waived its proposed affirmative defenses under Rule 8(c).

Jamaica filed its Complaint nearly two and a half years ago, on May 25, 2006 (dkt #1).[2]

Subsequently, S&R asserted a variety of defenses in numerous filings, including: a motion to

dismiss (dkt #15, Aug. 11, 2006); an Answer (dkt #19, Oct. 4, 2006); a summary judgment

motion (dkt #21, Oct. 12, 2006) and reply (dkt #28, Nov. 27, 2006); a response to Jamaica's

summary judgment motion (dkt #27, Nov. 14, 2006); a motion for leave to supplement its

summary judgment motion (dkt #22, Oct. 19, 2006) and reply (dkt #34, Jan. 17, 2007); an

opposition to Jamaica's motion for leave to file a surreply in opposition to S&R's summary

judgment motion (dkt #31, Dec. 20, 2006); and a supplemental memorandum in support of its

summary judgment motion (dkt #36, May 8, 2007).  The Court ruled on the parties' initial

motions for summary judgment on July 2, 2007 (dkt #42).  Yet, at no point during the thirteen

months between the Complaint and the ruling on the summary judgment motions did S&R assert

these defenses.

---

[2] Jamaica filed an amended complaint on September 12, 2006 (dkt #17), but the amendment
merely withdrew Jamaica's claim insofar as it related to rent due prior to Jamaica's acquisition
of the property.  That amendment has no bearing on S&R's proposed defenses.

But S&R easily could have.  Its proposed affirmative defenses were as relevant at the time the Complaint and its initial Answer were filed as they are today.  S&R does not suggest otherwise.  Nor does S&R suggest that there was any reason why it could not have asserted these affirmative defenses previously.[3]  Permitting S&R to assert new affirmative defenses so long after filing its initial Answer and after all the dispositive briefing to date "would violate Rule 8(c)."  *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 824 (6th Cir. 1990).  Accordingly, S&R's proposed defenses "hav[e] been waived."  *Id.* (affirmative defenses waived where "the defendants waited almost a year before filing their answer and almost nineteen months before raising the [affirmative defense] in their motion for summary judgment").

## II.   S&R HAS UNDULY DELAYED, TO JAMAICA'S DETRIMENT

Even if S&R has not waived its proposed defenses, leave to amend should be denied because S&R has unduly delayed asserting them, to Jamaica's detriment.  As just explained, S&R had ample time to assert these defenses.  Further, S&R has not explained why it has delayed, nor could it.  *See Russell v. GTE Gov't Sys. Corp.*, 141 Fed. Appx. 429, 437 (6th Cir. 2005) (affirming denial of leave because, *inter alia*, movant did "not offer a good reason for his lengthy post-judgment delay"); *Rogan v. Lane*, No. 98-1578, 1999 U.S. App. LEXIS 22488, at *9 (6th Cir. Sept. 13, 1999) (Ex. C) (same); *Maiden v. APA Transp. Corp.*, No. 00-883, 2002 U.S. Dist. LEXIS 8076, at *24-25 (S.D. Ohio May 6, 2002) (Ex. D) (denying leave where movant "has not proffered any explanation or justification for delaying moving for leave").

Moreover, in light of S&R's extreme delay, leave to amend will "unfairly prejudice" Jamaica.  *Macurdy*, 894 F.2d at 824.  Jamaica has long conducted this litigation in a manner

---

[3] The reason cannot be that S&R needed further discovery.  S&R is now asserting these proposed defenses even though it has not yet had the discovery it deems adequate.  Besides, as Jamaica details in its opposition to S&R's motion for a continuance, S&R had ample opportunity before the Court ruled on the parties' motions summary judgment to take the discovery it now wants.

responsive to the defenses S&R previously asserted.  Injecting new affirmative defenses at this late stage will require not only additional briefing, but also, possibly, further discovery, which may be costly.  In fact, the parties would possibly have to re-depose witnesses they previously deposed, including Thomas Ketteler and Patrick Lott.  Of course, as Jamaica explains in its opposition to S&R's motion for a continuance, the Court can and should dispose of S&R's proposed defenses without awaiting the results of further discovery, but still, the prejudice that would result from permitting amendment now is substantial.

