# Exhibit B

*Broad v. Barnes*, 711 F.2d 1055, 1983 U.S. App. LEXIS 13083 (6th Cir. 1983)

LEXSEE 1983 U.S. APP. LEXIS 13083

**ELI BROAD and DONALD KAUFMAN, Plaintiffs, vs. JAMES T. BARNES, SR., et al., Defendants, GHAITH R. PHARAON, Defendant, Cross Plaintiff, Appellee, vs. THE FIRST ARABIAN CORPORATION, Defendant, Cross Defendant Appellant.**

No. 82-1209

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

711 F.2d 1055; 1983 U.S. App. LEXIS 13083

May 3, 1983

**NOTICE:** [*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. Sixth Circuit Rule 24 limits citation to specific situations. Please see Rule 24 before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court. This notice is to be *prominently* displayed if this decision is reproduced.

**OPINION**

Before: MARTIN and CONTIE, Circuit Judges; and PHILLIPS, Senior Circuit Judge.

ORDER

First Arabian Corporation appeals from the district court's denial of First Arabian's motion to dismiss Pharaon's cross-claim, the denial of First Arabian's motion to amend its answer to the cross-claim, and the granting of Pharaon's motion for summary judgment on his cross-claim. We affirm.

The plaintiffs in this case, Broad and Kaufman, were former owners of preferred stock in the Bank of the Commonwealth (BOC) in Detroit. They sold their stock to James Barnes, Sr. and James Barnes, Jr. (the "Barnes") but allegedly retained certain preferred rights in BOC stock. The Barnes then sold the stock to Pharaon who in turn sold it to First Arabian on November 12, 1976. First Arabian assumed Pharaon's obligation to pay the Barnes in annual installments of [*2] $750,000. On December 21, 1976, BOC stockholders approved a recapitalization plan which allegedly extinguished the preferred rights of Broad and Kaufman. In early 1977, the recapitalization was accomplished and the sale of BOC stock to First Arabian by Pharaon was officially completed. On June 30, 1977, Broad and Kaufman sued the Barnes, Pharaon and First Arabian for conspiring to deprive them of their preferred rights. The plaintiffs apparently viewed the successive sales of BOC stock as related steps in a fraudulent scheme. After the filing of the 1977 suit, First Arabian made two more annual installment payments to the Barnes. In February 1980, however, First Arabian refused to make the final payment. Pharaon paid the Barnes and unsuccessfully sought reimbursement from First Arabian.

In March 1980, the district court granted Pharaon's motion for leave to file his cross-claim against First Arabian. The motion was unopposed. First Arabian's answer to the cross-claim did not challenge the district court's jurisdiction nor did it raise any defenses other than a broad assertion that it refused to pay because the Broad and Kaufman suit may have affected its obligation. In [*3] November 1980, Pharaon moved for summary judgment on his cross-claim. In January 1981, a week after the summary judgment response was due, First Arabian filed a motion to dismiss the cross-claim for lack of jurisdiction. Also, First Arabian made a motion to amend its answer to the cross-claim in order to assert an affirmative defense. all of the motions regarding the cross-claim were argued in October 1981. At this time, only the cross-claim was in issue because all other claims had been settled. The district court denied both of First Arabian's motions and granted Pharaon's motion for summary judgment.

On appeal, First Arabian initially contends that the district court erred in finding that it had ancillary

jurisdiction over the cross-claim. The parties agree that if Pharaon's cross-claim satisfied *Rule 13(g) of the Federal Rules of Civil Procedure*, the district court properly asserted ancillary jurisdiction over the claim. See *Coleman v. Casey County Bd. of Education, 686 F.2d 428, 430 (6th Cir. 1982)*. *Rule 13(g)* provides in part that "A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the **[*4]** subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. . . ."

First Arabian contends that the cross-claim was only collaterally related to the original action and thus did not arise out of the same transaction or occurrence. Under First Arabian's analysis, the cross-claim is a simple contract action which has no connection with the original claim except that both involve BOC stock. First Arabian further asserts that no proof essential to one claim is also required to prove the other. We disagree.

The circuit follows the "logical relationship" test in applying *Rule 13(g)*. *Lasa Per L'Industria Del Marmo Societa Per Azioni of Lasa, Italy v. Alexander, 414 F.2d 143, 147 (6th Cir. 1969)*. In this case, we agree with the district court's conclusion that there was a logical relationship between the cross-claim and the original claim made by Broad and Kaufman. Both claims involved BOC stock and the sale of that stock by Pharaon to First Arabian was involved in both claims. The same factual background was necessary to resolve both claims. Finally, we note that First Arabian's sole defense **[*5]** to the cross-claim involved the original suit. Under these circumstances, the district court properly asserted ancillary jurisdiction over the cross-claim.

First Arabian's second argument on appeal is that the district court erred in denying its motion to amend its answer to the counterclaim. It is undisputed that Pharaon's summary judgment motion was valid unless First Arabian's motion to amend its answer was allowed.

In general, leave to amend should be granted unless allowing the amendment would result in substantial prejudice to the opposing party. *Hageman v. Signal L.P. Gas, Inc., 486 F.2d 479, 484 (6th Cir. 1973)*. "Delay by itself is not sufficient reason to deny a motion to amend." Id. One basis for denying a motion for leave to amend is that the new defense proposed in the amendment is frivolous or based on legally insufficient grounds. *Banque de Depots v. National Bank of Detroit, 491 F.2d 753, 757 (6th Cir. 1974)*.

The district court found that allowing the amendment would prejudice Pharaon due to having to defend against a legally doubtful defense after a substantial delay. We agree. First Arabian's new defense was that Pharaon had defrauded it by withholding **[*6]** information as to the financial condition of the BOC. It contends that such information should have been disclosed in early 1976 when Pharaon orally agreed to sell the stock. However, by the time that the sale was officially closed in early 1977, First Arabian controlled the BOC and clearly had access to all financial information. Furthermore, we note that First Arabian did not raise this defense until 1981, long after it knew or should have known of Pharaon's alleged fraud. We find that the district court did not abuse its discretion in denying leave to amend.

Accordingly, the district court's judgment is AFFIRMED.