# Exhibit C

*Rogan v. Lane,* No. 98-1578, 1999 U.S. App. LEXIS 22488 (6th Cir. Sept. 19, 1999)

LEXSEE 1999 U.S. APP. LEXIS 22488

WILLIAM ROGAN, Plaintiff-Appellant, v. DAN LANE, in his official capacity as Sheriff of St. Clair County; THE COUNTY OF ST. CLAIR; and OFFICER SANCHEZ, jointly and severally, Defendants-Appellees.

No. 98-1578

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

*1999 U.S. App. LEXIS 22488*

**September 13, 1999, Filed**

**NOTICE:** [*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 206 LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 206 BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: *1999 U.S. App. LEXIS 30940*.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN. 96-75802. Rosen. 4-16-98.

**DISPOSITION:** District court's grant of summary judgment to Sanchez REVERSED and district court's denial of Rogan's motion to amend AFFIRMED. Case REMANDED.

**COUNSEL:** For WILLIAM RUSSELL ROGAN, JR., Plaintiff - Appellant: Gerald F. Posner, Samuel Posner, Detroit, MI.

For DANE LANE, COUNTY OF ST. CLAIR, FNU SANCHEZ, Defendants - Appellees: Marcelyn A. Stepanski, Johnson, Rosati, LaBarge, Aseltyne & Field, Farmington Hills, MI.

For DANE LANE, COUNTY OF ST. CLAIR, FNU SANCHEZ, Defendants - Appellees: Kenneth G. Galica,

Fletcher, DeGrow & Galica, Novi, MI.

**JUDGES:** Before: MERRITT and SILER, Circuit Judges; DLOTT, District Judge. *

* The Honorable Susan J. Dlott, United States District Judge for the Southern District of Ohio sitting by designation.

[*2]

**OPINION BY:** SILER

**OPINION**

**SILER**, Circuit Judge. Plaintiff William Rogan appeals the district court's grant of summary judgment to defendants in his civil rights action and the district court's denial of his motion to amend the complaint. For the reasons that follow, we affirm in part and reverse in part.

**FACTUAL BACKGROUND**

1

 1  We recite the facts in the light most favorable to Rogan.

On the evening of November 18, 1995, Rogan attempted to make a surprise social call on a woman named Melissa at 2:15 a.m. at the Heritage Grove Apartments. While in the vestibule to Melissa's apartment, Officers Sanchez and Coronado of the St. Clair County Police Department approached Rogan and asked him what he was doing. Rogan explained that he was making a social call. Sanchez knocked on Melissa's door; she answered and denied knowing Rogan

personally, but admitted previously dating Rogan's cousin.

Sanchez had Rogan go with him and Coronado to the car. The officers ran his name through the police computer and discovered [*3] an outstanding warrant for Rogan from Chesterfield, Michigan. Rogan was placed into the car and went downtown without incident. When he inquired about the Chesterfield warrant, the officers told him that it was in regard to $ 240 in outstanding fines.

When they arrived at St. Clair's Sheriff's Department, Rogan immediately asked to see the warrant. The officers said they had to book him first. When Rogan insisted on seeing the warrant, Sanchez cursed. Meanwhile, Rogan asked why the officers were doing this to him and asked if it was because he was black. Next, Coronado handcuffed Rogan, who did not physically resist. Sanchez rushed Rogan, grabbed him by the throat and started choking him, almost causing him to pass out. The blond male correctional officer who was taking fingerprints at the time grabbed Rogan's left arm and tightly squeezed it. Sanchez released his hold and then smacked Rogan's head against the concrete wall, cursing at Rogan again. Next, Sanchez and the blond officer grabbed Rogan by the belt loops and body slammed him to the floor. Then Sanchez jumped on Rogan's prone body with his entire weight landing on Rogan's back. Sanchez ground his knee into Rogan's back while [*4] twisting Rogan's cuffs. Next, Sanchez slammed Rogan's face down into the floor. Sanchez grabbed Rogan's nose and pulled him off the ground by it. He dragged Rogan by his nose down the hall to a cell, twisting, pulling and smashing Rogan's nose all the way. When Sanchez, Coronado, and Rogan were in the cell, Coronado twisted and yanked on Rogan's cuffs while pulling Rogan's pants off, leaving Rogan wearing a T-shirt and underwear.

The next day, Rogan was released without being charged and went straight to Mercy Hospital, where he reported that he had been beaten by Sanchez. His arms, back, and face were bruised. The doctors examined him, took x-rays, and released him after a few hours. The Monday following the weekend of the incident, Rogan contacted his current attorneys.

After the incident, Rogan experienced stress in the form of crying, inability to sleep, and flashbacks. He sought psychiatric treatment and medical treatment for his crushed lumbar disc and sciatic nerve damage. He has undergone eight surgeries and physical and pain therapy.

