# Exhibit E

*Kegg v. Mansfield*, 2001 Ohio App. LEXIS 2035 (Ohio Ct. App. Apr. 30, 2001)

LEXSEE 2001 OHIO APP. LEXIS 2035

**WENDELL KEGG, Plaintiff-Appellant -vs- JACK MANSFIELD, et al., Defendants-Appellees**

**Case No. 2000CA00311**

**COURT OF APPEALS OF OHIO, FIFTH APPELLATE DISTRICT, STARK COUNTY**

*2001 Ohio App. LEXIS 2035*

**April 30, 2001, Date of Judgment Entry**

**PRIOR HISTORY:** [*1] CHARACTER OF PROCEEDING: Civil Appeal from the Court of Common Pleas, Case No. 1999CV00433.

**DISPOSITION:** Affirmed.

**COUNSEL:** For Plaintiff-Appellant: JOSEPH F. SCOTT, Louisville, Ohio.

For Defendants-Appellees: STEVEN G. JANIK, ANDREW J. DORMAN Cleveland, Ohio, WALTER MATCHINGA, Cleveland, Ohio.

**JUDGES:** Hon. William B. Hoffman, P. J., Hon. Sheila G. Farmer, J,. Hon. John W. Wise, J. By: Wise, J. Hoffman, P. J., and Farmer, J., concur.

**OPINION BY:** John W. Wise

**OPINION**

Wise, J.

Appellant Wendell Kegg appeals the decision of the Stark County Court of Common Pleas, which granted summary judgment in favor of Appellees Jack Mansfield, J. Stephen Pfancuff, NewMarket Financial Group, NewMarket Financial Services, Inc. and NewMarket Financial Products, Inc. The relevant facts leading to this appeal are as follows. Appellant retired from the General Tire Company in 1987. That same year, he and his wife, Ellen, began utilizing the financial planning services of appellees. Appellant eventually grew dissatisfied with appellees' handling of his individual investments, and on February 26, 1999, filed a civil complaint against appellees. He therein alleged that Jack Mansfield and J. Stephen Pfancuff had provided [*2] financial advice and investment services to him individually and through NewMarket Financial Group, NewMarket Financial Services, Inc., and NewMarket Financial Products, Inc. Appellant further alleged that he was a client of appellees and that Mansfield and Pfancuff were employees or agents of NewMarket Financial and/or NewMarket Financial Products, Inc. According the complaint, appellees provided false and misleading information relative to the value of appellant's accounts, thereby defrauding appellee, breached their contractual obligations to appellant, and violated the Ohio Consumer Sales Practices Act ("CSPA"). Appellees originally sought to compel arbitration of appellant's claims, which the trial court declined. On appeal, we affirmed the trial court's decision. See *Kegg v. Mansfield, 2000 Ohio App. LEXIS 334* (Jan. 31, 2000), Stark App.No. 1999CA00167, unreported. Following remand, appellees obtained leave to file a third party complaint against Chubb Securities, a securities firm which appellees used to purchase certain investment assets for appellant.

In addition, appellant successfully sought leave to file an amended complaint against appellees, asserting additional claims for breach of fiduciary [*3] duty and negligence. However, on August 31, 2000, in response to appellees' motion for summary judgment of April 28, 2000, the trial court issued a judgment entry granting summary judgment in favor of appellees as to all of appellant's claims. On October 4, 2000, appellant filed his notice of appeal, and herein raises the following two Assignments of Error:

I. THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN THAT THE PLAINTIFF PROPERLY OPPOSED SAID MOTION WITH AFFIDAVITS AND DEPOSITION TESTIMONY DEMONSTRATING GENUINE ISSUES OF MATERIAL FACT WITH RESPECT TO THE CLAIMS PRESENTED.

II. THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN PART ON THE BASIS OF THE STATUTE OF LIMITATIONS IN THAT PLAINTIFF PROPERLY OPPOSED SAID MOTION WITH AFFIDAVITS AND DEPOSITION TESTIMONY DEMONSTRATING A GENUINE ISSUE AS TO WHETHER DEFENDANTS SHOULD BE ESTOPPED FROM ASSERTING THE STATUTE OF LIMITATIONS DEFENSE BASED UPON THE DEFENDANTS (SIC) FAILURE TO PROPERLY ADVISE PLAINTIFF AS TO THE TRUE VALUE OF HIS INVESTMENTS AS WELL AS UPON DEFENDANTS (SIC) INTENTIONAL MISREPRESENTATION OF THE VALUE OF PLAINTIFF'S INVESTMENTS.

As an initial matter, **[*4]** we are compelled to address appellees' request to dismiss this appeal for want of a timely notice of appeal. The judgment entry appealed is file-stamped August 31, 2000; appellant's notice of appeal was filed October 4, 2000. *App.R. 4* requires a party to file the notice of appeal within thirty days of the later of the entry of the judgment or order appealed from, or, of the service of the notice of judgment if service is not made within a three (3) day period provided in *Civ.R. 58(B)*. The Ohio Supreme Court has made clear that "once the clerk has served notice of the entry and entered the appropriate notation in the docket, the notice shall be deemed to have been served." *Atkinson v. Grumman Ohio Corp. (1988), 37 Ohio St. 3d 80, 523 N.E.2d 851*, paragraph 2c of the syllabus. However, the docket in the case sub judice does not clearly specify whether service was accomplished by U.S. mail, hand delivery, court mailbox, or some other method. Cf. *Civ.R. 5(B)*. We thus cannot say with reasonable certainty that a *App.R. 4* violation occurred. Nonetheless, we emphasize the better practice is for an appellant's counsel to explain via affidavit the circumstances pertaining to any notice **[*5]** of appeal which is facially more than thirty days post-judgment entry.

I

In his First Assignment of Error, appellant contends that the trial court erred, based on the affidavits and deposition testimony in the record, in granting summary judgment in favor of appellees. We disagree. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St. 3d 35, 36, 506 N.E.2d 212*. As such, we must refer to *Civ.R. 56* which provides, in pertinent part: Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against **[*6]** whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.

Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall (1997), 77 Ohio St. 3d 421, 429, 674 N.E.2d 1164*, citing *Dresher v. Burt (1996), 75 Ohio St. 3d 280, 662 N.E.2d 264*. The Franklin County Court of Appeals recently addressed the some of our present issues in *Ware v. Kowars, 2001 Ohio App. LEXIS 199* (Jan. 25, 2001), **[*7]** Franklin App. No. 00AP-450, unreported. In Ware, the appellant, in approximately 1983, entrusted to appellees, which consisted of two successive investment companies and a broker, the sum of $ 250,000 to invest for her. In mid-1994, having begun to develop concerns

about her funds, the appellant obtained counsel to assist her in interpreting her account. On March 25, 1997, the appellant filed an action in federal court, which was dismissed. Appellant thereafter filed suit in the Franklin County Court of Common Pleas against appellees alleging conversion, breach of oral contract, breach of fiduciary duty, and fraudulent breach of fiduciary duty. Appellees successfully filed motions to dismiss, contending that the claims were time-barred by *R.C. 1707.43*. The appellate court affirmed the dismissal, noting the following: Although appellant has attempted to avoid the application of by framing her counts as common law claims for breach of contract, breach of fiduciary duty, conversion, and fraudulent breach of fiduciary duty, "we must look to the actual nature or subject matter of the case, rather than the form in which an action is pleaded, to determine the applicable **[*8]** limitations period." *Helman v. EPL Prolong, Inc., 139 Ohio App. 3d 231, 743 N.E.2d 484 (2000)*, quoting *Lawyers Cooperative Publishing Co. v. Muething (1992), 65 Ohio St. 3d 273, 277, 603 N.E.2d 969*. In reviewing the allegations of appellant's complaint, we find that appellant has alleged conduct that is violative of *R.C. Chapter 1707*'s prohibition against fraud in the sale of securities. For example, *R.C. 1707.44(K)* provides that "no person, with purpose to deceive, shall make, record, or publish, or cause to be made, recorded, or published, a report of any transaction in securities which is false in any material respect." As such, appellant's allegations are "inextricably interwoven" with the sale of the securities and, therefore, controlled by the limitations period contained in *R.C. 1707.43*.

