# Exhibit K

*Hill v. City of Urbana,* No. 94-22, 1995 Ohio App. LEXIS 3276
(Ohio Ct. App. Aug. 9, 1995)

LEXSEE 1995 OHIO APP. LEXIS 3276

HERBERT HILL, ET AL., Plaintiff-Appellants, v. CITY OF URBANA, Defendant and Third Party Plaintiff/Appellee/Cross-Appellant, and HOLLAND EXCAVATING, INC., Third Party Defendant Cross-Appellee.

Case No. 94-CA-22

COURT OF APPEALS OF OHIO, SECOND APPELLATE DISTRICT, CHAMPAIGN COUNTY

*1995 Ohio App. LEXIS 3276*

August 9, 1995, Rendered

**NOTICE:**

[*1] THE LEXIS PAGINATION OF THIS DOCUMENT IS SUBJECT TO CHANGE PENDING RELEASE OF THE FINAL PUBLISHED VERSION.

**PRIOR HISTORY:** T.C. Case No. 89CIV74.

**COUNSEL:** DAVID M. DEUTSCH, S.C. Regis. No. 0014397, E.S. GALLON & ASSOCIATES, Miami Valley Tower Building, Suite 1100, Dayton, Ohio 45402, Attorney for Plaintiff-Appellants.

THOMAS M. GREEN, S.C. Regis. No. 0016361, GREEN & GREEN, Lawyers, One Citizen's Federal Centre, Suite 950, Dayton, Ohio 45402, Attorney for Defendant-Appellee-City of Urbana.

RICHARD F. HEIL, JR., S.C. Regis. No. 0009627, MARTIN, BROWNE, HULL & HARPER, Credit Life Building, 8th Floor, One S. Limestone Street, PO Box 1488, Springfield, Ohio 45501, Attorney for Defendant-Appellee-Holland Excavating, Inc.

**JUDGES:** FREDERICK N. YOUNG, J., WOLFF and GRADY, JJ., concur.

**OPINION BY:** FREDERICK N. YOUNG

**OPINION**

**OPINION**

FREDERICK N. YOUNG, J.

Appellants Herbert Hill and his wife, Carolyn, appeal from the trial court's decision granting summary judgment against them in their respective negligence and loss of consortium actions against appellee, the City of Urbana ("Urbana"). The Hills claim that the trial court erred by holding that Urbana was immune from the Hills' claims pursuant to the [*2] Political Subdivision Tort Liability Act contained in *R.C. Chapter 2744*. Urbana cross-appeals from the trial court's judgment rejecting its breach of contract claim against third party defendant R.E. Holland Excavating, Inc., ("Holland"). Urbana claims the trial court erred by ruling that: (1) Holland did not breach the parties' contract and (2) Urbana should be estopped from asserting breach of contract remedies under the facts of this case.

I.

On May 29, 1987, Urbana entered into an agreement with Holland for the construction of improvements to the city's water distribution system. The project called for Holland to "tie-in" new, larger water mains to existing ones to increase the volume and pressure of water to city residents. Under Article 509 of the parties' contract, Holland was obligated to obtain insurance for Urbana. This provision states in pertinent part as follows:

Art. 509. Contractor's Insurance. The CONTRACTOR [Holland] shall not commence work under this Contract until he has obtained all insurance required under this section and such insurance has been approved by the CITY [Urbana]. . . . Such insurance shall

defend, indemnify, and hold harmless the CITY, [*3] the Engineer, and their respective agents and representatives, from all claims arising out of the work.

. . .

(d) Other Insurance. Until the final completion of the work and receipt of final payment, regardless of the receipt of any partial payment or payments, the CONTRACTOR shall be responsible for any and all damages, injury, or the loss of materials and equipment whether incorporated in the work or not, and for all damage and injury to the completed work. The CONTRACTOR shall provide such insurance as is necessary to protect adequately his responsibility in this respect.

. . .

