# Exhibit N

*Hill v. Osborne,* No. E1999-0365-COA-R3-CV, 2000 Tenn. App. LEXIS 197

LEXSEE 2000 TENN APP. LEXIS 197

**REGINA L. HILL, Plaintiff-Appellee, v. RALPH OSBORNE AND ROBERT OSBORNE, Defendants-Appellants.**

E1999-00365-COA-R3-CV

COURT OF APPEALS OF TENNESSEE, EASTERN SECTION, AT KNOXVILLE

*2000 Tenn. App. LEXIS 197*

**March 30, 2000, Filed**

**PRIOR HISTORY:** [*1] APPEAL AS OF RIGHT FROM THE WASHINGTON COUNTY CHANCERY COURT. HONORABLE G. RICHARD JOHNSON, CHANCELLOR.

**DISPOSITION:** AFFIRMED AND REMANDED.

**COUNSEL:** For Appellants: THOMAS A. PETERS, Kingsport, Tennessee.

For Appellee: JAMES L. LONON, DOUGLAS J. CARTER, Johnson City, Tennessee.

**JUDGES:** Charles D. Susano, Jr., J., CONCUR: Houston M. Goddard, P.J., Herschel P. Franks, J.

**OPINION BY:** Charles D. Susano, Jr.

**OPINION**

Susano, J.

This is a dispute regarding a lease. Regina L. Hill ("the landlord") brought this action against Ralph Osborne and Robert Osborne ("the tenants"), seeking possession of the leased property and a declaration that she is the owner of the property without any encumbrances. The tenants asserted estoppel and laches as defenses. Following a bench trial, the court below held that the lease is void because the tenants failed to pay the rent on an annual basis and failed to give notice of assignment, all as required by the lease. The tenants appeal, raising two issues:

    1. Did the trial court err in not applying the doctrine of equitable estoppel?

    2. Did the trial court err in not applying the doctrine of laches?

I.

In March, 1972, the landlord's father, Joseph E. [*2] Shipley, and the landlord's grandmother, Chola Hodges Shipley, [1] entered into a agreement to lease a parcel of improved property to a group of doctors. The lease provides for a term of ten years, beginning March 1, 1972, with an option to renew for three additional periods of ten years each. The rental payment provision of the lease provides as follows:

> [1] The Shipleys were joint owners of the property. Ms. Shipley died in 1990, leaving Mr. Shipley as the sole owner of the property.

> LESSEES shall pay and the LESSORS shall accept a monthly rental for the first ten (10) year term of this lease at the rate of ONE HUNDRED FIFTY DOLLARS ($ 150.00) per month, payable in advance and in annual installments of ONE THOUSAND, EIGHT HUNDRED DOLLARS ($ 1,800.00) on the first day of March, 1972, and each year thereafter during the term of this lease. [2]

> [2] The lease further provides that should the lessees elect to renew for the third and final renewal

period, the annual rent would be $ 225 per month, payable annually in advance.

 **[*3]** The notice-of-assignment provision of the lease is as follows:

LESSEES from time to time may assign this lease or sublet all or any part of the premises for any lawful purpose. In the event of any assignment of this lease, LESSEES shall not be relieved or released from their liability under this lease, and the proposed assignee shall assume LESSEES' obligations hereunder and deliver a duplicate original of such assignment and assumption agreement, in form proper for recording, to LESSOR within ten (10) days after the effective date of the assignment.

The default provision of the lease specifies that

if the LESSEES default in fulfilling any of the covenants of this lease, including but not limited to the covenant for payment of rent or any other monies which may become due, the LESSORS may give the LESSEES thirty (30) days' notice of intention to end the term of this lease. Thereupon, at the expiration of said thirty (30) days, provided such default is not remedied when said period is ended, the term under this lease or any renewal thereof shall expire as fully and completely as if that day when the date herein originally fixed for the expiration of the **[*4]** term, and LESSEES shall then quit and surrender the premises to the LESSORS without further notice of any kind on the part of the LESSORS being required, but the LESSEES shall, nevertheless, remain liable hereunder.

The "non-waiver" provision of the lease provides as follows:

The failure of the LESSOR or LESSEES to insist upon a strict performance of any of the terms, conditions and covenants herein shall not be deemed to be a waiver of any rights or remedies that LESSORS or LESSEES may have and shall not be deemed a waiver of any subsequent breach or default in the terms, conditions and covenants herein contained, except as herein expressly waived.

The lease was subsequently subject to a series of assignments. On March 1, 1991, the lease was assigned to the defendant Ralph Osborne. In June, 1996, Ralph Osborne executed a document assigning the lease to his brother, the defendant Robert Osborne. [3]

3   This document was not signed by the assignee. Ralph Osborne testified at trial that the assignment never went into effect; however, we find that it is implicit in the trial court's findings that the assignment had occurred because the trial court found that the "Defendants" were in violation of the lease.

