# Exhibit O

*Bahner's Auto Parts v. Banher,* No. 97-2538, 1998 Ohio App. LEXIS 3453 (Ohio Ct. App. June 23, 1998)

LEXSEE 1998 OHIO APP. LEXIS 3453

**BAHNER'S AUTO PARTS, Plaintiff-Appellee -vs- MILLARD BAHNER, et al., Defendant-Appellants**

**Case No. 97CA2538**

**COURT OF APPEALS OF OHIO, FOURTH APPELLATE DISTRICT, SCIOTO COUNTY**

*1998 Ohio App. LEXIS 3453*

**June 23, 1998, Filed**

**DISPOSITION:** [*1] JUDGMENT AFFIRMED.

**COUNSEL:** Roger L. Clark, Portsmouth, Ohio, for Appellant.

Rick Faulkner, Wheelersburg, Ohio, for Appellee.

**JUDGES:** Earl E. Stephenson, Presiding Judge. Abele, J. and Kline, J., Concur in Judgment & Opinion.

**OPINION BY:** Earl E. Stephenson

**OPINION**

*DECISION AND JUDGMENT ENTRY*

Stephenson, P.J.

This is an appeal from a judgment entered by the Court of Common Pleas of Scioto County in which the court granted Bahner's Auto Parts' (plaintiff below and appellee herein) demand for specific performance of an option to purchase real estate. Millard Bahner, et al (defendants below and appellants herein) appeal, assigning the following errors for our review:

 I. "THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION BY AWARDING APPELLEE SPECIFIC PERFORMANCE."

 II. "THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION BY AWARDING APPELLEE SPECIFIC PERFORMANCE BECAUSE THE DOCTRINE OF LACHES APPLIED."

 III. "THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION BY AWARDING APPELLEE SPECIFIC PERFORMANCE BECAUSE THE DOCTRINE OF WAIVER APPLIED."

 IV. "THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION BY [*2] AWARDING APPELLEE SPECIFIC PERFORMANCE BECAUSE THE DOCTRINE OF NOVATION APPLIED."

 V. "THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION BY AWARDING APPELLEE SPECIFIC PERFORMANCE BECAUSE THE STATUTE OF FRAUDS APPLIED."

The record reveals the following facts pertinent to this appeal. On January 1, 1984, appellee/lessee, Bahner's Auto Parts, and appellants/lessors, Millard and Temperance Bahner, entered into a ten year lease of property located at 747 Center Street in Wheelersburg, Ohio. [1] The lease provided for rental payments in the

amount of One Thousand Dollars ($ 1,000) per month for the period of the leasehold and granted appellee an option to purchase the demised premises at the expiration of the leasehold. The purchase option clause, appearing as paragraph 21 in the lease, provides as follows:

> "21. *Option to Purchase and Option to Renew for Additional Term.* Lessee is hereby granted the option to purchase the demised Premises herein. Said Option shall be exercisable upon written notice by Lessee to Lessor one hundred eighty (180) days prior to the end of the full ten (10) year term of this Lease of Lessee's intention to so exercise the **[*3]** option. Such Option is granted and conditioned upon Lessee's full compliance of the terms and conditions of the foregoing Lease Agreement. The purchase price of said option to purchase shall be ascertained as follows: Upon the receiving of Lessee's notice of intent to exercise the option to purchase herein, Lessor shall obtain and Lessee shall obtain thereafter appraisers to appraise the value of the real estate demised. Each of the respective appraisers shall choose a third appraiser which third appraiser shall also appraise the value of the demised Premises. Such appraisals shall then be added together and averaged. The purchase price shall be for Lessee % of the ascertained market value based upon the average of the three appraisals. Lessee shall then have thirty (30) days prior to the ending of the full term herein to deliver to Lessor the price so ascertained. Upon delivery of this purchase price amount, Lessor shall deliver to the Lessee, his heirs and assigns, a deed of general warranty for the demised premises herein subject to the exceptions contained in the description attached hereto and marked "Exhibit A". Lessor may set a purchase price to Lessee by mutual agreement with **[*4]** Lessee at any time during the course of this Lease Agreement. However, Lessee is not bound to accept or exercise any such purchase option price put forth by Lessor prior to the full and complete term of this Lease Agreement or any amendment or any extension or renewal thereof.
>
>   \*\*\*"

