# Exhibit D

*Slam Jams II v. Capitol Indem. Corp.*, No. 69754, 1996 Ohio App. LEXIS 3106 (Ohio Ct. App. July 18, 1996)

LEXSEE 1996 OHIO APP. LEXIS 3106

**SLAM JAMS II, ETC., Plaintiff-Appellee -vs- CAPITOL INDEMNITY CORP., ET AL., Defendants-Appellants**

NO. 69754

COURT OF APPEALS OF OHIO, EIGHTH APPELLATE DISTRICT, CUYAHOGA COUNTY

*1996 Ohio App. LEXIS 3106*

**July 18, 1996, DATE OF ANNOUNCEMENT OF DECISION**

**NOTICE:**

[*1] THE LEXIS PAGINATION OF THIS DOCUMENT IS SUBJECT TO CHANGE PENDING RELEASE OF THE FINAL PUBLISHED VERSION.

**PRIOR HISTORY:** CHARACTER OF PROCEEDING: Civil appeal from Common Pleas Court. Case No. 246416.

**DISPOSITION:** JUDGMENT: Affirmed.

**COUNSEL:** APPEARANCES:

For Plaintiff-Appellee: JOHN A. GHAZOUL, ESQ., MARK P. HERRON, ESQ., Cleveland, Ohio.

For Defendants-Appellants: STANLEY S. KELLER, ESQ., JOSEPH G. RITZLER, ESQ., Keller and Curtin Co., L.P.A., Cleveland, Ohio.

**JUDGES:** PATRICIA ANN BLACKMON, JUDGE. SPELLACY, C.J., and NAHRA, J., CONCUR.

**OPINION BY:** PATRICIA ANN BLACKMON

**OPINION**

JOURNAL ENTRY and OPINION

PATRICIA ANN BLACKNON, J.:

Defendants-appellants, Capitol Indemnity Corporation and Carl J. Johannes Co., appeal from a summary judgment and declaratory relief granted in favor of plaintiff-appellee, Slam Jams II, etc. and assign the following errors for our review:

> I. *THE TRIAL COURT ERRED IN GRANTING PLAINTIFF-APPELLEE'S MOTION FOR SUMMARY JUDGMENT WHEN SUBSTANTIAL EVIDENCE SUPPORTED EACH AND EVERY ELEMENT OF DEFENDANT-APPELLANT'S CLAIM THAT THE THEFT LOSS SUBMITTED BY PLAINTIFF-APPELLEE WAS NOT COVERED BY THE POLICY OF INSURANCE ISSUED BY DEFENDANT-APPELLANT.*
>
> II. [*2] *THE TRIAL COURT ERRED IN GRANTING PLAINTIFF-APPELLEE'S MOTION FOR SUMMARY JUDGMENT BECAUSE THE RELEVANT TERMS OF THE INSURANCE POLICY AT ISSUE ARE UNAMBIGUOUS AND THEREFORE, MUST BE GIVEN THEIR PLAIN AND ORDINARY MEANING.*
>
> III. *THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANTS' MOTION FOR SUMMARY JUDGMENT BECAUSE THE TERMS OF THE INSURANCE POLICY ISSUED BY DEFENDANTS-APPELLANTS ARE CLEAR AND UNAMBIGUOUS AND THE DISPUTED FACTS OF THIS CASE ESTABLISH THAT THE LOSS AT ISSUE*

*WAS NOT COVERED LOSS UNDER THE CLEAR AND UNAMBIGUOUS TERMS OF THE POLICY.*

Having reviewed the record of the proceedings and the legal arguments presented by the parties, we affirm the decision of the trial court. The apposite facts follow.

