## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **216 JAMAICA AVENUE, LLC,** ) | **CASE NO. 1:06CV1288** |
| ) | |
| Plaintiff, ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| v. ) | |
| ) | **REPLY IN SUPPORT OF DEFENDANT** |
| **S & R PLAYHOUSE REALTY CO.,** ) | **S&R PLAYHOUSE REALTY CO.'S** |
| ) | **MOTION FOR LEAVE TO AMEND** |
| Defendant. ) | **ANSWER** *INSTANTER* |
| ) | |

### I.      Introduction

Pursuant to Fed. R. Civ. P. 15(a), S&R Playhouse Realty Co. ("S&R") has moved this

Court for leave to amend its Answer *instanter*.  S&R merely seeks to assert two additional

defenses: equitable estoppel and impossibility/impracticability.  216 Jamaica Avenue, LLC

("Jamaica") opposes the motion and offers this Court misleading reasons in support of its

opposition.  S&R has not waived its affirmative defenses, nor are these two affirmative defenses

legally insufficient.

Jamaica misrepresents the impossibility/impracticability defense being asserted by S&R,

which is before this Court as a matter of the Sixth Circuit's decision to remand the case for

interpretation of the gold clause and to determine the obligation it imposes upon S&R.  The

arcane gold clause is plain on its face as to the form of payment required.  It provides for no

means for the payment of rent other than by "gold coin of the United States."  When the parties

entered into the 1982 Assignment, which is the basis of the obligation that Jamaica relies upon in

enforcing the gold clause, it was impossible for S&R to pay the rent in "gold coin of the United States."[1]

As for S&R's equitable estoppel defense, Jamaica's legal sufficiency argument centers upon the assertion that no "fraud" was present in Jamaica's predecessors' repeated representations of annual rent being $35,000.  Jamaica attempts to attribute arguments to S&R that it has not made: "S&R thus imagines that Jamaica's predecessors intentionally or knowingly misrepresented the rent obligation in order to cheat themselves out of a quarter of a century's worth of gold clause-adjusted rent." (Pl.'s Opp. to Dft.'s Mot. for Leave to Amd. at 5.)  Jamaica then proceeds to attempt to defeat the arguments that it has itself constructed.  It is not so simple.

Equitable estoppel does not require a fraudulent intent, as Jamaica concedes in its Opposition Brief.  Equitable estoppel may be predicated on constructive fraud.  (Pl.'s Opp. to Dft.'s Mot. for Leave to Amd. at 4.)  Jamaica in conclusory fashion states that no fraud can be present and that no special relationship of confidence existed between it and S&R in connection with constructive fraud.  (Pl.'s Opp. to Dft.'s Mot. for Leave to Amd. at 5.)  These are matters of fact as yet undecided.

The resulting estoppels contained the requested assurances of rental amounts owed by S&R, and were accordingly acted upon both by S&R in borrowing the money, and by S&R's lenders in making the loans.  S&R and its lenders reasonably relied to their detriment upon the rental amounts contained in those estoppels, not only for the loans taken by S&R that were supported by the estoppel certificates, but also for decisions related to capital improvements made to the leasehold interest, as well as to decisions of whether to enter into long-term subleases with S&R's own subtenants.  Neither S&R, nor its lenders, would have borrowed or

---

[1] Part of the interpretation of the gold clause and any obligation it imposed upon S&R in 1982, which the Sixth Circuit remanded for this Court to resolve, involves a decision of what this impossibility means.

lent the money if the landlord had stated that rent was to be "gold-clause adjusted" in an amount

dozens of multiples more than $35,000 per year.[2]  Accordingly, the representations made in the

estoppel certificates were essential to the entire loan process and, in fact, to the way the building

at issue has been leased and managed for the past quarter of a century.