### III.   S&R'S PROPOSED DEFENSES FAIL AS A MATTER OF LAW

Leave to amend the Answer would be futile because S&R's proposed defenses of equitable estoppel and "impracticability/impossibility" are legally insufficient on their face.

#### A.   Equitable Estoppel

S&R seeks to equitably estop Jamaica from enforcing the gold clause.  *See* Mem. in Supp. of Def. S&R Playhouse Realty Co.'s Mot. for Leave to Amend Answer *Instanter* ("S&R Leave Br.") 3-5; Mem. in Supp. of Def. S&R Playhouse Realty Co.'s Mot. for Continuance ("S&R Continuance Br.") 4-5.  "[E]quitable estoppel requires that the proponent prove four elements: (1) that the adverse party made a factual misrepresentation; (2) that the misrepresentation was misleading; (3) that the misrepresentation induced actual reliance which was reasonable and in good faith; and (4) the proponent suffered detriment due to the reliance." *First Energy Solutions v. Gene B. Glick Co.*, 2007 Ohio 7044, ¶ 13 (Ohio Ct. App. 2007) (quotation marks omitted); *see also Ohio State Bd. of Pharm. v. Frantz*, 555 N.E.2d 630, 633 (Ohio 1990).  "As to the first two elements, a showing of fraud or constructive fraud is necessary." *First Energy Solutions*, 2007 Ohio 7044, ¶ 13 (quotation marks omitted); *see also Frantz*, 555 N.E.2d at 633 ("The purpose of equitable estoppel is to prevent actual or constructive fraud …."); *Livingston v. Diocese of Cleveland*, 710 N.E.2d 330, 339 (Ohio Ct.

App. 1998).  A statement is fraudulent only if it is "made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred[, and] with the intent of misleading another into relying upon it."  *First Energy Solutions*, 2007 Ohio 7044, ¶ 13 (quotation marks omitted).[4]  S&R "must prove each of these elements by clear and unequivocal proof."  *Andres v. Perrysburg*, 546 N.E.2d 1377, 1383 (Ohio Ct. App. 1988).  "[W]here the facts are undisputed, it is proper for the court to determine on summary judgment if the facts constitute a case where equitable estoppel is necessary."  *Id.*

S&R contends that it "made substantial capital improvements, and entered into long-term subleasing and lending arrangements in reliance upon, among other things, Jamaica's course of conduct in accepting rent payments of $35,000 per year in rent for almost a quarter of a century, and upon Jamaica's issuance of several estoppel certificates to S&R's lenders for S&R's benefit, all of which state that rent was $35,000 per year."  S&R Leave Br. 4.  S&R's defense fails as a matter of law for several reasons.

### 1.    There Was No Fraudulent Representation of the Rent Obligation

The notion that Jamaica's predecessors **fraudulently** represented S&R's rent obligation is ludicrous.  S&R concedes, and indeed has previously trumpeted, that Jamaica's predecessors failed to enforce the gold clause for nearly 25 years after S&R became the lessee.  *See, e.g.*, Mem. in Supp. of Mot. for Summary Judgment ("S&R S.J. Br.") 2-3.  S&R thus imagines that Jamaica's predecessors intentionally or knowingly misrepresented the rent obligation in order to cheat **themselves** out of a quarter century's worth of gold clause-adjusted rent.  That is a "fraud" that has never occurred and never will.

---

[4] Constructive fraud requires that "the parties to a contract have a special confidential or fiduciary relationship."  *Cohen v. Estate of Cohen*, 491 N.E.2d 698, 700 (Ohio 1986); *Kegg v. Mansfield*, 2001 Ohio App. LEXIS 2035, at *12 (Ohio Ct. App. Apr. 30, 2001) (Ex. E).  S&R and Jamaica's predecessors were not in such a relationship, and S&R does not suggest otherwise.