Defendants admit two deputies were involved in Rogan's arrest, but assert that they were Ron Buckmaster and Leonardo Coronado. Defendants' [*5] affidavits reveal that Sanchez was not on duty on the date in question.

**PROCEDURAL HISTORY**

Rogan later filed a civil rights suit against (1) Sheriff Dan Lane, (2) St. Clair County, and (3) Officer FNU Sanchez. Rogan alleged a claim under *42 U.S.C. § 1983* for violations of his *Fourth*, *Fifth*, *Eighth*, and *Fourteenth Amendment* rights. Moreover, he asserted a claim for gross negligence arising under Michigan statutory and common law. Defendants filed their answer to the complaint without raising a "mistaken identity" defense.

Throughout the course of the litigation, Rogan conducted no discovery. After the close of discovery, defendants filed a motion to dismiss, or in the alternative, for summary judgment. Again, defendants failed to assert a "mistaken identity" defense regarding Sanchez. However, attached to the memorandum in support of defendants' motion was the Sheriff's Department's incident report. [2] After Rogan responded, defendants replied by asserting that Sanchez was not on duty on the night in question and did not participate in the events in question. Attached to their reply are (1) the affidavits of Sanchez and Lane and (2) the Sheriff's Department's [*6] officer schedule.

> 2   The report states that the following persons were involved in Rogan's arrest and jailing: (1) Buckmaster, (2) Coronado, and (3) Hensley. Conspicuously absent from the report is the name of Sanchez.

Subsequently, Rogan moved for leave to amend his complaint to add additional officers to his complaint, arguing that he had just obtained the incident report and therefore just discovered that defendants were contending that Sanchez was not a party to the incident at bar. The district court denied Rogan's motion to amend and granted defendants summary judgment. The court explained that the motion to amend was untimely and would be prejudicial, noting that Rogan had a copy of the incident report since the initiation of the action and had conducted no discovery. With respect to the dispositive motion, the court adopted the arguments defendants

raised in their motion and reply.

On appeal Rogan only challenges the disposition of the claims asserted against Sanchez; he does not challenge the disposition **[*7]** of the claims asserted against Lane or St. Clair County.

### DISCUSSION

### The district court erred by granting defendants summary judgment.

This court reviews an order granting summary judgment *de novo*, and hence uses the same test as used by the district court. *See Harrow Prods., Inc. v. Liberty Mut. Ins. Co., 64 F.3d 1015, 1019 (6th Cir. 1995)*. The party moving for summary judgment bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence offered] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970)*; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)*.

When a plaintiff presents evidence to support his case, the plaintiff's version must be accepted as true, and the district court errs by granting summary judgment for the defendant where issues of credibility are determinative of the case. *See Adams v. Metiva, 31 F.3d 375, 382 (6th Cir. 1994)*. Upon reviewing all of **[*8]** the relevant evidence in the light most favorable to the non-movant, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson Liberty Lobby, 477 U.S. 242 at 251-52, 91 L. Ed. 2d 202, 106 S. Ct. 2505*.

Rogan asserts that it was Sanchez who used excessive force against him. Defendants contend that Sanchez was not involved in the events giving rise to this action. It is disputed who, if anyone, assaulted Rogan, and whether the force used was excessive. As these questions are at the crux of the case, they are issues of material fact. Because there is credible evidence supporting both parties' versions of the facts, summary judgment was improperly granted. Accordingly, we reverse the district court's decision regarding the claims asserted against Sanchez.

### The district court did not err by denying Rogan leave to amend his complaint.

The district court's decision to grant a motion to amend a complaint is discretionary, and is reviewed for an abuse of discretion. *See Foman v. Davis, 371 U.S. 178, 180, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)*. **[*9]** *Rule 15(a) of the Federal Rules of Civil Procedure* states that leave to amend "shall be freely given when justice so requires." However, a motion for leave to amend should be denied if the amendment is brought in bad faith or for dilatory purposes, results in undue delay or prejudice to the opposing party, would be futile, or whether the plaintiff has repeatedly failed to cure deficiencies in the complaint. *See id. at 182*.

Rogan was arrested in November 1995. He did not file his complaint until December 1996. Thereafter, he conducted no discovery. Subsequently, in November 1997, after the close of discovery and after the deadline for dispositive motions had passed, Rogan sought leave to amend his complaint without offering a legitimate reason for his delay. We cannot say that the district court abused its discretion by denying Rogan leave to amend his complaint.

For the previously stated reasons, we REVERSE the district court's grant of summary judgment to Sanchez and AFFIRM the district court's denial of Rogan's motion to amend. This case is REMANDED for further proceedings **[*10]** in accordance with this opinion.