\*\*\*

It is also equally clear from the complaint that appellant did not file any action until March 25, 1997, more than two years after she discovered the alleged wrongdoing on the part of appellees in 1994. Thus, appellant's claims are barred by *R.C. 1707.43*. Nor has **[*9]** appellant cited any factors which might toll the running of the statute or make it inapplicable.

*2001 Ohio App. LEXIS 199* at *13-14.

However, in the matter sub judice, even if we disregard the rationale of Ware, we are unable to conclude that the trial court erred in its consideration of each count. As noted, appellant's complaint listed five grounds: (1) breach of oral contract, (2) violation of Ohio CSPA, (3) fraud, (4) breach of fiduciary duty, and (5) negligence. Breach of Oral Contract Appellant acknowledged during his deposition that he had no written contract with Jack Mansfield. Kegg Deposition at 24. Assuming, arguendo, appellant could sue on the basis of an oral contract with a financial adviser, his claim is barred by Ohio's six-year statute of limitations for contracts not in writing, based on his discussions with Mansfield in 1987. See *R.C. 2305.07*. Violation of CSPA The trial court in its decision recited the two-year statute of limitations for alleged violations of Ohio's CSPA, *R.C. 1345.10(C)*. In support of their motion for summary judgment, appellees supplied a copy of a three-page letter appellant directed to William Burrows of NewMarket **[*10]** Financial Group May 22, 1996, summarizing his displeasure at various portfolio losses. Thus, reasonable minds could only conclude that appellant became aware of the situation no later than May 22, 1996, nearly three years prior to the filing date of his lawsuit. Fraud The elements of fraud are as follows: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Williams v. Aetna Fin. Co. (1998), 83 Ohio St. 3d 464, 475, 700 N.E.2d 859*. Appellant argues that appellees made "continuous misrepresentations" as to the values of his investments, and directs us in particular to the affidavit of his expert witness, financial advisor Patrick Hammer, who averred, inter alia: Further, it is my opinion that the reporting of Wendell Kegg's investments to him by **[*11]** the defendants at times did not comply with accepted industry standards and that the value of Wendell Kegg's limited partnership investments, as well as the rate of return which he was experiencing from those investments, was at times misrepresented to him by the defendants.

However, Mansfield's testimony reflected the following explanation:

A. The one thing I'm aware of is that Mr. Kegg was made aware in a number of sessions and possibly in more than I recall that the values that were shown on those reports for limited partnerships was simply the purchase price. And that the reason that was used was because we had no other value that we felt was appropriate.

And even after the Resources Trust documents were brought into question, it's still a guess as to their value because you never know the value of a limit partnership until it's finished.

Mansfield Deposition at 64.