(e) General. The CONTRACTOR shall furnish and attach to each executed copy of the Contract Documents a certificate showing proof of coverage of the insurance required; and, in addition, he shall furnish two extra copies thereof.

The CITY and the Engineer shall be named as additional insureds.

Holland never obtained insurance for Urbana as it was required to do under the contract. It did, however, send Urbana a "certificate of insurance" which listed the city as a "certificate holder" but not as a named insured. The certificate of insurance was reviewed by the city's engineer, director of administration, [*4] law director, superintendent of public works, as well as by a consulting engineer. None of these people realized that the certificate of insurance failed to show that Holland had complied with Article 509. Consequently, on June 4, 1987, Urbana sent Holland a "Notice to Proceed" with the construction of the improvements to the City's water distribution system "under the terms and conditions of the contract."

On August 10, 1987, one of Holland's employees, Herbert Hill, was injured while installing water pipe or water "line" in a ditch at a water well field at the Old Troy Pike in Urbana, Ohio. The injury occurred as Hill was attaching a valve to an

existing twenty inch water pipe. The water running to the pipe had been turned off to allow Hill and his co-workers to complete the improvement. As Hill was tightening the flange bolts which connected the valve to the existing pipe, an Urbana employee, without warning, turned the water back on. The force of the water pressure blew the valve off the existing pipe, striking Hill on the left side of his head and shoulder. Prior to the accident, Hill had shouted warnings three times to Urbana's supervisor of the water department, telling [*5] him not to turn the water back on while he was in the ditch. As a result of the accident, Hill suffered permanent scarring as well as a loss of

function in one eye and a loss of hearing.

On May 2, 1989, Herbert and Carolyn Hill brought an action for negligence and loss of consortium against Urbana in the Champaign County Common Pleas Court. After being notified of the Hills' claims, Urbana demanded insurance protection or indemnity and defense from Holland, and Holland, having never obtained the insurance for Urbana as required by Article 509 of the contract, refused. Consequently, on September 11, 1989, Urbana, with leave of the trial court, filed a third party complaint against Holland, alleging that if it was to be held liable to the Hills, then Holland was required to indemnify Urbana.

On May 7, 1990, Holland moved for summary judgment on the third party complaint. This motion was denied. Following an extensive pretrial discovery period, Urbana and Holland submitted the case to the trial court on memoranda and a set of "Agreed Stipulations." As part of the stipulations, the parties agreed that: (1) "Holland did not intend to seek or obtain a waiver of the insurance requirements [*6] of Article 509[,]" and "

no city employee, representative or agent knowingly waived or intended to waive the requirements of Article 509[;]" (2) to the best of Holland's knowledge, it would not have cost any additional amount to have Urbana added as a named insured; and (3) "Holland's president and project manager, R.E. Holland, did not realize that Article 509 of the contract required Holland to obtain insurance for Urbana until sometime after plaintiff Herbert Hill's injury."

On October 20, 1993, the trial court issued

a decision, ruling that Holland did not breach its contract with Urbana and that Urbana should be estopped from asserting any breach of contract remedies against

Holland.

On August 15, 1994, Urbana moved for summary judgment against the Hills, claiming that it was immune from the Hills' claims under the Political Subdivision Tort Liability Act, contained in *R.C. Chapter 2744*. The trial court agreed with Urbana and granted the city's motion on October 5, 1994. The Hills and Urbana proceeded to file an appeal and cross-appeal, respectively, from the judgments adverse to them.

II.

The Hills advance the following three assignments of error on appeal:

[*7] I. A SPECIAL DUTY EXISTED BETWEEN THE CITY OF URBANA AND MR. HILL THEREBY INVOKING THE SPECIAL DUTY EXCEPTION TO THE PUBLIC DUTY DOCTRINE AND THEREFORE THE TRIAL COURT WAS IN ERROR WHEN IT PREJUDICIALLY DISMISSED THE PLAINTIFF'S COMPLAINT.