 **[*5]** Beginning in 1991, Ralph Osborne made monthly rental payments to Shipley. Ralph Osborne continued to write monthly checks for the rent after he assigned the lease to his brother, Robert. After Shipley died in January, 1998, the tenants sent monthly rental checks to the executor of Shipley's estate.

Under Shipley's last will and testament, title to the property passed to his daughter, the landlord. The landlord, through her counsel, sent a letter to the tenants' counsel, which letter states, in pertinent part, as follows:

Ms. Hill considers your client to be a tenant at will on said property, and furthermore desires to exercise her right under Tennessee law to terminate his tenancy. Therefore, Mr. Osborne is hereby notified that he has thirty (30) days from the date of this correspondence (April 30, 1998) to vacate the premises.

The tenants continued to send monthly rental checks; however, after May, 1998, the estate did not cash the checks.

The landlord filed this action, alleging that the tenants had violated the notice-of-assignment and annual-rental payment provisions of the lease. The tenants answered, averring that it was a long-time practice of the landlord's **[*6]** predecessor, Shipley, to accept monthly rental payments and that the present suit

was barred by the doctrines of laches and equitable estoppel.

At trial, Ralph Osborne testified that he was aware that the original lease called for annual rental payments, but that Shipley had told him to pay the rent on a monthly basis. He further testified that he had notified Shipley of the assignment of the lease to him from Shelby Elizabeth Bell in 1991 by giving Shipley a copy of the assignment and a letter informing him that the lease had been assigned to him. Ralph Osborne introduced a copy of this letter into evidence.

Richard Webb also testified for the tenants. He testified that he was with Ralph Osborne when Osborne delivered a copy of the assignment and the accompanying letter to Shipley. Upon questioning by the trial court, Webb admitted that he had been a close personal friend of Ralph Osborne for thirty years.

The landlord testified that the executor of Shipley's estate had given her all of the papers pertaining to the property and that she did not find any notice of assignments in these papers.

After the parties rested, the trial court announced its findings from the bench:

> The [*7] issue in this cause is whether or not pursuant to the lease terms, and in particular, pursuant to [the notice of assignment provision] of the lease, did Mr. Shipley receive notices of these assignments within ten days after the effective date of the assignment, and did the assignees, lessees, pay the rent on an annual basis as is required by the lease in [the annual rental payment provision] of that lease. Another important clause in this original lease is [the non-waiver provision]. Very basically what it says is if Mr. Shipley or his successors and assigns fail to enforce any provision of the lease, that their failure to enforce shall not be a waiver of all of their rights to enforce it.
>
> * * *
>
> This Court finds that the testimony and the evidence surrounding the alleged delivery of assignments notifying, to Mr. Shipley therefore notifying him is gravely suspicious and suspect, and this Court finds that Mr. Shipley was never delivered a copy of any of these notices of assignment from the defendants. It should also be noted that the executor of Mr. Shipley's estate has made a search for all documents and papers dealing with this property, and that none [*8] could be found. This Court finds that the failure of the delivery of the Notice of Assignment within ten days after its effective date is a breach of the lease contract.
>
> The lease also provided that annual payments were to be made. It is admitted that annual payments were never made, but rather what Mr. Osborne, the defendant, attempts to do is to orally vary the terms of the lease, quoting what allegedly a dead man said to him, that he wanted the money monthly rather than annually.
>
> The Court...has closely examined and thought out and spent time today in assessing and evaluating the credibility of the witnesses. The Court has taken into consideration all of the factors, including their demeanor, their interest in this lawsuit, and the motivation for their testimony. This Court finds that the defendants have violated and breached the lease by not making their payments on an annual basis. This Court further finds that pursuant to [the non-waiver provision] of the lease that the failure of Mr. Shipley or his successors to strictly enforce any of the provisions of the lease is not a waiver of their rights to enforce those matters. Therefore, the Court finds [*9] that the fact that monthly rent may have been paid or other failures on the part of the lessor or successor to him in enforcing the lease is not a waiver of any of their rights to come in now and enforce the terms of the lease.
>
> This Court finds that the lease is void for failure to pay the rent on an annual basis. The lease is void for failure to give Mr.

Shipley appropriate assignment [sic] of the assignments. This Court finds that the defendants are tenants at will of the plaintiff and tax the cost of this cause to the defendant.

This appeal followed.

II.

In this non-jury case, our review is *de novo* upon the record of the proceedings below. Rule 13(d), T.R.A.P. That record comes to us with a presumption of correctness -- a presumption that we must honor unless the evidence preponderates against the trial court's factual findings. *Id.* The trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. **Campbell v. Florida Steel Corp.,** *919 S.W.2d 26, 35 (Tenn. 1996).*

III.

Before we address the tenants' arguments regarding the applicability of equitable estoppel and laches, **[*10]** we must first determine the facts found by the trial court.