----

1  Bahner's Auto Parts is an Ohio partnership comprised of two partners, brothers David and Donald Morrison. According to the record, the Morrison brothers began working for the Bahners in their early teens (sometime in the late 60s or early 70s). On January 1, 1984, the Morrisons entered into a ten (10) year agreement with appellant Roger Bahner to purchase Bahner's Auto Parts. Simultaneously, the Morrisons entered into a separate agreement with Roger's parents, appellants Millard and Temperance Bahner, to lease/purchase the business premises (Roger Bahner owned the business - his parents owned the premises).

Sometime in May or June, 1993, David Morrison spoke with Millard Bahner regarding the Morrisons' desire to exercise **[*5]** the purchase option. Bahner advised Morrison that written notice was not necessary and that his son, Roger Bahner, would contact Morrison to further discuss the matter.

In accordance with the terms of the lease/purchase agreement, the Morrisons obtained appraisals of the demised property. An appraisal dated November 1, 1993 valued the property at $ 130,000. A subsequent appraisal of December 8, 1993 valued the property at $ 123,000.

Without obtaining an appraisal, and apparently based upon his own experience and his conversations with owners of nearby parcels, Millard Bahner demanded $ 200,000 for the property. The Morrisons declined to purchase the property for this amount.

In January, 1994, after the expiration of the initial ten-year leasehold, the parties entered into a month to month tenancy. The rent was increased from $ 1,000 per month to $ 1,350 per month and the Morrisons continued to operate their business out of the subject premises until July, 1996, when they filed the instant action seeking specific performance of the purchase option clause.

In a Decision and Judgment Entry filed on September 3, 1997, the trial court found the parties bound

by the agreement. The **[*6]** court found specific performance to be the appropriate remedy and ordered the Bahners to convey the subject property to the Morrisons for $ 128,000, crediting the Morrisons for all rental payments made after the date the instant complaint was filed. This appeal followed.

In their first assignment of error, appellants contend that the trial court erred in ordering specific performance (1) because they did not "absolutely and unconditionally" repudiate the contract and (2) because appellees failed to tender full performance. For the reasons that follow, we disagree.

Specific performance is "the remedy of performance of a contract in the specific form in which it was made, or according to the precise terms agreed upon." Black's Law Dictionary (5th Ed. 1979) 1024. It is an equitable remedy resting in the sound discretion of the trial court. *Sandusky Properties v. Aveni (1984), 15 Ohio St. 3d 273, 275, 473 N.E.2d 798*, quoting *Spengler v. Sonnenberg (1913), 88 Ohio St. 192, 203, 102 N.E. 737*. Accordingly, our standard of review is whether the trial court abused it's discretion. See *Id.* The term "abuse of discretion" connotes more than a mere error of judgment. *State v. Adams* **[*7]** *(1980), 62 Ohio St. 2d 151, 404 N.E.2d 144*. It implies an attitude that is unreasonable, arbitrary or unconscionable. *Steiner v. Custer (1940), 137 Ohio St. 448, 31 N.E.2d 855*, paragraph two of the syllabus.