On March 23, 1992, Slam Jams II or Slam Jams in the Flats opened for business as a restaurant and sports bar on Old River Road in the city of Cleveland. Slam Jams is owned by Kosec, Inc. and operated by Thomas Toney George. Slam Jams was insured for up to $ 10,000 for crimes committed against the business. The "Commercial Crime Coverage" insurance policy was issued by Capitol Indemnity Corporation through its agent, Carl J. Johannes Co. The policy included [*3] coverage for "safe burglary." The "Robbery and Safe Burglary Coverage Form - Money & Securities" provided, in pertinent part, as follows:

A. COVERAGE

   1. Section 1. - Inside The Premises

     b. Safe Burglary

      (1) Covered Property: "Money and "securities" in a safe or vault within the "premises" or "banking premises."

      2) Covered Causes of Loss: Actual or attempted "safe burglary."

      (3) Coverage Extension Premises, Safe and Vault Damage:

      We will pay for loss from damage to:

      (a) The "premises: or its exterior; or

      (b) A locked safe or vault located inside the "premises:"

      resulting directly from the Covered Causes of Loss, if you are the owner of the property or are liable for damage to it.

D. ADDITIONAL EXCLUSIONS, CONDITION AND DEFINITIONS

   3. Additional definitions

     g. "Safe burglary" means the taking of:

      (1) Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

      (2) A safe or vault from inside the "premises."

On May 22, 1992, Slam Jams was burglarized. George reported someone came into the restaurant between 2:00 and 3:00 p.m. while they [*4] were open for business, pried open the door to the room where the money was kept, and took $ 9,236 in cash.

The room from which the money was taken was on the second floor of the establishment. There was one door to the room which was made of steel and was kept locked at all times. In the room, was a small safe, a formica counter-top attached to the wall, cash drawers for cash registers, a currency counting machine, a change counting machine, two adding machines, a desk and filing cabinet, and other business related valuables. The room was used to store and count the money, bookkeeping, and for the storage of valuables such as expensive liquors. George considered this room to be a vault because it was secured by steel doors, was used exclusively for the safekeeping of money and valuables, and was used to count money.

In the normal course of business, large amounts of cash were kept in the room. At the end of an evening of business, the cash drawers were taken from the cash registers and stored in the room until the next morning when the bookkeeper would come to the restaurant, balance the cash drawers, process the credit card receipts, and take the cash to the bank. A large sum of [*5] cash was also kept in the safe to be used to get singles and quarters for the restaurant's video games. The cash drawers were not kept in the safe because they would not fit.

At the time of the burglary, George's sister, Deebay M. George-Koussa, was the bookkeeper. On the day in question, she balanced the cash drawers, and prepared the

money for deposits. Before going to the bank, she left the $ 9,236 in the room in a bag and went to the first floor of the restaurant to process the credit card receipts so they could be credited to the restaurant's bank account. When she returned to the room on the second floor, the steel door had been pried open and the $ 9,236 in cash had been taken.

George made a police report and a claim to Capitol Indemnity Corporation under the terms of their insurance policy. Capitol Indemnity denied the claim. They reasoned the room in which the money was stored was an office not a vault.

Slam Jams filed a complaint for declaratory judgment and breach of contract. Slam Jams requested the court to hold that the room was a vault. They sought both compensatory and punitive damages. After discovery, the parties filed cross-motions for summary judgment on the [*6] declaratory judgment claim. The trial court granted Slam Jams' motion for summary judgment, denied Capitol Indemnity Corporation's motion for summary judgment, and issued a declaration that the loss sustained by Slam Jams was within the coverage provisions of the insurance policy at issue. This appeal followed.

Because the first, second, and third assignments of error raise essentially the same issue, they will be addressed together. The pivotal issues in this appeal are what was meant by the word "vault" as it is used in the insurance policy Capitol Indemnity issued to Slam Jams and whether the second floor room at Slam Jams was a vault within the meaning of the policy. If, in fact, the room was a vault within the meaning of the insurance policy, then summary judgment in favor of Slam Jams on their claim for declaratory relief was proper.

"A contract may be construed by a declaratory judgment either before or after there has been a breach of contract." *R.C. 2721.04*. "When a [declaratory judgment action] involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the [*7] court in which the proceeding is pending." *R.C. 2721.10*. Thus, summary judgment is an appropriate means for resolving declaratory judgment actions.