## II.    Law and Argument

### A.    S&R has not waived its affirmative defenses and Jamaica has not been prejudiced.

Jamaica offers a single case for the proposition that S&R has waived its defenses, but the

facts of that case are decidedly different than here.   First, unlike in *Macurdy v. Sikov & Love,*

*P.A.* 894 F.2d 818, 824 (6th Cir. 1990)—the case cited by Jamaica—S&R has not failed to plead

its affirmative defenses; it has sought leave from this Court at a stage still early in the litigation

to amend its Answer pursuant to Fed. R. Civ. P. 15.[3]

Further, unlike in *Macurdy*, where the Sixth Circuit found that "[p]laintiff-appellant ha[d]

been prosecuting th[e] case for a number of years," in the present instance, Jamaica has barely

begun to prosecute its case at all.  *Id.*  Here, the initial Case Management Conference was held

on August 15, 2006.  No discovery or any other active prosecution of the case occurred before

that date.  Summary judgment briefings were then completed on November 27, 2007, barely

more than three months later.[4]

---

[2] Put another way, if rent was skyrocketed far beyond any real market value, it would have been wholly unprofitable to obtain the loans, and, thus, highly unlikely that the loans could have been repaid.

[3] Rule 15 reinforces the principle that cases "should be tried on their merits rather than the technicalities of pleadings, and therefore assumes a liberal policy of permitting amendments." *Turner v. City of Taylor,* 412 F.3d 629, 646 (6th Cir. 2005) (internal citations omitted).

[4] As S&R has pointed out in its Motion for Leave to Amend, it recognized before November 27, 2007 that it would not be able to adequately defend itself within the time set by the Scheduling Order (Dckt., non-document, 8/15/2006), and it sought from the Court additional time to complete discovery and for extension of the summary judgment briefing schedule (Dckt. 23).

Although the parties continued to conduct discovery and attempted to supplement the record, the Court ultimately denied all additional briefing following the summary judgment reply briefs, and thus there was no further substantive activity on the case docket following the completion of summary judgment briefings.  Once the Court rendered its decision on summary judgment, Jamaica appealed and the Court was divested of jurisdiction.  S&R at that point quite rightly turned its attention to Jamaica's appeal.  S&R could not have conducted further discovery or amended its pleadings during the pendency of the appeal even if it had wished to do so.

Nor will Jamaica be prejudiced by S&R's two additional defenses.  S&R has been more than clear in stating its reasons for amending its Answer, and when Jamaica responds to state "S&R has not explained why it has delayed, nor [can] it," Jamaica is simply ignoring S&R's oft-asserted fact that this case has had a remarkably short existence before this Court.  (Pl.'s Opp. to Dft.'s Mot. for Leave to Amd. at 3.)  There has not been time for the necessary discovery to address the question of the gold clause's effect on the rent owed under the lease, the interpretation of the clause, the obligation it imposes on S&R, or any other defenses that the "district court has not yet had an opportunity to address," including the two sought by S&R in its proposed amended answer.  The evidence in this case goes back nearly 100 years, and a reasonable amount of time is necessary to uncover evidence, much of which is in the hands of Jamaica's predecessors.[5]

Respecting prejudice to Jamaica, Jamaica opposes S&R's amendment by stating only that additional briefing will be required, and "*possibly* further discovery, which *may* be costly";

---

[5] One new document turned up is yet another estoppel certificate, this one for the *landlord's benefit* (i.e., one of Jamaica's predecessors).  This estoppel was prepared by counsel for Jamaica's predecessor and submitted to S&R for S&R's execution.  The estoppel states unequivocally that rent is $35,000 per year (and does not refer to a "base" rent), and further states that rent will be $35,000 per year following the renewal of the Lease for 25-, 50-, or 99-year period subsequent to the first 99 years.  (Transmittal letter and 1988 Estoppel Certificate, attached as Exh. A.)  This new estoppel is further explained in S&R's Reply in Support of a Continuance Pursuant to R. 56(f).