S&R's theory is at odds with the position it took in the Sixth Circuit, namely, that "[n]o one contemplated the possibility" that the Lease called for annual rent equal to the prevailing value of the amount of gold contained in $35,000 in United States gold coin in 1912. *216 Jamaica Ave., LLC v. S & R Playhouse Realty Co.*, 540 F.3d 433, 440 (6th Cir. 2008).  The affidavit of Robert Quesada – which S&R obtained and submitted to the Court – confirms that Jamaica's predecessors did not fraudulently misrepresent S&R's rent obligation.  Mr. Quesada was the Vice President of the sole member of Jamaica's immediate predecessor, Halle Cleveland LLC, and the property manager for the land subject to the Lease.  *See* Deed (Feb. 7, 2006) FCID 396-97 (Ex. F); Aff. of Robert Quesada (Oct. 10, 2006) ¶ 3 (Ex. G).  Mr. Quesada states that no one "ever requested or demanded" annual rent "in an amount exceeding $35,000," that "at no time did anyone at Halle Cleveland LLC … ever raise an issue or suggest in any way that the rent under the 1912 Lease was adjustable based upon the price of gold," and that "at no time while Halle Cleveland LLC was lessor under the 1912 Lease did any party raise an issue with the amount or method of paying rent in connection with the leasehold."  Aff. of Robert Quesada ¶¶ 4-6.  In sum, Mr. Quesada's affidavit establishes that Halle Cleveland did not realize that S&R's rent was to be adjusted on the basis of the price of gold and that Halle Cleveland was not trying to mislead S&R about the measure of its rent obligation.  Indeed, Halle Cleveland LLC sold the property to Jamaica at a price that assumed that S&R would continue to pay only $35,000 in annual rent.  *See* Dep. of Stuart Venner at 166-67 (Ex. H).

## 2.     The Representations in the Certificates Were Not Made to S&R

S&R cannot estop Jamaica on the basis of the representations about the rent contained in the certificates because those certificates were not made to S&R.  The certificates were expressly "given by" Jamaica's predecessors "to" S&R's lenders, not to S&R.  *See, e.g.*, 2001 Certificate at FCID 0393 (Ex. I).  S&R insists that the certificates were given "for [its] benefit," S&R Leave

Br. 4, but, even if correct, *but see* Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. ("Jamaica

S.J. Opp.") 17, that does not suffice – the representation must be made to the party asserting the

estoppel.  *Fifth Third Bank v. Lorance*, 2007 Ohio 4217, ¶¶ 4, 27 (Ohio Ct. App. 2007) (on

motion for summary judgment, holding that, where lender USB requested from lender Fifth

Third a letter stating the full payoff amount of borrower's credit line with Fifth Third, and Fifth

Third then sent such a letter to the borrower, the letter was not a representation to USB and so

USB could not estop Fifth Third on the basis of the letter).

### 3.       Jamaica's Predecessors Did Not Misrepresent S&R's Rent Obligation

In any event, it is not clear that Jamaica's predecessors represented that the annual rent is

a flat $35,000 in money by issuing the estoppel certificates or by continually accepting $35,000

in annual rent.  *See* Jamaica S.J. Opp. 16.  At most, their representations were ambiguous, which

will not suffice to estop Jamaica.  *Allenbaugh v. Canton*, 28 N.E.2d 354, 357 (Ohio 1940)

(estoppel "will not be deemed to arise from facts which are ambiguous and subject to more than

one construction"); *Andres*, 546 N.E.2d at 1383.[5]  The certificates state that "[t]he base annual

rental under the Lease is $35,000."  *E.g.*, 2001 Certificate at FCID 0394.  This is consistent with

the Lease, which sets the base annual rent at $35,000 and then calls for adjustments to that base

amount by virtue of the gold clause.  *See Frank B. Thomas Trust v. Imperial 400 Nat'l, Inc.*, No.

14202, 1990 Ohio App. LEXIS 1242, at *2, *10 (Ct. App. Mar. 28, 1990) (Ex. J) (where lease

provided that rent be adjusted every ten years to reflect inflation, referring to unadjusted rent as

"base rent"); *Wells Fargo Bank, N.A. v. Bank of Am.*, 38 Cal. Rptr. 2d 521, 523 (Cal. Ct. App.