In light of the entire record, we agree with the trial court's holding that while appellees' quarterly account statements may not have reflected the periodic current investment values, there is no genuine issue of fact which would lead to a conclusion that appellees acted with intent to defraud. We conclude likewise [*12] in regard to the "projected illustration" documentation appellees provided appellant, which contained warning language that it was not necessarily indicative of future results. Appellant also raises the possibility of constructive fraud, such that no existence of fraudulent intent is required. See, e.g., *Lake Hiawatha Park v. Knox County Agricultural Society (1927), 28 Ohio App. 289, 162 N.E. 653*. However, in order to succeed under a constructive fraud, "some peculiar confidential relationship" must exist, such as in the form of a fiduciary duty. *Association for Responsible Development v. Firestone Ltd., 1998 Ohio App. LEXIS 5388* (Nov. 13, 1998), Montgomery App. No. 16994, unreported, at 2. However, as we discuss infra, the facts of this case do not support a finding of a fiduciary duty owed to appellant by appellees. Breach of Fiduciary Duty The trial court relied on the case of *Martinez Tapia v. Chase Manhattan Bank (C.A. 5, 1998), 149 F.3d 404*, for the proposition that a fiduciary duty does not exist between a broker and a client where the account is non-discretionary. The evidence presented indicates that appellant acquiesced on this point: Q. Are you aware of anything that shows [*13] that these guys have discretionary authority to invest in whatever they wanted?

A. I didn't give them discretionary authority. I turned over to them my money with my three recommendations, my three things I wanted out of it, and they went ahead and invested the money.

Kegg Deposition at 191.

Therefore, we find that reasonable minds could only conclude that appellant's account was non-discretionary, and thus the court did not err in establishing no fiduciary duty. Negligence Numerous cases have concluded that claims of negligent investment advice should be governed by the "catch all" provision of *R.C. 2305.09(D)*. See, e.g. *Kondrat v. Morris (1997), 118 Ohio App. 3d 198, 692 N.E.2d 246*. The Ohio Supreme Court has held that *R.C. 2305.09(D)* does not include a "discovery rule" for professional negligence claims against accountants. *Investors REIT One v. Jacobs (1989), 46 Ohio St. 3d 176, 179, 546 N.E.2d 206*. This holding is logically extendable to claims of negligent investment advice. *Hater v. Gradison Div. of McDonald & Co. Securities, Inc. (1995), 101 Ohio App. 3d 99, 109, 655 N.E.2d 189*. In the [*14] case sub judice, appellant purchased three allotments of limited partnerships from 1987 to 1990. Thus, the clock began running against his claims of negligent advice no later than 1990. Based on the foregoing, we find no error in the trial court's grant of summary judgment. Appellant's First Assignment of Error is overruled.

II

In his Second Assignment of Error, appellant argues that a genuine issue of material fact exists as to whether equitable estoppel could apply against appellees' defenses based on statutes of limitation. We disagree. "A prima facie case for equitable estoppel requires a plaintiff to prove four elements: (1) that the defendant made a factual misrepresentation; (2) that it is misleading; (3) [that it induced] actual reliance which is reasonable and in good faith; and (4) [that the reliance caused] detriment to the relying party." *Doe v. Blue Cross/Blue Shield of Ohio (1992), 79 Ohio App. 3d 369, 379, 607 N.E.2d 492*. However, in a claim of equitable estoppel, not only is a showing of "actual or constructive fraud" necessary (see *State ex rel. Ryan v. State Teachers Retirement Sys. (1994), 71 Ohio St. 3d 362, 368, 643 N.E.2d 1122*), but [*15] in the context of a "statute of limitations" defense, a plaintiff must show either, "an affirmative statement that the statutory period to bring an action was larger than it actually was," or, "promises to make a better settlement of the claim if plaintiff did not bring the threatened suit," or "similar representations or conduct" on defendant's part. *Cerney v. Norfolk & W. Ry. Co. (1995), 104 Ohio App. 3d 482, 488, 662 N.E.2d 827*; *Helman v. EPL Prolong, Inc. (2000), 139 Ohio App. 3d 231, 246, 743 N.E.2d 484*. The only evidence provided by appellant in support of his proposed application of equitable estoppel pertains to alleged misrepresentations concerning the value of the investments, which are in no way related to misrepresentations concerning the statute of limitations or a promise of settlement as envisioned by Cerney.

Appellant's Second Assignment of Error is overruled.

For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.

By: Wise, J. Hoffman, P. J., and Farmer, J., concur.