II. ASSUMING ARGUENDO THAT A SPECIAL DUTY EXCEPTION DOES NOT EXIST, THE DOCTRINE OF SOVEREIGN IMMUNITY IS NOT ABSOLUTE AND THE TRIAL COURT ERRED BY IGNORING THE FACT THAT THE CITY ACTED IN A WANTON OR RECKLESS MANNER

THUS

FALLING

WITHIN A CLEARLY DEFINED EXCEPTION TO SOVEREIGN IMMUNITY UNDER *R.C. 2744.03(5)* [*SIC,* 2744.03(A)(5)].

III. WHERE GENUINE ISSUES AS TO MATERIAL FACTS EXIST, IT IS PREJUDICIAL ERROR FOR THE TRIAL COURT TO DISMISS A COMPLAINT PURSUANT TO *OHIO CIVIL RULE 56*.

Essentially, the Hills argue that the trial court erred when it granted summary judgment against them on their negligence and loss of consortium actions on the basis that Urbana was immune from those claims by virtue of *R.C. Chapter 2744*.

The Ohio Supreme Court has held that the appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that [*8] the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.

*Harless v. Willis Day Warehousing*

*Co.,*

*Inc. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46*. Recently, we have stated:

"

The burden is strictly upon the moving party to establish, through the evidentiary material permitted by the rule, that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law."

*AAAA*

*Ents*

*., Inc. v. River Place Community Urban*

*Redev*

*. Corp.* (1990), 50 Ohio St.

3d

157, 161.

Once the movant meets its burden, the nonmoving party may not simply rely on the mere allegations of its pleadings to survive a motion for summary judgment, but must set forth specific facts showing there exists a genuine issue for determination at trial.

*Savransky v. City of Cleveland (1983), 4 Ohio St.3d 118, 119, 447 N.E.2d 98*. Moreover, the nonmoving party must produce evidence on [*9] any issue for which it bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095*, paragraph three of the syllabus. . . .[Citation

omitted.] Courts have interpreted *Wing* to mean that the nonmovant must produce evidence on "any issue upon which the movant meets its initial burden." *Stewart v. B.F. Goodrich Co. (1993), 89 Ohio App.3d 35, 41, 623 N.E.2d 591*, jurisdictional motion overruled (1993), *67 Ohio St.3d 1489*. . . .[Citation omitted.]

*Reeser v. Weaver Brothers, Inc.* (June 28, 1995), Darke App. No. 1359, unreported.

In their first assignment of error, the Hills argue that governmental immunity was not available as a defense to Urbana because their claims allegedly fell within the so-called "special duty exception" to the "public duty rule." Specifically, the Hills contend that Urbana cannot raise governmental immunity as a defense to their claims because the city assumed a special duty towards Herbert Hill when it retained control of turning the water on and off. They claim that the city had a duty to ensure that the work had been completed and that no one was in the ditch at **[*10]** the time it turned the water back on. This argument clearly lacks merit.

As this court has stated before, "under the special duty exception, municipalities were held liable for their actions when there was a special relationship between the municipality and the claimant. In other words, the municipality was liable for its actions when it owed a duty to a particular individual or class of individuals, rather than owing a duty to the public at large."

*Boggs v. Hughes* (Feb. 2, 1994), Greene App. No. 93-CA-21, unreported at 9. However, "the passage of *R.C. Chapter 2744* abrogated the public duty/ special duty theory of municipal liability." *Colling v. Franklin Cty. Children Serv. (1993), 89 Ohio App.3d 245, 253, 624 N.E.2d 230*. See, also, *Amborski v. Toledo (1990), 67 Ohio App.3d 47, 51, 585 N.E.2d 974*. In *Boggs*, we ourselves held "that *R.C. Chapter 2744* supersedes the public duty rule and special duty exception and that these concepts do not apply to political subdivisions for situations arising after the effective date of the statute." *Boggs*, supra, at 11. Accordingly, the Hills discussion **[*11]** of the special duty exception to the public duty rule has no relevance to this case. The Hills' first assignment of error is overruled.