The trial court found the lease void on two grounds, which we will address in turn. First, the trial court found that the lease was breached when Ralph Osborne failed to notify Shipley of the assignment of the lease to the former in 1991 within ten days of the assignment. The facts pertaining to this breach were disputed at trial. The tenants' witnesses testified that Ralph Osborne had hand-delivered a letter and a copy of the assignment to Shipley on March 1, 1991. On the other hand, the landlord testified that she did not find any documents pertaining to this assignment in her father's papers.

The trial court resolved this factual dispute on the basis of witness credibility. The trial court found that the evidence presented by the tenants was "gravely suspicious and suspect." Accordingly, the trial court found that Shipley had not received the notification of the assignment to Ralph Osborne as required by the lease.

We find that the evidence does not preponderate against the trial court's finding that the tenants breached the lease by failing to provide notice of assignment of the lease. The trial court made a determination **[*11]** of witness credibility, which determination is entitled to great weight on appeal. **Massengale v. Massengale,** *915 S.W.2d 818, 819 (Tenn.Ct.App. 1995)*; **Bowman v. Bowman,** *836 S.W.2d 563, 567 (Tenn.Ct.App. 1991).* In fact, this court has noted that

> on an issue which hinges on witness credibility, [the trial court] will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary.

**Tennessee Valley Kaolin Corp. v. Perry,** *526 S.W.2d 488, 490 (Tenn.Ct.App. 1974).*

The trial court's second basis for voiding the lease was the tenants' failure to pay rent on an annual basis. The essential facts regarding this provision are undisputed. The lease requires an annual rental payment of $ 1,800, payable on March 1 of each year. Between March, 1991, and May, 1998, the tenants paid the rent in monthly installments by checks drawn upon the account of Ralph Osborne. These checks were accepted and cashed by Shipley; after his death, the executor of his estate continued, for a brief period of time, to accept the monthly **[*12]** payments.

The trial court found that the tenants had breached the lease by failing to make annual rental payments. The trial court reasoned that, pursuant to the non-waiver provision of the lease, the failure of Shipley or his successors to strictly enforce the annual-rental payment provision of the lease was not a waiver of their right to enforce the provision as to subsequent breaches. Accordingly, the trial court found that the landlord could strictly enforce the annual-rental payment provision.

We agree with the trial court that the fact Shipley accepted monthly payments from the tenants does not waive the landlord's right to enforce the annual-rental payment provision of the lease. *See, e.g.,* **Brooks v. Networks of Chattanooga, Inc.,** *946 S.W.2d 321, 326 (Tenn.Ct.App. 1996)* (finding landlord's failure to insist on double rent during previous holdover periods did not constitute waiver of right to collect double rent for present holdover period under non-waiver provision).

III.

Having determined the facts found by the trial court,

we now address the tenants' issues on appeal, namely, whether the doctrines of equitable estoppel and laches are applicable **[\*13]** to the facts of this case.

The doctrines of equitable estoppel and laches are closely-related concepts. ***Roach v. Renfro,** 989 S.W.2d 335, 339 (Tenn.Ct.App. 1998)*. Equitable estoppel requires, at a minimum, (1) reliance upon the statement or actions of another without the opportunity to know the truth, and (2) action based upon that reliance that is detrimental to the acting party. ***Werne v. Sanderson,** 954 S.W.2d 742, 746 (Tenn.Ct.App. 1997)*. The doctrine of laches is implicated where there is (1) an unexcused delay by the claimant in making his claim, and (2) a showing by the defendant that he has been injured due to the delay in the presentation of the claim. ***Jansen v. Clayton,** 816 S.W.2d 49, 51 (Tenn.Ct.App. 1991)*.

We find that the doctrines of equitable estoppel and laches are not applicable in the instant case. For equitable estoppel to apply, "it is essential . . . that the person claiming it was himself not only destitute of knowledge of the facts, but without available means of obtaining such knowledge; for there can be no estoppel where both parties have the same means of ascertaining the truth. **[\*14]** " ***Sexton v. Sevier County,** 948 S.W.2d 747, 751 (Tenn.Ct.App. 1997)*(quoting ***Rambeau v. Farris,** 186 Tenn. 503, 212 S.W.2d 359, 361 (Tenn. 1948))*. The lease explicitly provides that the rent shall be paid annually and that notice of any assignment must be given within ten days of the effective date of the assignment. The tenants cannot argue that they did not have an "opportunity to know the truth" when the requirements were explicitly set forth in the lease. As for the doctrine of laches, the tenants have not shown any "unexcused delay" by the *landlord* in enforcing her rights under the lease; moreover, the tenants have not asserted how they have been prejudiced by the claimed delay. Accordingly, we find that the trial court correctly refused to apply the doctrines of equitable estoppel and laches to the instant case.

IV.

For all of the foregoing reasons, the judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant. This case is remanded to the trial court for enforcement of the judgment and for collection of costs assessed below, all pursuant to applicable law.

Charles D. Susano, Jr., J.

CONCUR:

 **[\*15]**  Houston M. Goddard, P.J.

Herschel P. Franks, J.