A party seeking specific performance of a contract must establish that he has a valid, enforceable contract, that he has performed or tendered performance, and that he is ready, willing and able to promptly perform all acts required of him in the specific execution of the contract. 84 Ohio Jurisprudence 3d (1988) 311-312, Specific Performance, Section 34. "When an option *** for the purchase of *** property is consummated by acceptance according to its terms within the time specified, it merges into a contract for the purchase of the property which equity will enforce by specific performance the same as any other contract." *Rossman & Co. v. Donaldson, 1994 Ohio App. LEXIS 5535* (Dec. 6, 1994), Franklin App. Nos. 94APE03-388, 94 APE03-389 and 94APE05-695, unreported, quoting 71 American Jurisprudence 2d (1973) 184, Specific Performance, Section 142. An option for the purchase of real property may be specifically enforced if notice of the exercise of the option is given, the vendor refuses to comply **[*8]** and the purchase price is tendered. 84 Ohio Jurisprudence 3d (1988) 373-374, Specific Performance, Section 85.

There are exceptions to the general rule, heretofore stated, that a party seeking specific performance must show a tender of performance. "When the other party repudiates and makes it certain that he does not intend under any circumstances to comply, a showing of readiness and ability on the part of the complaining party to then and there perform his part communicated to the other party and accompanied with demand of compliance by such other party, is sufficient compliance without an actual formal tender." *Wiedemann Brewing Co. v. Maxwell (1908), 78 Ohio St. 54, 66-67, 84 N.E. 595*.

In the instant case, the lease-purchase agreement sets forth, quite specifically, the method by which the purchase price of the subject property is to be determined upon exercise of the purchase option:

> "Upon the receiving of Lessee's notice of intent to exercise the option to purchase herein, Lessor shall obtain and Lessee shall obtain thereafter appraisers to appraise the value of the real estate demised. Each of the respective appraisers shall choose a third appraiser which third **[*9]** appraiser shall also appraise the value of the demised Premises. Such appraisals shall then be added together and averaged. The purchase price shall be for Lessee % of the ascertained market value based upon the average of the three appraisals."

As expressly found by the trial court, this contractual provision "*** placed an obligation upon [appellants] to have the property appraised." Appellants did not perform this obligation. Instead, they made a demand of $ 200,000 for the property, based upon Millard Bahner's (and/or, perhaps Roger Bahner's) own determination of the property's value. At trial, Millard Bahner testified, in pertinent part, as follows:

> "Q. Did you tell them the price that you would sell the property for?
>
> A. Yes, $ 200,000.00.
>
> Q. I believe that you said in your deposition that you were told about their

appraisals?

A. I was told about them, yes, I was told about them. I didn't see them.

Q. But you knew about them?

A. Oh, yes.

Q. And you said you wouldn't sell the property for less than $ 200,000.00?

A. Right.

Q. And that $ 200,000.00 was the only figure you would talk about?

A. Yes.

\*\*\*

Q. And it **[*10]** didn't matter what the appraisal was, you were going to sell it for $ 200,000.00; right?

A. Right, that's what I asked for it."

Bahner's testimony amply supports a conclusion that his $ 200,000 demand was an absolute, unconditional, take-it-or-leave-it demand and that he had no intention whatsoever of complying with the terms of the option contract. ² We find no abuse of discretion in the trial court's implicit conclusion that appellants repudiated the parties' contract.

> 2 We note that in arguing the applicability of the doctrine of laches under their second assignment of error, appellants assert that "the testimony clearly shows that Millard Bahner offered the property for sale for $ 200,000.00, and that no negotiations over the purchase price took place. *Millard was clear that he would not sell for less than $ 200,000.00*" (Emphasis added.)

Appellants argue that appellees failed to tender full performance in that they did not offer any amount of money to purchase the property prior to filing **[*11]** suit. We cannot agree.

The agreement granted the Morrisons the option to purchase the subject property for an amount to be ascertained in accordance with the terms of the agreement. ³ They were thus freed, by the terms of the agreement, from having to negotiate a price with appellants. This was the very essence of the contract. They were not obligated to offer appellants a sum of money to counter appellants' $ 200,000 demand and their failure to do so does not constitute failure of performance under the contract.