The standard of review for an appeal from summary judgment is plenary. This court applies the same test as the trial court, which is set forth in *Civ.R. 56*, and we evaluate the record according to *Civ.R. 56. Civ.R. 56* specifically provides before summary judgment may be granted it must be determined that: "(1) No genuine issue as to any material fact remains to. be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc. (1977), 50 Ohio St. 2d 317, 327, 364 N.E.2d 267*.

Moreover, it is well settled that the party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett (1987), 477 U.S. 317, 330, 91 L. Ed. 2d 265, 106 S. Ct. 2548*; *Mitseff v. Wheeler (1988),* [*8] *38 Ohio St. 3d 112, 115, 526 N.E.2d 798*. Doubts must be resolved in favor of the nonmovant. *Murphy v. Reynoldsburg (1992), 65 Ohio St. 3d 356, 358-59, 604 N.E.2d 138*. Under *Civ.R. 56(E)* "a nonmovant may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing there is a genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc. (1993), 90 Ohio App. 3d 421, 424, 629 N.E.2d 513*.

In applying the standard of review for an appeal from summary judgment, this court must look to the applicable area of law to determine whether any material facts are in dispute. Slam Jams sought a declaration that the room in which they stored money and valuables was a vault within the meaning of their insurance policy. Insurance policies are contracts and generally they are interpreted by applying the rules of contract law. *Burris v. Grange Mut. Cos. (1989), 46 Ohio St. 3d 84, 89, 545 N.E.2d 83*.

"The construction of written contracts and instruments of conveyance is a matter of law." *Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St. 2d 241, 374 N.E.2d 146* at paragraph one of the syllabus. "***Where the terms in an existing contract [*9] are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Id. at 246*. "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio*

*St. 3d 321, 322, 474 N.E.2d 271.*

In this case, there is no dispute that the terms of the insurance policy are unambiguous; therefore, the agreement's interpretation raises a question of law. The question of law in dispute is the meaning to be given to the word "vault" as used in the insurance policy.

In an insurance policy, as in any other contract, words and phrases are to be given their plain and ordinary meaning unless otherwise provided in the policy. *Burris at 89.* "When the language of an insurance policy has a plain and ordinary meaning, it is unnecessary and impermissible for this court to resort to construction of that language." *Karabin v. State Automobile Mut. Ins. Co. (1984), 10 Ohio St. 3d 163, 166-167, 462 N.E.2d 403.* See, also, *Jarvis v. State Farm Mut. Auto. Ins.* [*10] *Co.* (Dec. 30, 1993), Cuyahoga App.No. 64597, unreported (provided plain and ordinary meaning of insurance policy required rather than technical or strained construction).

Capitol Indemnity Corporation argues the second floor room at Slam Jams could not be considered a vault and relied upon the affidavit of Terry Reese. Reese, an expert involved with the sale of Diebold Safe and Vault, who was employed in the safe and vault industry for over thirty years, stated Slam Jams' second floor room could not reasonably be construed as a vault. Reese further provided a vault must meet minimum security requirements. A fire resistent vault includes an insulated vault door, a combination lock, and locking bolts around the circumference of the vault door. A burglary resistant vault includes walls constructed of reinforced poured concrete and a vault door constructed of a minimum of one and one-half inches of steel with a combination lock.

Although Capitol Indemnity provides an expert opinion as to what constitutes a vault, consideration of his opinion clearly violates the principles of contract law. Extrinsic evidence of a general custom or trade usage cannot vary the terms of an express contract, [*11] but may only be used to show the parties to a written agreement intended to employ terms having a special meaning to their particular trade or industry. See *Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St. 2d 241, 248, 374 N.E.2d 146.* Reese's affidavit does not provide any information concerning the widespread custom and usage of the word "vault" in the insurance or restaurant industries. Thus, it cannot be presumed that the parties intended the term "vault" to have the special meaning provided by Reese.