Jamaica also asserts "[i]n fact the parties would *possibly* have to re-depose witnesses they previously deposed." (Pl.'s Opp. to Dft.'s Mot. for Leave to Amd. at 4) (emphasis added.) Any additional briefing, evidence gathering, and expert testimony, however, is why the Sixth Circuit remanded this case.[6]

### B. Jamaica should be equitably estopped from asserting a rent other than $35,000 per year.

A plain reading of the elements of equitable estoppel as set forth by *Jamaica*, makes clear that those elements are satisfied under the facts adduced in this case to date. (*See* Pl.'s Opp. to Dft.'s Mot. for Leave to Amd. at 4.) The defense of equitable estoppel certainly cannot be shown to be futile at this stage of proceedings.

Respecting the four elements of equitable estoppel, first, Jamaica's predecessors *factually misrepresented* the amount of rent due under the Lease in not one, but in several estoppel certificates both for its own benefit and for S&R's. Jamaica, through its predecessors, has repeatedly stated that rent was $35,000 per year.

Second, if the rent is to be increased more than twenty fold, as Jamaica claims, the pertinent *statements made in the estoppels were obviously misleading*. Jamaica asserts that rent after 1982 was to be gold-clause adjusted, and if so, rent would at all times after 1982 have been in excess of $500,000 per year.[7]

Third, the representations in the estoppels *induced S&R and its lenders to rely* upon them by entering into lending arrangements involving millions of dollars. In further reliance upon

---

[6] None of what the Sixth Circuit envisioned, or S&R requests, will burden either party or the Court. The total time taken by Jamaica thus far for its depositions has been about six hours. S&R itself noticed depositions of Jamaica's two principals who sued it, and S&R's counsel traveled to New York for the depositions, where Jamaica's principals reside. The discovery burden and cost endured by Jamaica to date, in a case where it is the plaintiff and stands to unjustly receive more than a million dollars in annual rent for a property it paid well under a million dollars for, has been slight indeed relative to the enormous increase in rent Jamaica demands.

[7] This is in sharp contrast to the $35,000 per year that Jamaica's predecessors' stated in the estoppel certificates and which were relied on by S&R and its financial institution lenders.

Jamaica's repeated assurances of the rental amount, S&R made capital improvements to the leasehold estate and entered into long-term subleases with its own tenants for office space above the ground lease. S&R would not have incurred the obligation of the long-term subleases, and the banks would not have loaned millions of dollars if any of them believed that the building would be made unviable economically by the clause that Jamaica now claims requires a rent that will be shown to be wholly unrealistic in light of leasing activities from 1982 to the present.

Fourth, after S&R entered into loans, made capital improvements, and sub-leased the space to others, based on a rent of $35,000 per year, its new landlord (Jamaica) changed its position and demanded a rent far in excess of the rent stated in all of the estoppel certificates. S&R has been injured by its entering into costly undertakings based upon one rental amount, repeatedly confirmed by its landlord, and then afterwards having a new landlord demand an entirely different rent, one so remarkably different that it changes the financial analyses of S&R's undertakings not merely by degrees, but by orders of magnitude.[8]

Jamaica offers six strained arguments as to why S&R's equitable estoppel defense is legally insufficient. S&R responds briefly to each to demonstrate that its defense of equitable estoppel is sufficient, certainly not futile, and must be explored fully in order to accord justice to both parties.

### 1. Jamaica's predecessors misrepresented the rental amount due under the Lease.

Jamaica attempts to escape the first element of equitable estoppel by attempting to show there was no "fraud" present in its misrepresentations. While "fraud" is not an element of equitable estoppel, Ohio courts have held that the first two elements of equitable estoppel are

---

[8] "As a general rule, a party will be [precluded] from denying his own acts or admissions, which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of the latter." *McAfferty v. Conover's Lessee*, 7 Ohio St. 99, 105 (Ohio 1857). "Equitable estoppel prevents relief when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment." *The State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.*, 71 Ohio St. 3d 26, 34 (Ohio 1994).