1995) (referring to unadjusted amount of rent in gold-clause lease as "base rent").  Indeed, the

certificates state that the "base annual rental" is "exclusive of … other items of additional

---

[5] *Allenbaugh* used the term "estoppel in pais," which is a synonym for "equitable estoppel."  *See*
*Hortman v. City of Miamisburg*, 852 N.E.2d 716, 718 (Ohio 2006).

rental," *e.g.*, 2001 Certificate at FCID 0394, which can readily be construed to include the adjusted rental payments required by the gold clause.  Although the certificates also state that "there has occurred no default under the Lease," *e.g.*, 2001 Certificate at FCID 0394, such statements represent at most that Jamaica's predecessors accepted S&R's partial payments in satisfaction of the full rental obligation, not that the full annual rental obligation was only $35,000 in money.  Similarly, Jamaica's predecessors' acceptance of $35,000 in rent indicates at most that they elected to accept S&R's partial payments in satisfaction of the full rental obligation, not that the full annual rental obligation was only $35,000 in money.  In fact, the Lease expressly contradicts the suggestion that the certificates or the acceptance of $35,000 constituted a representation that the annual rent was a flat $35,000, providing, "All of said rents **shall** be paid in gold coin of the United States of the present standard of weight and fineness." Lease at 2 (emphasis added).  This clause is a "self-executing rental increase provision," which obligated S&R regardless of whether Jamaica's predecessors "ma[d]e an affirmative demand for the increased rent." *Thomas Trust*, 1990 Ohio App. LEXIS 1242, at *5, *9; *see* Jamaica S.J. Opp. 17-18.

### 4.    S&R's Alleged Reliance Was Unreasonable

S&R's alleged reliance on the certificates and the acceptance of $35,000 in rent was unreasonable, for at least two reasons.  First, there can be equitable estoppel only if "the party claiming estoppel did not know and could not have known that its adversary's conduct was misleading." *Frantz*, 555 N.E.2d at 633; *see also Pedler v. AETNA Life Ins. Co.*, 490 N.E.2d 605, 608 (Ohio 1986).  S&R – which is part of an extremely sophisticated real-estate company[6] – is thus barred from asserting estoppel because it was well-positioned to know its true rent obligation: all it had to do was read the Lease, which, as just noted, expressly requires that the

---

[6] *See* Forest City Enters., Inc., 2008 10-K, *available at* http://www.secinfo.com/dsVS7.t2dt.htm.

rent of $35,000 be adjusted periodically.  *See Pedler*, 490 N.E.2d at 607 (on motion for summary judgment, holding that insurer could "enforce the limitation on eligibility for coverage clearly stated in its master policy … despite the acceptance of premium payments and the issuance of a certificate specifying greater coverage").[7]  It does not matter whether S&R understood the significance of the gold clause in light of the 1977 amendment of the Joint Resolution, 31 U.S.C. § 5118(d)(2), and the 1982 Assignment and Assumption because "mistake of law cannot give rise to an equitable estoppel."  *Heskett v. Paulig*, 722 N.E.2d 142, 147 (Ohio Ct. App. 1999).

Second, even if S&R could reasonably have relied on these alleged extra-contractual misrepresentations, it could not have reasonably believed that those representations would have any force with respect to **future** rent obligations.  The Lease provides "that the waiver by the lessor, its successors or assigns, of any covenant, agreement, stipulation or condition herein contained shall not be construed as a waiver of any subsequent breach of such covenant, agreement, stipulation, or condition."  Lease at 5.  We have already shown that this anti-waiver provision precludes a finding that any failure by Jamaica's predecessors to enforce the gold clause constituted a waiver of the gold clause in the future.  *See* Jamaica S.J. Opp. 18-20.  That analysis applies with equal force to S&R's proposed estoppel defense.  *See Finkbeiner v. Lutz*,