In their second assignment of error, the Hills contend that, assuming arguendo that a special duty exception does not exist, their claims nevertheless fall within a "clearly defined exception" to governmental immunity under *R.C. 2744.03(A)(5)*. In their merit brief, the Hills originally contended that Urbana was basing its claim of immunity on *R.C. 2744.03(A)(5)*, which grants a political subdivision immunity from liability if the injury, death, or loss complained of by a party stems from the political subdivision's "exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources, unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." The Hills then contended that the defense of governmental immunity was unavailable to Urbana since it had acted "in a wanton or reckless manner" by turning the water back on while Herbert Hill was still in the ditch. *R.C. 2744.03(A)(5)*.

Urbana **[*12]** responded in its brief by first noting that it was not claiming immunity under *R.C. 2744.03(A)(5)*, but rather *R.C. 2744.02(A)(1)*, which provides in relevant part:

Except as provided in division (B) of this section, a

political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

Next, the city pointed out that in order for the Hills to prevail, it was incumbent upon them to demonstrate that their claims fell within one of the five exceptions to the general rule of immunity contained in *R.C. 2744.02(B)(1)-(5)*. Urbana then argued that none of these exceptions applied to the present case. The city concluded by noting that since none of the exceptions to the general rule of immunity applied in this instance, then *R.C. 2744.03(A)* had no application to this case. Urbana pointed out that the defenses and immunities provisions of *R.C. 2744.03(A)* only applied when litigants such as the Hills had first demonstrated that their claims against the political subdivision came **[*13]** within "one of the areas of liability or non-immunity" set forth in *R.C. 2744.02*.

In their reply brief, the Hills responded to the arguments raised by Urbana by presenting an entirely

new argument--without acknowledging that they were doing so. The Hills argued, for the first time in these proceedings, that the city was actually liable under *R.C. 2744.02(B)(3)*, which provides in relevant part: "Political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance[.]" Specifically, the Hills contended that the water pipe in this case constituted an "aqueduct" within the meaning of *R.C. 2744.02(B)(3)* and that the city's action in turning the water back on created a "nuisance" within the meaning of *R.C. 2744.02(B)(3)*. The Hills concluded by insisting that *R.C. 2744.02(B)(3)* "clearly imposes liability on the City of Urbana for its failure to keep an aqueduct free from nuisance." We find this argument unpersuasive.

First, as we have pointed out, the Hills **[*14]** never raised this argument in the trial court. It is well settled that a reviewing court need not rule on arguments that were not raised to the trial court.

*Holley v*

*Higgins*

(1993), *86 Ohio App.3d 240, 246, 620 N.E.2d 251*; *State v. Douglas* (1989), 66 Ohio App.

3d

788, 790. Second, the Hills only raised this new theory of their case in their reply brief. Although reply briefs are to be used to respond to the arguments advanced by the opposing party,

App.R.

16(C), they cannot be used for presenting new theories of liability since the opposing party does not have an opportunity to respond to these new claims in its brief. Finally, the Hills' claim also must fail

on

its merits since we are convinced that a water pipe is not an "aqueduct" for purposes of *R.C. 2744.02(B)(3)*.

*R.C. 1.42* provides in relevant part that "

words and phrases shall be read in context and construed according to the rules of grammar and common usage." The dictionary defines "aqueduct" as follows:

**1. a:** a conduit or artificial channel for conveying water; *esp***:** one for carrying a large quantity of water which flows by gravitation **b** *or* **[*15] aqueduct bridge:** a structure for conveying a canal over a river or hollow. . . .