> 3 We recognize that the contract appears to be missing a rather essential term - i.e., the contract provides that the purchase price shall be ___ % of the ascertained market value based upon the average of the three appraisals. (The blank is not completed on the contract.) However, neither party raises this issue on appeal and testimony was presented at trial regarding this omission which supports the trial court's calculation of the purchase price.

The Morrisons fully performed their obligations **[*12]** under the terms of the contract so far as was practicable to do so. They notified appellants that they wished to exercise the purchase option (albeit orally; see Assignment of error 5, *infra*) and they had the property appraised. They could not tender purchase money "thirty (30); days prior to the ending of the full term [of the lease]" as required under the agreement, see *supra,* due to appellants' failure to have the property appraised. The purchase price was unascertained.

In any event, Millard Bahner's testimony amply supports a conclusion that tender of purchase money in any amount less than his $ 200,000 demand (or even a counter offer for a lesser figure) would have been a futile act. Thus, the absence of such tender (if required under the facts herein) is excused. See *Wiedemann Brewing Co. v. Maxwell, supra.;* See, also, 84 Ohio Jurisprudence 3d (1988) 319, Specific Performance, Section 41 ("If the other party repudiates the contract and makes it certain that he does not intend under any circumstances to comply therewith, or if he absolutely and unconditionally refuses to proceed with the contract, the law excuses the absence of tender on the part of the other **[*13]** party, as equity does not require idle acts. An actual tender of the purchase price by the vendee in a real property contract is not necessary where from the acts of the seller, or from the situation of the property, it would be wholly nugatory and meaningless.").

Appellants' first assignment of error is without merit. Accordingly, it is overruled.

In their second assignment of error, appellants argue that the trial court abused its discretion in awarding specific performance because appellee's claim is barred by the doctrine of laches. For the reasons that follow, we disagree.

Laches is "an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." *Connin v. Bailey (1984), 15 Ohio St. 3d 34, 35, 472 N.E.2d 328*, quoting *Smith v. Smith (1957), 107 Ohio App. 440, 443-444, 146 N.E.2d 454*. The elements of laches are (1) conduct on the part of the defendant giving rise to the situation of which complaint is made and for which the complainant seeks a remedy; (2) delay in asserting the complainant's rights, the complainant having had knowledge or notice of defendant's conduct and having been afforded an opportunity [*14] to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit; and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant. *Stevens v. Natl. City Bank (1989), 45 Ohio St. 3d 276, 285, 544 N.E.2d 612*, citing *Smith v. Smith (1950), 168 Ohio St. 447, 455, 156 N.E.2d 113*. The defendant must show prejudice. The prejudice must be material, *Wright v. Oliver (1988), 35 Ohio St. 3d 10, 11, 517 N.E.2d 883*, and it may not be inferred from a mere lapse of time. *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn. (1994), 71 Ohio St. 3d 26, 35, 641 N.E.2d 188*.

Appellants assert that specific performance of the contract would materially prejudice them inasmuch as the subject property has increased, substantially, in value during the period of appellee's delay in bringing suit. However, absent circumstances evincing speculation on the part of appellee, an increase in the property's value, without any change of position on the part of the appellants, will not bar specific performance. See 66 Ohio Jurisprudence 3d (1986) 425-426, Limitations and Laches, [*15] Section 224.

Appellants made no improvements to the subject property during the period in question. They attribute the property's purported increase in value to development, by themselves and others, of adjacent parcels. While such development might, under appropriate circumstances, render specific performance materially prejudicial to a vendor, such circumstances are not present in the cause *sub judice*.