Furthermore, Reese provided two very clear and concise sets of specifications to be used in the construction of a vault. Such succinct definitions could have easily been included in the contract. To include such limiting definitions now would materially change construction of the contract and give the term "vault" a technical meaning that is not evidenced by the language of the policy itself.

A more reliable source for finding the plain and ordinary meaning of a "vault" as well as any other word is a dictionary of the English language. A "vault" has been defined as "a room or compartment for the safekeeping of valuables," Webster's Ninth New Collegiate Dictionary (1990) [*12] 1306, "a room or compartment, often built of steel, for the safekeeping of valuables," American Heritage Desk Dictionary (1981) 1026, "a chamber or room, particularly in a bank, for the safekeeping of money and valuables," Ballentine's Law Dictionary (3 Ed. 1969) 1334, "an underground room or compartment for storing wine, valuables, etc." Funk & Wagnalls New Practical Standard Dictionary (1949) 1445.

Under Ohio law, the definition of a vault has been considered in the context of criminal law. In *State v. Gover (1990), 67 Ohio App. 3d 384, 587 N.E.2d 321*, the court defined a "vault" as "a room for the safekeeping of valuables and commonly built of steel." *Id. at 386*, citing Webster's Third New International Dictionary (1981) 2536. Ultimately the court held a vault used as private dining area and a safe which served as a case to display items of little or no worth did not constitute a "vault" or "safe" for purposes of the safecracking statute, *R.C. 2911.31. Id.* at paragraph one of the syllabus. See, also, *State v. Aspell (1967), 10 Ohio St. 2d 1, 225 N.E.2d 226* (held cigarette vending machine not a depository box, safe, or vault); *State v. Stotridge* (Nov. 22, 1982), [*13] Ross App.No. 916, unreported (held cash register not a strong box).

The Ohio Attorney General provided "the act of knowingly inserting a stolen bank card into an automatic teller device and obtaining money therefrom without the authority of the cardholder does not constitute a violation of *R.C. 2911.31*, which prohibits safecracking. 1984 Ohio Atty.Gen.Ops. No. 84-040 at the syllabus. The opinion reasoned vaults, safes, and strongboxes are used for the safekeeping of money, jewelry, valuables, and important documents, whereas an automatic teller device is an

electronic bank facility set up to perform banking transactions.

The common thread, with respect to the term "vault," in Ohio law and dictionaries of the English language is its use. It may have been a room, compartment, or chamber, it may have been underground, in a bank, or made of steel, but in every definition explored in this opinion, a vault was a place used for the safekeeping of valuables. In one instance a room presumably met the specifications suggested by Reese's affidavit, but was not used for that purpose. See *Gover, supra.* Ultimately, it is use of the room, not its dimensions that make it a "vault" where the [*14] parties to the contract did not intend to give the word a special or technical meaning.

Having established the plain and ordinary meaning of a "vault" is a room used for the safekeeping of money or other valuables, we turn to the question of whether Slam Jams' second floor room was a vault. The only evidence offered on this issue is the deposition of Thomas Tony George. George maintained throughout cross-examination that the second floor room was a vault. Although the restaurant bookkeeper used the room for balancing cash registers and counting money, it was primarily used for the safekeeping of money in a safe, money in cash drawers, valuable liquors, and other valuables related to Slam Jams' business. Accordingly, we find reasonable minds could only reach the conclusion that Slam Jams' second floor room was a vault within the meaning of the insurance policy issued by Capitol Indemnity.

Judgment affirmed.

It is ordered that Appellee recover of Appellants its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.

A certified [*15] copy of this entry shall constitute the mandate pursuant to *Rule 27 of the Rules of Appellate Procedure.* Exceptions.

SPELLACY C.J., and

NAHRA, J., CONCUR.

PATRICIA ANN BLACKMON

JUDGE

N.B. This entry is made pursuant to the third sentence of *Rule 22(D), Ohio Rules of Appellate Procedure.* This is an announcement of decision (see Rule 26). Ten (10) days from the date hereof this document will be stamped to indicate journalization, at which time it will become the judgment and order of the court and time period for review will begin to run.