designed to prevent fraud *or* constructive fraud *and* to promote the ends of justice. *Ohio State Bd. of Pharm. v. Frantz,* 51 Ohio St. 3d 143, 145 (Ohio 1990). Respecting the ends of justice, Ohio courts have found that constructive fraud need have no fraudulent intent whatsoever, but rather tend to "mislead innocent persons and to beguile them of their rights, contrary to good public policy." *Pfisterer v. Toledo, B. G. & S. Traction Co.,* 89 Ohio St. 172, 183 (Ohio 1913). Jamaica ignores the policy rationales underlying equitable estoppel, and misleadingly attempts to reduce S&R's position to one in which Jamaica's predecessors misrepresented the rental amount to cheat themselves out of money. (Pl.'s Opp. to Dft.'s Mot. for Leave to Amd. at 5.) The argument is a straw man, which S&R has never advanced.

In fact, S&R sought to borrow money secured by its leasehold interest. In order to do so, S&R requested that its landlord provide the lender with written assurances of, among other things, the amount of rent owed by S&R and that S&R had not defaulted upon its obligations under the Lease. (*See, e.g.,* 2005 Estoppel Certificate, attached as Exh. B.)[9] No entity or person other than S&R's landlord would have sufficed for giving such assurances. S&R placed trust in the landlord to accurately state facts in support of its borrowing. Moreover, the landlord benefitted from the borrowing as the money was used to benefit the leasehold estate, and thus it was in the landlord's interest to give the estoppels. Equitable estoppel is designed to prevent conduct as exists here—a party makes a representation of fact designed to induce reliance, and then later acts inconsistently with its representations to injure the relying party.[10]

**2. Jamaica's predecessors' representations need not have been made to S&R.**

---

[9] Additional estoppels were given by Jamaica's predeccessors and are attached at Exh. A and Exh. C.

[10] Such conduct is neither in keeping with good public or private confidences, and S&R has at least shown that it is likely that it will satisfy any "constructive fraud" element of equitable estoppel. *See Di Pippo v. Meyer,* 24 Ohio App. 2d 86, 88-89 (Hamilton Cty. 1970) (Setting forth policy rationales, the court holds that constructive fraud requires neither dishonesty nor an intent to deceive.)

Jamaica asserts that the relevant representations must be made to the party asserting the estoppel. (Pl.'s Opp. to Dft.'s Mot. for Leave to Amd. at 7.) This is simply contrary to good sense and to the law of Ohio.

> [R]epresentations need not be made to the plaintiff directly, but ... 'it is sufficient if the representation is made to a third person to be communicated to the plaintiff, or to be communicated to a class of persons of whom the plaintiff is one, or even if it is made to the public generally with a view to its being acted on, and the plaintiff as one of the public acts on it and suffers damage thereby.'"

*Globe Indemnity Co. v. Wassman*, 120 Ohio St. 72, 85 (Ohio 1929) (citing *Swift v. Winterbotham*, 8 Q.B. 244 (1833)). In the present case, there can be no doubt that Jamaica's predecessors made representations to S&R's lenders knowing that such representations would be acted upon by the lenders and by S&R.

### 3. Jamaica's predecessors misrepresented the rent obligation.

Jamaica absurdly contends that its predecessors did not misrepresent rent in its estoppels. To the extent, however, that Jamaica's predecessors represented that rent was anything other than a gold-clause adjusted amount of rent, which by Jamaica's theories would have been at all times during S&R's tenancy in excess of $500,000, Jamaica's predecessors misrepresented the amount of rent in the estoppel certificates when they stated: "The base annual rental under the Lease is $35,000, exclusive of taxes and other items of additional rental and all other amounts payable under the Lease." (2001 Estoppel Certificate, attached as Exh. C.)