---

[7] *See also Hill v. City of Urbana*, No. 94-22, 1995 Ohio App. LEXIS 3276, at *21-22 (Ohio Ct. App. Aug. 9, 1995) (Ex. K) (on summary judgment motion, holding party did not reasonably rely on representation contradicting terms of contract), *rev'd other grounds*, 79 Ohio St. 3d 130 (1997); *Hatry v. Painesville & Youngstown Ry. Co.*, 1 Ohio Cir. Dec. 238, 1886 Ohio Misc. LEXIS 23, at *6-7 (Ohio Cir. Ct. 1886) (Ex. L) (where mortgage recited resolution inaccurately, defendant was not estopped "from showing what, in fact, was the resolution"); *Kilgus v. Minnesota Mut. Life Ins.*, No. 05-7279, 2006 U.S. Dist. LEXIS 60295, at *13-16 (N.D. Ohio Aug. 24, 2006) (Ex. M) (on summary judgment motion, finding no equitable estoppel where plaintiff knew her contractual rights contradicted representations upon which she claimed to have relied); *see also Hill v. Osborne*, No. E1999-00365-COA-R3-CV, 2000 Tenn. App. LEXIS 197, at *13-14 (Tenn. Ct. App. Mar. 30, 2000) (Ex. N) (declaring that "there can be no estoppel where both parties have the same means of ascertaining the truth," and holding that "[t]he tenants cannot argue that they did not have an 'opportunity to know the truth' when the requirements were explicitly set forth in the lease") (quotation and citation marks omitted).

337 N.E.2d 655, 658 (Ohio Ct. App. 1975) (holding that although lessors' past failures to enforce terms of lease constituted waiver and thus estoppel with respect to those past failures, "nothing … will prevent [lessors] from strictly enforcing the lease provisions in the future").[8]

### 5. S&R Did Not Actually Rely on the Alleged Misrepresentations

S&R says that "in reliance" on the alleged misrepresentations about the rent obligation, it "made substantial capital improvements, and entered into long-term subleasing and lending arrangements."  S&R Leave Br. 5.  Because Rule 56 "requires more than the bare assertion of legal conclusions," *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 35, 361 (6th Cir. 2001), S&R's assertion that it relied, standing alone, will not suffice to create a genuine issue of material fact.  And there is no reason to believe that the alleged misrepresentations caused S&R to make capital improvements, issue subleases, and enter lending arrangements.  Those actions were obviously designed to maximize S&R's revenue from the building.  S&R borrowed money in order to improve the building, thereby enticing subtenants who would be willing to pay S&R more in rent.  But once S&R was bound by the Lease, it had every reason to maximize its revenue from the property **regardless of the amount of rent it owed under the Lease**.  S&R has never suggested that, in a magnanimous attempt to share the windfall it gained by Jamaica's predecessors' non-enforcement of the gold clause, it offered its tenants subleases at below-

---

[8] Although the doctrines of waiver and equitable estoppel are "distinct," "waiver is typical of estoppel," *Sloan v. Shafer Commer. & Indus. Servs.*, 2008 Ohio 4765, ¶ 19 (Ohio Ct. App. 2008), and indeed if, as here, the alleged waiver is to be implied by conduct, then the proponent of the waiver must "prove a clear, unequivocal, decisive act of the party against whom the waiver [is] asserted, showing such a purpose or acts amounting to an estoppel," *Bahner's Auto Parts v. Bahner*, No. 97-2538, 1998 Ohio App. LEXIS 3453, at *19 (Ohio Ct. App. June 23, 1998) (Ex. O); *Lewis & Michael Moving & Storage, Inc. v. Stofcheck Ambulance Serv., Inc.*, 2006 Ohio 3810, ¶ 29 (Ohio Ct. App. 2006); *Finkbeiner*, 337 N.E.2d at 658.  Consequently, courts holding that the failure to enforce a contractual term does not constitute a prospective waiver of that term where there is an anti-waiver provision have also held, expressly or impliedly, that such failure does not estop the party from enforcing the term in the future.  *See Lewis & Michael*, 2006 Ohio 3810, ¶¶ 29-36; *Gaul v. Olympia Fitness Ctr.*, 623 N.E.2d 1281, 1285-86 (Ohio Ct. App. 1993).

market rents.  In other words, even if Jamaica's predecessors had enforced the gold clause

against S&R, S&R would have taken the same actions because the rent – of whatever amount –

was a sunk cost.  If anything, S&R would have had an even greater incentive to take these

actions but for the alleged misrepresentations because it would have needed to generate even

more revenue to offset its higher rent cost.