Webster's Third New International Dictionary (1981) 108. While a water pipe is certainly a

"conduit for water," it

nevertheless is not an aqueduct within the contemplation of *R.C. 2744.02(B)(3)*. That provision imposes liability upon political subdivisions for their failure to keep certain structures open, in repair, and free from nuisance, to wit: public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds. The common thread which ties these structures together is that they are all public ways or thoroughfares. Consequently, we conclude that, for purposes of *R.C. 2744.02(B)(3)*, the legislature did not intend to define the term "aqueduct" to include *any*

conduit for water, but rather, only those conduits or channels for water that are suitable for use as a public way or thoroughfare. Accordingly, the Hills cannot, as a matter of law, hold Urbana liable under *R.C. 2744.02(B)(3)*.

The Hills' second assignment of error is overruled.

In their third and final assignment of error, the Hills state the applicable standards for granting summary [*16] judgment under

Civ.R.

56 and argue that genuine issues of material fact still exist since Urbana did not demonstrate that it was immune from the Hills' suit as a matter of law. Specifically, they reiterate their prior assertions that the doctrine of governmental immunity cannot be applied to defeat their claims since they fall within either the special duty exception to the public duty rule or within the exception contained in *R.C. 2744.02(B)(3)* to the general rule, granting governmental immunity to a political subdivision for tort liability. For the reasons we have stated previously, neither of these exceptions apply. Accordingly, we conclude that the Hills have failed in their duty to set forth specific facts demonstrating the existence of a genuine issue requiring a trial,

*Reeser*

, *supra*, and the issuance of summary judgment against them was proper.

The Hills' third assignment of error is overruled.

III.

Urbana

advances the following two assignments of error on cross-appeal:

I. THE TRIAL COURT'S JUDGMENT THAT THIRD-PARTY DEFENDANT/CROSS-APPELLEE, R.E. HOLLAND EXCAVATING, INC., DID NOT BREACH ITS CONTRACT WITH DEFENDANT/THIRD PARTY PLAINTIFF/APPELLEE/CROSS-APPELLANT, [*17] CITY OF URBANA, IS ERRONEOUS AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. THE TRIAL COURT'S JUDGMENT THAT APPELLEE/CROSS-APPELLANT, CITY OF URBANA, WAS ESTOPPED FROM CLAIMING BREACH OF CONTRACT REMEDIES IS ERRONEOUS AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

In its first assignment of error on cross-appeal, Urbana insists that there is no evidence to support the trial court's finding that Holland did not breach the term of the parties' contract requiring it to provide the city with insurance. We agree. Under Article 509 of the parties' contract, Holland was required to provide the city with insurance. Holland failed to provide the city with insurance. Hence, Holland breached its contract with Urbana, and the trial court erred in finding otherwise. The only remaining question is whether the trial court erred by ruling that Urbana should be estopped from asserting its breach of contract remedies against Holland.

In its second assignment of error, Urbana argues that there is no competent, credible evidence on all the essential elements of the doctrine of estoppel, and therefore the trial court erred in finding that it should be estopped from asserting its breach of contract [*18] remedies against Holland.

As one commentator has noted:

It has been said that no single definition of estoppel can govern every case. Courts also formulate the elements somewhat differently. At core, however, an estoppel case has three important elements. First, the actor, who usually must have knowledge, notice or suspicion of the true facts, communicates something to another in a misleading way, either by words, conduct or silence. Second, the other in fact relies, and relies reasonably or justifiably, upon that communication. And third, the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct. A fourth element is that the actor knows, expects or foresees that the other would act upon the information given, or that a reasonable person in the actor's position would expect or foresee such action.