Roger Bahner testified that in 1993 he was in the process of purchasing and developing parcels adjacent to the subject property. Bahner testified, quite specifically, that he was aware at that time that the Morrisons had the option to buy the subject property from his father, Millard Bahner, and therefore, his plans for development of the adjacent parcels did *not* involve or incorporate the subject property. Although Bahner testified that his plans for development later came to involve the subject property, the meager evidence in the record regarding the development of the adjacent parcels is most consistent with Bahner's earlier testimony that the development did not involve the subject property. [4]

> 4 According to the record, appellants constructed a video store on one parcel and "additional buildings" on another parcel at the request of a tenant who needed additional space (for what purpose, the record does not disclose).

[*16] Any increase in value of the subject property is properly characterized, vis-a-vis appellants, as passive appreciation. Appellants did not contribute, invest or expend sums toward improvement of the subject property in reliance upon the Morrisons' inaction. Nor did they develop the parcels adjacent to the subject property in reliance upon the Morrisons' inaction. These instances of development were independent business ventures, undertaken with full knowledge that the subject property was subject to the Morrisons' purchase option. Any increase in the subject property's value by virtue of this nearby, unrelated development was purely incidental.

Appellants imply in their brief that the Morrisons engaged in speculation, arguing that they "sat by idly, waiting to see whether it was going to be a profitable or a losing bargain. *** If the property value had gone down *** this suit would not have been filed." This assertion is meritless.

The Morrisons have been involved in Bahner's Auto Parts for more than two decades, first as employees, then as owners. They have operated from the subject property, as business owners, since 1984, [5] and there is no indication in the record that their [*17] use of the subject property will change in the foreseeable future. Dave Morrison testified that he considers the subject property "an integral part *** of the business" and the evidence indicates overwhelmingly that the Morrisons have always intended to purchase the property as part of their ongoing, long-term business concern. While an increase in the

value of the land would certainly be beneficial to the Morrisons, we simply cannot conclude, from the record before us, that they engaged in delay so that they could unfairly speculate as to the property's value.

> 5   The record indicates that Bahner's Auto Parts operated from this location for a number of years before the Morrison brothers entered into the agreement to purchase the business and the agreement to lease/purchase the property in 1984. (Roger Bahner testified that he built the building for his father in 1978.)

Appellants bore the burden of showing that they were materially prejudiced by appellees' delay in asserting their rights. See *Connin v. Bailey* [*18] *15 Ohio St. 3d at 36, fn. 1*. They did not meet this burden. They failed to establish that they changed position in reliance upon the Morrisons' inaction or that the Morrisons' delayed asserting their rights so that they could unfairly engage in speculation. Appellants have demonstrated no material prejudice. They cannot invoke the equitable defense of laches.

Accordingly, the trial court did not abuse its discretion in failing to find appellees' claim barred by laches. Appellants' second assignment of error is overruled.

In their third assignment of error, appellants assert that the trial court erred in awarding specific performance because the doctrine of waiver barred the Morrisons' claim. We find no abuse of discretion in the trial court's implicit conclusion that the Morrisons did not waive their right to exercise the purchase option and, consequently, we overrule appellants' third assignment of error.

Waiver is "an intentional relinquishment, either expressly or constructively, of a known right." *Russell v. Fourth Nat. Bank (1921), 102 Ohio St. 248, 269, 131 N.E. 726*. "It may be made by express words or by conduct which renders impossible a performance by the other party, [*19] or which seems to dispense with complete performance at a time when the obligor might fully perform. Mere silence will not amount to waiver where one is not bound to speak." *White Co. v. Canton Transp. Co. (1936), 131 Ohio St. 190, 198-199, 2 N.E.2d 501* See, also, *Saydell v. Geppetto's Pizza & Ribs (1994), 100 Ohio App. 3d 111, 122-123, 652 N.E.2d 218*. "It [is] up to the defendant to assume and carry the burden of proving the waiver by the greater weight of the evidence[.] *** In so doing he [is] required to prove a clear, unequivocal, decisive act of the party against whom the waiver [is] asserted, showing such a purpose or acts amounting to an estoppel on the latter's part." *White Co. v. Canton Transp. Co., 131 Ohio St. at 198-199*.