Jamaica argues that such a statement is consistent with the Lease, since according to Jamaica, the terms "base" and "other items of additional rental" allows for the possibility of an "adjustment" to the rental amount.[11] (Pl.'s Opp. to Dft.'s Mot. for Leave to Amd. at 7.) The "adjustment," of course, to which Jamaica refers is based upon the gold clause, which under its

---

[11] The term "base rent" will be shown to exclude only minimal common area charges, insurance and the like. It will be shown not to refer in any sense to any escalation of rent as Jamaica seems to claim. The inquiry is one of fact.

own theories would have raised the "base" rent amount by more than 15 times the $35,000

represented in the estoppels.  If Jamaica is correct in its gold clause adjustment theories, it is

nonsense to suggest that the above-quoted language is anything other than a misrepresentation of

rent.  The statements were made in every instance in support of substantial borrowing from a

bank insured by the FDIC.[12]

Finally, contrary to Jamaica's assertions, the rental provision in the Lease is not itself

contradictory of Jamaica's predecessors' statements of rent in the estoppels.  Jamaica's

predecessors' statements of the rental amount stand alone in the estoppels; and moreover, the

Lease does not contain a "self-executing rental increase provision," which Jamaica contends

makes the estoppels further ambiguous and thus insufficient as the basis of an estoppel.  Jamaica

relies entirely upon the case of *Frank B. Thomas Trust v. Imperial 400 Nat'l, Inc.*, No. 14202,

1990 Ohio App. LEXIS 1242 (Summit Cty. Mar. 28, 1990) (attached as Exh. J to Pl.'s Opp. to

Dft.'s Mot. for Leave to Amd.) for the self-executing proposition; however, the two rent clauses

analyzed by the *Thomas* Court include the language "shall be increased" and "shall be adjusted."

*Id.* at *3-5.  Jamaica attempts to equate the term "shall be paid" in the Lease to these so-called

self-executing provisions.  Of course rent "shall be paid"; the question is shall a "rent increase"

be self-executing.  The *Thomas* decision does not remotely support Jamaica's position.  And as

history has shown, there is nothing self-executing about the rental provision in the Lease.

### 4.    S&R's reliance was reasonable.

Jamaica argues that S&R's reliance upon the estoppel certificates was unreasonable

because (1) S&R could have known that its "adversary's conduct was misleading," and (2) such

---

[12] The 1988 estoppel certificate does not contain any of the language upon which Jamaica relies for its argument that there was no misrepresentation of rent. The 1988 estoppel states: "The annual rent payable under the Lease is $35,000 per lease year... ." (1988 Estoppel Certificate, Exh. A.)  This estoppel, prepared by Jamaica's predecessor, does not contain either the terms "base" as in "base rent" or "other items of additional rental."  The rent is represented to be $35,000 per year.

misrepresentations had no force respecting future rent obligations. (Pl.'s Opp. to Dft.'s Mot. for Leave to Amd. at 8.)  First, Jamaica contends that S&R is barred from asserting equitable estoppel because it is "part of an extremely sophisticated real-estate company," and thus was in a position to "know its true rent obligation." (Pl.'s Opp. to Dft.'s Mot. for Leave to Amd. at 8.) Jamaica, however, offers no argument, evidence, or anything else of S&R's level of sophistication, largely because there has not been enough discovery conducted in this action for Jamaica to know much about S&R.  The best that Jamaica can do is allude to some connection between S&R and Forest City Enterprises, and then surmise that S&R is "part of an extremely sophisticated real-estate company." (Pl.'s Opp. to Dft.'s Mot. for Leave to Amd. at 8.)

Furthermore, Jamaica has nothing to say about S&R's knowledge of the real-estate issues before the Court in this case.  In fact, Jamaica's predecessors were S&R's landlords.  No entity beyond a landlord has a more authoritative perspective on the amount of rent owed by its tenant. To the extent that the landlord affirms the amount of rent owed by its tenant, the tenant has a right to rely upon that affirmance.  In this instance, Jamaica's theories leave considerable room for misinterpretation between what the Lease required and what the parties were to do.

Jamaica further attempts to cast that problem as a mistake of law and contends that such a mistake is no excuse for not knowing that the landlord's representations were misleading.  To reach such a conclusion, however, Jamaica has to posit the question in terms of whether or not S&R understood the 1977 amendment of the Joint Resolution, the contents of 31 U.S.C. § 5118(d)(2), and the 1982 Assignment and Assumption Agreement taken together. (Pl.'s Opp. to Dft.'s Mot. for Leave to Amd. at 9.) Such an approach, however, is misleading.  That was not the question at all.