### 6.     Enforcement of the Lease Will Not Prejudice S&R

Finally, enforcement of the Lease will not prejudice S&R.  S&R says "it will be severely

prejudiced by the new and increased rent that Jamaica now demands purportedly under the terms

of the Lease."  S&R Continuance Br. 4-5.  There is no doubt that S&R's rent will be higher

under the gold clause, but that increase is not relevant prejudice because it is not "due to the

reliance."  *First Energy Solutions*, 2007 Ohio 7044, ¶ 13; *Thomas Trust*, 1990 Ohio App. LEXIS

1242, at *9-10 (lessee not prejudiced by increase in rent resulting from belated enforcement of

rent-adjustment provision).  And because, as just explained, the alleged misrepresentations did

not cause S&R to behave differently, those alleged misrepresentations, as a matter of law, cannot

have prejudiced S&R.  Indeed, S&R's suggestion that enforcement of the gold clause now would

prejudice it is "without merit because [S&R] ha[s] actually had the benefit of charging

competitive [subrents] while at the same time paying the same base rent amount for [nearly]

twenty-five (25) years."  *Thomas Trust*, 1990 Ohio App. LEXIS 1242, at *10.  As another court

addressing the belated enforcement of a long-unenforced gold clause remarked, S&R "was not

injured but rather obtained a financial windfall."  *Wells Fargo*, 38 Cal. Rptr. 2d at 529.

### B.     "Impracticability/Impossibility"

S&R contends that a "requirement to pay [rent] in gold coin of the United States is

commercially impractical if not entirely impossible" because "[t]he gold coins in existence at the

time of the Lease in 191[2] were removed from circulation by law immediately following the

Great Depression," and "[n]o new gold coins were issued by the United States at any time from 1934 up to and including the time S&R entered into the Assignment in May 1982."  S&R Leave Br. 5.  S&R's defense fails as a matter of law because it is predicated on its misunderstanding of the meaning of the gold clause, which the Sixth Circuit has now conclusively rejected, in accordance with every other court to have considered an identical or substantially similar gold clause, including the United States Supreme Court and an Ohio court.

The 1912 Lease's gold clause provides that the rent of $35,000 "shall be paid in gold coin of the United States of the present standard of weight and fineness."  Lease at 2.  The parties have advanced two fundamentally different interpretations of this clause.  In S&R's view, the Lease specifies gold as the **means** of payment.  The gold clause would define the payment due as a fixed amount of dollars ($35,000 annually, or $8,750 quarterly) to be paid in a fluctuating amount of gold coins determined by the price of gold on the date payment is due.  Thus, if gold cost $500 per ounce on the date a quarterly payment was due, S&R would owe an amount of coins containing 17.5 ounces of gold.  If the price of gold then rose to $1,000 per ounce the next time a quarterly payment was due, S&R would owe an amount of coins containing 8.75 ounces of gold.  The annual rent would always equal $35,000, and thus the gold clause would afford no protection against inflation whatsoever.  The Sixth Circuit conclusively rejected that view of the gold clause, because the court found that the clause is " 'a sort of price-indexing mechanism [intended] to protect a lessor from the effects of inflation.' "  *216 Jamaica Ave.*, 540 F.3d at 435 (quoting *Trostel v. Am. Life & Cas. Ins. Co.*, 92 F.3d 736, 738 (8th Cir. 1996)).

Jamaica's view is the opposite: the Lease would use gold as the **measure** of payment. The gold clause would define the payment due as a fixed amount of gold (1,693 ounces of gold annually – which is the amount of gold in $35,000 worth of gold coins in 1912, when the Lease

was executed, *see* Jamaica S.J. Opp. 4 & n.3 – or 423 ounces of gold quarterly) to be paid in a fluctuating amount of dollars determined by the price of gold on the date payment is due.  Thus, if gold cost $500 per ounce on the date a quarterly payment was due, then S&R would owe on that date $211,500.  If the price of gold then rose to $1,000 per ounce the next time a quarterly payment was due, S&R would owe on that date $423,000.  This type of gold clause is known as a "gold value" clause because it ensures that the lessor always receives the value of a constant amount of gold.  Kenneth W. Dam, *From the Gold Clause Cases to the Gold Commission: A Half Century of American Monetary Law*, 50 U. CHI. L. REV. 504, 518-19 (1983).