1 Dobbs, Law of Remedies (2 Ed.1993), 84-85, Section 2.3(5). [Footnotes omitted.]

In support of its position that there was sufficient evidence presented as to each element of an estoppel claim, Holland argues that "Urbana represented to

Holland by its words and acts that the insurance complied with the contract, **[*19]** when it issued Holland the notice to begin construction after reviewing Holland's certificate of insurance." Holland then contends that by indicating that the insurance obtained complied with the contract, Urbana "communicated some fact or state of affairs in a misleading way[.]" Next, Holland posits that "Urbana's representation induced reliance by Holland in that Holland began construction under the contract in the belief that its insurance was acceptable to Urbana under the contract after the City issued the Notice to Proceed with construction." Finally, Holland asserts that its "reliance was reasonable under the

circumstances and made in good faith[,]" and that it "would suffer pecuniary disadvantage if Urbana were not estopped from asserting an otherwise valid right in contradiction to its earlier representation." In ruling that Urbana should be estopped from asserting its breach of contract remedies, the trial court apparently found this reasoning persuasive. We, however, do not.

There are at least two fatal deficiencies in Holland's estoppel claim. First, because Holland was not aware that it was obligated under the parties' agreement to provide Urbana with insurance **[*20]** until sometime after Herbert Hill's injury, it could not have actually relied on any representation from Urbana that the insurance it had obtained complied with the contract term which required it to provide Urbana with insurance. Holland's failure to provide Urbana with insurance, which constituted a breach of contract, was not induced by any representation from Urbana that the insurance obtained complied with contract. Instead, it was caused by Holland's failure to understand that it was contractually obligated to obtain insurance for Urbana. Second, even if we assume that Holland did actually rely on Urbana's representation that the insurance Holland had obtained complied with the terms of the contract, Holland's estoppel claim would still fail because Holland's reliance was not reasonable under the circumstances of this case.

As the Ohio Supreme Court has stated:

" * * * It is essential to the application of the principles of equitable estoppel that the person claiming to have been influenced by the conduct or declarations of another party to his injury should have been destitute of knowledge of the facts, or at least * * * of any convenient and available means of acquiring such **[*21]** knowledge, for if he lacks such knowledge he is bound to exercise reasonable diligence to obtain it.

"Obviously, a party who acts with full knowledge of the truth has not been

misled and cannot claim estoppel. Hence, *there can be no estoppel where the party claiming it is chargeable with knowledge of the facts, as where he either knows the facts or is in a position to know them* or the circumstances are such that he should have known them; or where the circumstances surrounding the transaction are sufficient to put a person of ordinary prudence on inquiry which would have disclosed the facts; * * * ." [Emphasis *sic*.]

*Pedler v.*

*Aetna*

*Life*

*Ins*

*. Co. (1986), 23 Ohio St.3d 7, 11, 490 N.E.2d 605*, quoting 42 Ohio Jurisprudence 3d (1983) 109-110, Estoppel and

Waiver,

Section 66.

The question of whether a person who is claiming estoppel either knew or should have

known

about the facts which he is claiming were misrepresented to him goes directly to the element of reasonable reliance. If the person knew or should have known of the facts which were allegedly misrepresented to him, then it cannot be said that his reliance **[*22]** on the

misrepresentation was reasonable. That is precisely what happened in this case.

Although the parties' contract was a lengthy document, Holland unquestionably had a responsibility to read it carefully to determine its obligations under it. If it had done so, then it would have realized it was obligated

to provide Urbana with insurance. Furthermore, Holland should have also known that the insurance it had obtained did not comply with its obligations under the parties' contract. Under these circumstances, we conclude that Holland's reliance on Urbana's alleged misrepresentation that the insurance it had obtained complied with the contract was unreasonable. Accordingly, the trial court erred in determining that Urbana should be estopped from asserting its breach of contract remedies against Holland.

Urbana's first and second assignment of errors on cross-appeal are sustained.

IV.

The trial court's decision to grant summary judgment against Herbert and Carolyn

Hill, and in favor of Urbana is affirmed. The trial court's judgment, ruling that Holland did not breach its contract with Urbana and that Urbana should be estopped from asserting its breach of contract remedies **[*23]** against Holland is reversed. The cause is remanded for a hearing to determine the damages incurred by Urbana as a result of Holland's breach of the parties' agreement.

. . . . . - . . . . .

WOLFF

and GRADY, JJ., concur.