Appellants argue that the Morrisons' waived their right to exercise the purchase option, as evidenced by their (1) notification to appellants that they would not purchase the subject property for $ 200,000, (2) inquiries into purchasing other property, (3) delay in filing suit and (4) failure to make further inquiries into appellants' hiring of an appraiser.

First, it borders on the inane to argue that the Morrisons waived their right [*20] to exercise the purchase option by refusing to agree to appellants' repudiatory $ 200,000 demand. The Morrisons refusal to acquiesce in appellants' breach of the purchase option hardly constitutes a clear, unequivocal and decisive act amounting to a waiver of their right to exercise that option.

Second, A purchase option is, by definition, a unilateral contract, binding one side without binding the other. See *Plikerd v. Mongeluzzo (1992), 73 Ohio App. 3d 115, 123, 596 N.E.2d 601*, citing 17 Ohio Jurisprudence 3d (1980) 453-455, Contracts, Section 22. The option prevents the party granting the option from disposing of the subject property until its expiration. *Id.* The party who is granted the option may, however, exercise the option according to its terms, or allow it to lapse. *Id.* Thus, a party who is granted a purchase option is not bound to the optioned property. He may freely consider other properties during the period of the option without prejudice to, or waiver of, his or her right to exercise the option. The Morrisons inquiries into other properties have no bearing on the instant purchase option and do not amount to a waiver of their right to exercise the option.

[*21] Third, the Morrisons delay in filing suit could not possibly operate as a waiver of their right to exercise the purchase option for the simple reason that the delay did not become manifest until long after the expiration of the period for exercising the option. Moreover, failure to assert a right does not, in and of itself, constitute an intentional relinquishment of that right. Although, failure to assert a right, when circumstances require its prompt attention may be evidence of the intent to relinquish the right. 66 Ohio Jurisprudence 3d (1986) 420, Limitations

and Laches, Section 221. An abundance of evidence was adduced at trial to show that the Morrisons never intended to relinquish the right to exercise the purchase option. Accordingly, their delay in filing suit did not constitute a clear, unequivocal and decisive act amounting to a waiver of the right to exercise the option.

Fourth and finally, regarding the Morrisons failure to make further inquiries into appellants' hiring of an appraiser, we note that the contract's appraisal clause was self executing. See *supra.* ("Upon the receiving of Lessee's notice of intent to exercise the option to purchase herein, Lessor shall **[*22]** obtain *** [an] appraiser[] to appraise the value of the real estate demised.") The Morrisons were not bound by the agreement to demand that appellants obtain an appraisal. (It does appear from the record that they mentioned to appellants the fact that they were to get an appraisal.) "Mere silence will not amount to waiver where one is not bound to speak." *List & Son Co. v. Chase (1909), 80 Ohio St. 42, 49, 88 N.E. 120*. The Morrisons' were not bound to demand that appellants obtain an appraisal and their failure to do so does not constitute a clear, unequivocal and decisive act amounting to a waiver of their right to exercise the purchase option.

We find no waiver of the Morrisons right to exercise the purchase option. Appellants' third assignment of error is overruled.

In their fourth assignment of error, appellants assert that the trial court abused its discretion in ordering specific performance of the contract because the purchase option was extinguished through a novation. For the reasons that follow, we disagree.

First, it has been held that novation is an affirmative defense. See *Todd v. Berk, 1992 Ohio App. LEXIS 5503* (Oct. 30, 1992), Lake App. No. 91-L-067, unreported; *The Continent* **[*23]** *JV326128 v. Metsker* (Sept. 22, 1988), Franklin App. No. 88AP-388, unreported; *Braverman v. Spriggs, 1979 Ohio App. LEXIS 11751* (June 26, 1979), Franklin App. No. 78AP-681, unreported. Under *Civ.R. 8(C)*, an affirmative defense must be pleaded or it is waived. *Hoover v. Sumlin (1984), 12 Ohio St. 3d 1, 465 N.E.2d 377*. Appellants failed to plead novation and they have, therefore, waived this defense.