The Lease requires payment of rent in "gold coin of the United States."  At the time of the 1982 Assignment and Assumption Agreement, the time when S&R's obligation arose, there

was no gold coin of the United States in circulation. The only question then raised, whether explicitly or not, was what rent was due under the Lease? The answer to the question, returned consistently in about every way possible, was $35,000 per year. That is what the lessee prior to S&R paid, that is what S&R paid, that is what Jamaica's predecessors accepted, and that is the amount that Jamaica's predecessors declared the rent to be in various estoppel certificates.[13]

The amount of rent owed under the Lease was a question of fact, and the parties, all of them, interpreted the Lease to require $35,000 in rent. Jamaica finds itself in the contrived position of stating that none the estoppels, nor any of the parties' other conduct, all of which belie their claims, could be relied upon reasonably. At best, however, it is a strained position that is not amenable to being dealt with at this stage of the proceedings.[14] S&R's defense of equitable estoppel is not futile.

In addition, Jamaica attempts to lump S&R's equitable estoppel defense in with its waiver defense, contending that the Lease's anti-waiver provision precludes both defenses. Equitable estoppel is not a claim for waiver. The two defenses are distinct. *Sloan v. Shafer Commer. & Indus. Servs, Inc.*, 2008 Ohio 4765, ¶ 19 (Trumbull Cty. 2008). Respecting equitable estoppel, Jamaica's predecessors were interpreting the Lease for S&R and its lenders. To the extent they misled S&R and its lenders to their detriment about the meaning of the Lease, they cannot now step back and assert that an anti-waiver provision somehow precludes S&R's reliance on their interpretation and cures conduct amounting to fraud or constructive fraud. Any anti-waiver provision has no purpose in such an analysis, and none of the law provided by Jamaica holds so.

---

[13] As this case makes clear, there is no language in the Lease that clearly contradicts any of these reasons for believing rent was $35,000.

[14] *In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig.*, 553 F. Supp. 2d 902, 906 (S.D. Ohio 2008) (the complaint need not contain detailed factual allegations, but rather allegations only sufficient to "raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim").

11

**5. S&R relied on Jamaica's predecessors' misrepresentations and was prejudiced.**

Jamaica asserted in writing in estoppel certificates that S&R's rent was $35,000 per year. Respecting any financial analysis of the Lease, the rental amount under the Lease is far and away the most fundamental part of any such analysis. Indeed, Jamaica's owner admits that the return on his investment in buying the property was represented by the capitalization rate provided by the real-estate broker at the time he purchased the property, and which itself was fundamentally based upon the amount of the rent to be collected on the property: $35,000.[15] (S. Venner Dep. at 167:4-25, 168:1-15, Dckt. 37, attached as Exh. D.)

Jamaica contends that S&R would have done nothing differently even if Jamaica had represented rent to be gold-clause adjusted in the estoppel certificates. Jamaica's argument is that S&R was incentivized to maximize its revenues from the leasehold interest without respect to the rental amount. (Pl.'s Opp. to Dft.'s Mot. for Leave to Amd. at 10.) This is among the most preposterous arguments advanced by Jamaica.

S&R would not have borrowed money under the same conditions had Jamaica's predecessors represented rent to be gold-clause adjusted. Indeed, it is unlikely that S&R would have been able to borrow money at all. Furthermore, it is a matter of record that S&R has consistently lost money on the leasehold interest even under a rental obligation of $35,000. (Lott Dep. at 29:18-22, Dckt. 35, Exh. B, attached as Exh. E; Ross Aff. ¶ 2, Dckt. 53, Exh. M.) It is also a matter of record that S&R has entered into long-term sub-leases that *span the renewal option*. (Lott Dep. at 70:16-20, Dckt. 35, Exh. B, attached here as Exh. E.) To the extent that rent was 10, 20, 30 times or more greater than the $35,000 represented by its landlord, S&R would not, and could not have borrowed money and would not have entered into such sub-leases.