S&R's "impracticability/impossibility" defense can succeed only if S&R is correct that the gold clause specifies that the means of payment is gold coin, because then the unavailability of gold coin may render performance impracticable or impossible.  But if the gold clause is a "gold value" clause – that is, if it uses gold coin only to measure the amount of money due – then S&R's ability to perform the gold clause would not depend at all on whether gold coins are available at the time the payment is due.  *See id.*

Jamaica has previously explained in detail that an uncontradicted score of decisions by the United States Supreme Court and various federal and state appellate and trial courts, including a court in Ohio, and basic principles of contract interpretation show that the Lease's gold clause is a "gold value" clause.[9]  As noted above, the Sixth Circuit has now authoritatively adopted Jamaica's view of the gold clause, declaring that it is " 'a sort of price-indexing mechanism [intended] to protect a lessor from the effects of inflation.' "  *216 Jamaica Ave.*, 540 F.3d at 435 (quoting *Trostel*, 92 F.3d at 738).  S&R's "impracticability/impossibility" defense, therefore, fails as a matter of law.  S&R insists, however, that the gold clause protects the lessor

---

[9] *See* Reply Mem. in Supp. of Mot. of Pl. for Summ. J. ("Jamaica S.J. Reply") 5 & n.2; *id.* 6-11; Mem. in Supp. of Mot. of Pl. for Summ. J. ("Jamaica S.J. Br.") 5-7; Jamaica S.J. Opp. 3-5.

against inflation merely by using gold as the means of payment.  *See* S&R Continuance Br. 7.

This is preposterous.  If, as S&R believes, the Lease required S&R to pay a variable amount of

gold equal to a constant amount of dollars ($35,000 annually) over the 99-year term of the Lease,

then the Lease plainly would not protect the lessor against a decline in the value of the dollar.  As

Jamaica has shown, the Lease can protect against inflation only if it requires S&R to pay a

variable amount of dollars equal to a constant amount of gold (1,693 ounces annually), since

gold's value is relatively constant compared to the dollar's.  *See* Jamaica S.J. Br. 5-6; Jamaica

S.J. Reply 6, 8-9 & n.3.[10]

     The Sixth Circuit's decision is binding law of the case, *see Bowling v. Pfizer, Inc.*, 132

F.3d 1147, 1150 (6th Cir. 1998), but S&R still contends that the gold clause specifies the means

rather than the measure of payment because it is "is devoid of" the requisite "qualifying" or

" 'conversion' language," such as the phrase "or equal to" found in the gold clause at issue in

*Trostel*.  S&R Leave Br. 5, 7.  In fact, as Jamaica has shown and as numerous decisions confirm,

the gold clause's "present standard of weight and fineness" phrase is precisely the "qualifying"

or "conversion" language that renders it a "gold value" clause.  Jamaica S.J. Opp. 3-4 & n.3.[11]

---

[10] Although the Sixth Circuit remanded for this Court "to interpret the [Lease's gold] clause," *216 Jamaica Ave.*, 540 F.3d at 441, the Sixth Circuit could not have meant for this Court to decide whether the gold clause specifies the means or the measure of payment because, as just explained, the Sixth Circuit conclusively resolved that question.  Presumably, the Sixth Circuit meant only for this Court to determine the amount of gold that is the measure of the payment and then the corresponding number of dollars that S&R has owed under the gold clause – both of which can be readily determined by reference to the Lease, United States law, and public records of the price of gold.  *See* Jamaica S.J. Br. 4 n.4; Jamaica S.J. Opp. 4 n.3; *see also, e.g.*, *Trostel v. American Life & Cas. Ins. Co.*, 168 F.3d 1105, 1107-09 (8th Cir. 1999).