Second, even if appellants had raised the affirmative defense of novation, they would not prevail. "[A] novation, as understood in modern law *** is a mutual agreement among all parties concerned for the discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor or another ***." *Boblitt v. Briggs, 1997 Ohio App. LEXIS 6089* (Nov. 21, 1997), Clark App. No. 97-CA-0006, unreported, citing 18 Ohio Jurisprudence 3d (1980) 204-205, Contracts, Section 283. Novation is based upon the theory that a new contract has been made, in which there has been a complete meeting of the minds. *State ex rel. Bettman v. Court of Common Pleas of Franklin County (1931), 124 Ohio St. 269, 283-284, 178 N.E. 258*. Thus, for a novation to be effective, all parties must agree to the new or changed terms **[*24]** pursuant to which the substitution is made. See *Bolling v. Clevepak Corp. (1984), 20 Ohio App. 3d 113, 125, 484 N.E.2d 1367*. Intent, knowledge and consent are essential elements in determining whether a novation has occurred. *Id.* Knowledge of, and consent to, the terms of a novation may be implied from circumstances or conduct. *Union Central Life Ins. Co. v. Hoyer (1992), 66 Ohio St. 344, 64 N.E. 435*, paragraph two of the syllabus. The evidence of such knowledge and consent must, however, be clear and definite, because a novation is never presumed. *Bolling v. Clevepak Corp., 20 Ohio App. 3d at 125*, citing *Grant-Holub Co. v. Goodman (1926), 23 Ohio App. 540, 156 N.E. 151*.

Appellants argue that the original ten year lease/purchase agreement was displaced by a subsequent oral lease which extinguished the purchase option. It is evident from the record that the original lease/purchase agreement was not displaced by the subsequent lease - no "discharge of a valid existing obligation by the substitution of a new valid obligation" occurred herein. The parties simply entered into an oral month to month tenancy following the expiration of (and appellants breach of) the original **[*25]** lease/purchase agreement. This does not constitute a novation.

Even if the parties' oral lease could somehow fairly be considered to have displaced the prior lease/purchase agreement, appellants have failed to point to clear, definite evidence that there was a meeting of the minds regarding the purchase option. It is undisputed that the terms of the oral lease were relayed from Millard Bahner to the Morrisons by Roger Bahner. And, Roger Bahner testified quite specifically that he did not negotiate with the Morrisons regarding their right to purchase the property because he "had no authority to do anything like

that," "it wasn't within [his] scope" and he was "just merely a messenger." There is no indication in the record that the subject of the purchase option was ever addressed in conjunction with the subsequent oral lease. There was no meeting of the minds. A novation did not occur.

Appellants have failed to establish that the Morrisons right to exercise the purchase option was extinguished through a novation. Accordingly, appellants' fourth assignment of error is overruled.

In their fifth and final assignment of error, appellants argue that the trial court abused its discretion **[*26]** in failing to apply the statute of frauds to bar the Morrisons' claim. Appellants assert that the Morrisons' failure to give written notice of their intention to exercise the purchase option violated the statute of frauds. 6 We disagree.

> 6   The purchase option clause of the lease/purchase agreement provides that the option "shall be exercisable upon *written* notice by Lessee to Lessor one hundred eighty (180) days prior to the end of the full ten (10) year term of this Lease ***." (Emphasis added.) Appellees asserted below, and the trial court found, that appellants expressly, orally, waived the requirement that notice be in writing. Substantial, competent, credible evidence supports this finding.