---

[15] Curiously, Jamaica asserts that "Rule 56 "requires more than the bare assertion of legal conclusions" in stating that it relied upon Jamaica's predecessors' estoppels. S&R seeks to amend its Answer and is not required to prove its assertions at this stage of proceedings. Nevertheless, S&R contends that its reliance upon Jamaica's estoppels is self evident, and that such reliance is a question of fact.

S&R did so only because its landlord represented the rent to be $35,000 per year, including for any period following renewal.[16] Jamaica's unsupported assertions concerning what S&R would have done regardless of the amount of rent are against good sense and are pure speculation.[17]

### B.      Impracticability/Impossibility.

Jamaica misrepresents S&R's impossibility argument.[18] 31 U.S.C. § 5118 makes clear there are three types of gold clauses. The first is a gold (bullion) clause (31 U.S.C. § 5118(a)(1)(A)), the second is a gold coin clause, (31 U.S.C. § 5118(a)(1)(B)), and the third is a clause by which payment is to be "measured in gold or a particular United States coin" (31 U.S.C. § 5118(a)(1)(C)). Tellingly, Jamaica does not address any part of 31 U.S.C. § 5118(a)(1) in the Impossibility section of its Opposition Brief. The gold clause in the Lease before the Court is of the type referred to in 31 U.S.C. § 5118(a)(1)**(B)** and means: "**a *particular* United States coin or currency....**" (Emphasis added.)

The gold clause here requires only that rent "shall be paid in gold coin of the United States of the present standard of weight and fineness."[19] Further, it is undisputed that S&R's Lease obligations issued under the 1982 Assignment and Assumption Agreement. There was no gold coin of the United States in 1982. It was thus impossible to pay in gold coin at the time S&R assumed any obligations under the Lease; that is, the time at which S&R's obligation issued under the 1977 amendment to the Joint Resolution.

---

[16] The estoppel certificate at Exh. A clearly represents that the rent of $35,000 per year extends to the renewal period.

[17] S&R relied upon the landlord's representations that rent was $35,000 per year and was prejudiced. Jamaica contends that "another court addressing the belated enforcement of a long-unenforced gold clause remarked, S&R 'was not injured but rather obtained a financial windfall.'" (Pl.'s Opp. to Dft.'s Mot. for Leave to Amd. at 11.) Jamaica does not point out that the *Wells Fargo* Court was not offering the comment in the context of equitable estoppel and fraud.

[18] For the sake of simplicity, S&R will refer to the defenses of impossibility and commercial impracticability together as "impossibility."

[19] "Present standard of weight and fineness" refers to the number of grams of weight to be found in the coin, and to the purity of the gold coin as a matter of percentage.

Jamaica contends that the Sixth Circuit settled the issue of impossibility when it held that the clause is "a sort of price-indexing mechanism [intended] to protect the lessor from the effects of inflation," and Jamaica contends that S&R's impossibility argument is thus "preposterous" because it would protect the lessor only by using gold coin as a *means* of payment, which, according to Jamaica, is no protection at all. (Pl.'s Opp. to Dft.'s Mot. for Leave to Amd. at 13-14.) The Sixth Circuit did not, however, opine on the effectiveness of the gold clause as a hedge against inflation; rather it seems to have recognized some flaw in the clause, as it refers to it only as a "sort of price-indexing mechanism." Nor did the Sixth Circuit opine on the obligation that such a clause imposes upon S&R. It also left that for this Court to do.