[11] *See, e.g.*, *Butler v. Horwitz*, 74 U.S. 258, 258-61 (1869); *Norman v. Baltimore & O. R. Co.*, 294 U.S. 240, 292-94, 302 (1935); *Holyoke Water Power Co. v. American Writing Paper Co.*, 300 U.S. 324, 333-36 (1937); *Guaranty Trust Co. v. Henwood*, 307 U.S. 247, 250, 257-58 (1939); *Equitable Life Assurance Soc'y v. Freda*, 32 Ohio N.P. (n.s.) 65, 70-71 (Ct. C.P. 1934); *Equitable Life Assurance Soc'y v. Grosvenor*, 426 F. Supp. 67, 68-70, 72 (W.D. Tenn. 1976), *aff'd*, 582 F.2d 1279 (6th Cir. 1978); *Trostel v. American Life & Cas. Ins. Co.*, 92 F.3d at 738,

The absence of the phrase "or equal to" is of no moment, as Jamaica has previously shown and as the many decisions treating a gold clause as a "gold value" clause despite the absence of that phrase attest.  Jamaica S.J. Reply 10-11; *Norman v. Baltimore & O. R. Co.*, 294 U.S. 240, 293, 298, 302 (1935) ("in the reference to the standard of weight and fineness, the words 'equal to' are said to be synonymous with 'of' "); *Equitable Life Assurance Soc'y v. Freda*, 32 Ohio N.P. (n.s.) 65, 70-71 (Ct. C.P. 1934); *Wells Fargo*, 38 Cal. Rptr. 2d at 523-24; *Equitable Life Assurance Soc'y v. Grosvenor*, 426 F. Supp. 67, 68-69, 72 (W.D. Tenn. 1976), *aff'd*, 582 F.2d 1279 (6th Cir. 1978).  Rather, S&R has plainly misread the terms of the *Trostel* gold clause. That gold clause provided that the rent "shall be made in gold coin of the United States of America, of or equal to the present standard of weight and fineness."  92 F.3d at 738.  S&R seems to think the "equal to" phrase addressed the relationship between the rent and the gold, reading the clause to say that the rent is to be "equal to" gold of the present standard of weight and fineness.  That is plainly not the role of the "equal to" phrase.  Rather, the "equal to" phrase addresses the relationship between the gold and the standard of weight and fineness, specifying that the gold can be "of" the present standard or "equal to" the present standard.  The "equal to" phrase is thus irrelevant to whether the gold clause specifies the means or measure of payment.[12]

---

and 168 F.3d 1105, 1106-09 (8th Cir. 1999); *Emery Bird Thayer Dry Goods Co. v. Williams*, 107 F.2d 965, 969 (8th Cir. 1939); *In re Mo. P.R. Co.*, 7 F. Supp. 1, 2, 9-10 (E.D. Mo. 1934); *Nebel, Inc. v. Mid-City Nat'l Bank*, 769 N.E.2d 45, 47, 54 (Ill. App. Ct. 2002); *Wells Fargo*, 38 Cal. Rptr. 2d at 523-24.

[12] Even if S&R were correct that the gold clause specified the means of payment, S&R's defense of "impracticability/impossibility" would still fail as a matter of law.  S&R says that there were no gold coins issued between 1934 and 1982, S&R Leave Br. 5, but the decisive question under the doctrines of impracticability and impossibility would be whether there were gold coins available since Jamaica began enforcing the gold clause in 2006.  *See London & Lancashire Indem. Co. v. Bd. of Comm'rs*, 140 N.E. 672, 676 (Ohio 1923).  On that question, S&R is silent, and so S&R has failed to create a genuine issue of material fact.  There is no impediment to tendering annually a quantity of United States gold coins containing 1,693 ounces of gold.

November 10, 2008

James B. Niehaus (0020128)
jniehaus@frantzward.com
Christopher G. Keim (0067117)
ckeim@frantzward.com
FRANTZ WARD LLP
2500 Key Center
127 Public Square
Cleveland, Ohio 44114-1230
216-515-1660
216-515-1650 (fax)

Respectfully Submitted,

/s/ Charles J. Cooper

_____
Charles J. Cooper
ccooper@cooperkirk.com
David H. Thompson
dthompson@cooperkirk.com
David Lehn
dlehn@cooperkirk.com
COOPER & KIRK, PLLC
1523 New Hampshire Ave. NW
Washington, DC 20036
(202) 220-9600
(202) 220-9601 (fax)

*Attorneys for Plaintiff*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on November 10, 2008, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this through the Court's system.

/s/ Margaret Barr
_____

Margaret Barr
COOPER & KIRK, PLLC
1523 New Hampshire Ave. NW
Washington, DC 20036
(202) 220-9600
(202) 220-9601 (fax)
mbarr@cooperkirk.com