The Statute of Frauds was designed to prevent enforcement of unfounded fraudulent claims by requiring certain contracts to be evidenced in writing. *Jones v. Bonzo, 1991 Ohio App. LEXIS 5228* (Oct. 30, 1991), Lawrence App. No. 1977, unreported, citing 3 Williston on Contracts (3 Ed. 1960) 340-341, Section 448. In Ohio, the Statute of **[*27]** Frauds is embodied in *R.C. Chapter 1335. R.C. 1335.04* provides, in pertinent part, as follows:

> "No lease, estate, or interest, either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it ***."

Regarding the statute of frauds' effect on the acceptance of a purchase option, we note the following language of the Ohio Supreme Court, in *Wiedemann Brewing Co. v. Maxwell, supra:*

> "The fact that the acceptance by plaintiff in the present case was verbal [does not] destroy its right to enforce the contract against the party who signed the option. Our statute of frauds *** denies the right to maintain an action upon any contract for the sale of any interest in lands unless the agreement is in writing signed by the party to be charged, or by some authorized person. This contract is so signed by the party to be charged. The assent of the other party may be shown by parol."

*78 Ohio St. at 64*. (Citations omitted.)

Thus, the Statute of Frauds is not implicated by, and does not operate to bar, oral notice **[*28]** of the exercise of a purchase option. The Morrisons oral notification of their intent to exercise the purchase option did not violate the Statute of Frauds.

The requirement that the Morrisons' notice be in writing was purely contractual. Appellants could freely waive this contractual requirement. See *Joyce/Dayton Corp. v. C.A. Manchester Tank & Equip. Co., 1996 Ohio App. LEXIS 5435* (Dec. 6, 1996), Montgomery App. No. 15977, unreported. ("The written notice requirement of a lease option is for the benefit of the lessor, not the lessee, and therefore the lessor may waive that requirement if he so chooses.") Competent, credible evidence supports the trial court's factual finding that appellants did so. We accept this finding.

We note that appellants characterize the waiver as an oral agreement modifying a written agreement which was subject to the Statute of Frauds. A subsequent oral agreement modifying an "essential" or "material" term of a written contract required to be in writing by the Statute of Frauds is invalid and unenforceable. *Jones v. Bonzo, supra* citing *Franke v. Blair Realty Co. (1928), 119 Ohio St. 338, 164 N.E. 353* and *Shafer v. Nagy* (Feb. 16, 1984), Highland App. No. 511, unreported. **[*29]** Obviously, not every term in a contract is "essential" or "material"

for purposes of the Statute of Frauds. [7]

> 7  For instance, when a deed to real estate has been executed, subsequent oral agreements between vendor and vendee, which do not take away or confer any interest in the land, but only determine the time when the purchase money becomes due, are not affected by the Statute of Frauds. See *Jones v. Bonzo, supra,* citing *Nonamaker v. Amos (1905), 73 Ohio St. 163, 172, 76 N.E. 949* and *Negley v. Jeffers (1875), 28 Ohio St. 90*.

Inasmuch as the statute of frauds does not require that the Morrisons' notice of acceptance of an option be in writing and inasmuch as the purported oral modification does not take away or confer any interest in land, we conclude that the written notice requirement was not an "essential" or "material" term of the contract for the purposes of the Statute of Frauds. The oral modification is valid and enforceable. Accordingly, appellants' fifth and final assignment of error **[*30]** is overruled.

Having considered the errors assigned and argued in the briefs and finding none of them to be meritorious, it is hereby ordered that the judgment of the trial court be affirmed in its entirety.

JUDGMENT AFFIRMED

*JUDGMENT ENTRY*

It is ordered that the JUDGMENT BE AFFIRMED and APPELLEE recover of APPELLANT'S costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the SCIOTO COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this Entry.

A certified copy of this entry shall constitute the mandate pursuant to *Rule 27 of the Rules of Appellate Procedure.* Exceptions.

Abele, J. and Kline, J.

Concur in Judgment & Opinion:

For the Court

BY: Earl E. Stephenson,

Presiding Judge

**NOTICE To COUNSEL**

**Pursuant to Local Rule No. 12, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**