Contrary to Jamaica's positions, if the lessor accepted $35,000 in gold coins (or rather $8,750 of gold coins in quarterly installments) at the time rent was due, the lessor would have exactly the "sort of" protection against a fluctuating dollar (or in support of a distrust of currency) precisely to the extent that gold coin provides any such protection. The lessor, for example, was free to hoard the gold coin however he pleased through time (at least he could have done so at the time the Lease was entered into), and indeed the hoarding of gold was common and one of the activities made unlawful by President Roosevelt in his Executive Order of April 5, 1933. *See Norman v. Baltimore & O. R. Co.*, 294 U.S. 240, 296 (1935) ("[b]y . . . [this] Executive Order, forbidding hoarding, all persons were required to deliver . . . to stated banks 'all gold coin, gold bullion and gold certificates'").

Moreover, and contrary to Jamaica's assertions, no court has decided what a clause such as the one in this Lease means. The Sixth Circuit has left that for this Court to decide. Respecting binding precedents, Jamaica had fifteen pages in its Opposition in which to point the Court to such a decision, but rather it obliquely pointed the Court to prior briefings, which

14

assuredly do not answer the questions.[20] Indeed, if any court has answered the question of what

the clause means, it was the U.S. Supreme Court in *Bronson v. Rodes*, 74 U.S. 229 (U.S. 1869).

"[C]ontracts to pay coined dollars can only be satisfied by the payment of coined dollars." *Id.* at

254. To the extent that a "gold value" clause, as asserted by Jamaica, is recognized under 31

U.S.C. § 5118 (*see* Pl.'s Opp. to Dft.'s Mot. for Leave to Amd. at 13), it is in subsection

(1)(a)(C), where the clause calls for payment in: "United States money *measured* in gold or a

particular United States coin." (Emphasis added.) Such a clause may be found in contracts

elsewhere, such as in *Trostel*, but not in the Lease before this Court.

> "Impossibility of performance" has long been recognized in Leases such as here:

> Various constructions of such [gold] clauses are possible, and, under varying
> circumstances, various ones have been taken. * * * (2) The clause may be treated,
> more accurately, as a *money* contract, but as a single obligation to pay only in the
> particular kind of money specified. Trebilcock v. Wilson, 12 Wall. 687 (U. S.
> 1871) .... Such a construction, however, **renders the clause inoperative**
> **whenever gold coin becomes legally unobtainable**.

48 Harv. L. Rev. 1057, 1060-61 n. 13 (1935) (attached as Exh. F) (bolding added). The above

analysis did not anticipate a time when a gold coin obligation *would issue on a day when* no gold

coin was in circulation; however, such a day makes an impossibility argument all the more

compelling.

### III.  Conclusion

For all the reasons above, S&R respectfully requests that the Court grant its Motion for

Leave to Amend its Answer, and set a period for discovery and a schedule for supplementary

briefing on issues resolvable by motions for summary judgment.

---

[20] For instance, Jamaica argues that the *Norman* Court decided that "of" is synonymous with "equivalent to," in the phrasing of a gold clause; however, the *Norman* Court is actually reciting the arguments of one of the parties, not rendering a holding in the case. *Norman*, 294 U.S. at 298; (Pl.'s Opp. to Dft.'s Mot. for Leave to Amd. at 13.) Even under Jamaica's theories, the gold clause here does not contain express "equivalence" language, which at least one Court has found to be the essence of a gold value clause. *LeMaire v. Kentucky and Indiana Terminal Railroad Co.*, 140 F. Supp. 82, 86 (S.D.N.Y. 1956).

Respectfully submitted,


/s/ Gary L. Walters
Stephen D. Williger (0014342)
Gary L. Walters (0071572)
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, Ohio  44114-1291
(216) 566-5500
(216) 566-5800 – Fax
Stephen.Williger@ThompsonHine.com
Gary.Walters@ThompsonHine.com

Attorneys for Defendant
S & R Playhouse Realty Co.

16

## CERTIFICATE OF SERVICE

A copy of the foregoing *Reply in Support of Defendant S&R Playhouse Realty Co.'s*

*Motion for Leave to Amend Answer Instanter* was filed electronically this 26th day of November,

2008.  Parties will receive notice through the Court's electronic filing system.


/s/ Gary L. Walters
One of the Attorneys for Defendant
S & R Playhouse Realty Co.

17