IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| 216 JAMAICA AVENUE, LLC, | ) | CASE NO. 1:06CV1288 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | REPLY IN SUPPORT OF DEFENDANT |
| S & R PLAYHOUSE REALTY CO., | ) | S&R PLAYHOUSE REALTY CO.'S |
| | ) | MOTION FOR CONTINUANCE |
| Defendant. | ) | PURSUANT TO FED. R. CIV. P. 56(f) |
| | ) | |

## I.      Introduction

Pursuant to Fed. R. Civ. P. 56(f), S&R Playhouse Realty Co. ("S&R") has moved this

Court for additional time to complete discovery in order to submit a full and adequate response

to Plaintiff 216 Jamaica Avenue LLC's ("Jamaica") Motion for Summary Judgment.  Jamaica

opposes S&R's motion, essentially ignoring the basis for the motion, which is the highly-

abbreviated nature of the proceedings to date.  The degree of diligence displayed by S&R's

conduct of discovery is not plausibly at issue in this matter.  What is at issue is the amount of

time that was available to S&R for the conduct of discovery, and the significant matters

remanded to this Court by the Sixth Circuit.

It is not surprising that Jamaica has attempted to thwart S&R's discovery efforts at every

opportunity.  Jamaica's strategy throughout this case has been to attempt to rush an arcane

contract provision to judgment, when all of the conduct surrounding that provision demonstrates

that the parties did not intend for the provision to be enforced as Jamaica contends.

Dockets.Justia.com

Consistent with this lack of intention is that the parties conducted themselves in ways that factually and legally undercut Jamaica's theories.  Jamaica's predecessors, for instance, repeatedly affirmed that rent was $35,000 per year under the Lease.  That conduct created a basis for reasonable reliance by S&R; however, although some evidence has been retrieved, additional evidence of this conduct has not been readily available due to the age of the transactions in this case.  The Lease itself is almost 100 years old, and S&R took an assignment and became the lessee under the Lease in 1982, more than 26 years ago.  Witnesses to the transactions are predictably no longer alive or difficult to find, and evidentiary documents are scattered and in the possession of countless, and in many instances, unknown persons and entities.

No real question should exist that additional time will allow for the collection of additional evidence relevant to disposition or not of this case by summary judgment.  An initial Case Management Conference was held in this case on August 15, 2006, and final briefs were submitted in support of the parties' motions for summary judgment on November 26, 2006.  The entirety of the time between these dates, including time for the completion of  all summary judgment briefing, was less than three and half months.

Since this case was remanded by the Sixth Circuit, S&R has already discovered a critical December 1988 estoppel certificate *prepared by counsel for Jamaica's predecessor*, which contains evidence contradictory of several of Jamaica's arguments pending before the Court.  (1988 Transmittal letter from counsel for Jamaica's predecessor and Estoppel Certificate attached as Exh. A.)  Jamaica, in the meantime, has proceeded only by responding to S&R's evidence as it is been found, and taking whatever steps necessary to limit S&R's conduct of discovery.

Jamaica asserts that S&R is not entitled to additional discovery for three reasons: (1) the evidence S&R now claims to want is not essential to justify its opposition to Jamaica's renewed

2

motion for summary judgment; (2) to the extent this evidence exists, there is no reason to believe

that it has been unavailable to S&R; and (3) to the extent this evidence has been unavailable,

there is no reason to believe that it exists and therefore no reason to believe that S&R will find it

if only S&R has more time.  (Pl.'s Opp. to Dft.'s Mot. for Contin. at 3.)  None of these reasons is

meritorious.  They ignore that there is likely highly relevant, but difficult to find, evidence of the

conduct of Jamaica's predecessors, and that there has been insufficient time afforded for its

discovery.  This additional evidence is potentially critical to Jamaica's defenses.

In addition, given the Sixth Circuit's remand instructions, it may be necessary to obtain

experts to opine on a number of the remanded issues.  Further, given the factual issues raised in

S&R's Defendant's Motion for Leave to Amend *Instanter,* and this Motion for Continuance

Pursuant to Fed. R. Civ. P. 56(f), many of the issues remanded are obviously factual and will

likely not be resolved by summary judgment.  Therefore, justice is served by issuing a complete

schedule, including a trial date.

## II.      Law and Argument

Rule 56(f) is designed to protect parties from dismissal before they have a fair

opportunity for discovery.  *See* Wright, Miller & Kane, 10A Federal Practice and Procedure §

2741, at 541 (1983).  *Blake v. Consolidated Freightways*, 823 F.2d 553 (6th Cir. 1987).

Summary judgment should not be granted before the parties are given adequate time for

discovery.  Fed. R. Civ. P. 56(f); *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229,

231-32 (6th Cir. 1994).

**A.      The evidence sought by S&R is essential to its defenses, and will likely be sufficient to establish defenses defeating Jamaica's claims.**

S&R has briefed the legal sufficiency of its defenses in its Motion for Leave to Amend its Answer and its Motion to Continue Pursuant to Fed. R. Civ. P. 56(f), as well as in its Reply in Support of its Motion to Amend its Answer, which are incorporated herein.  Jamaica's predecessors' conduct estops Jamaica's present demands for an increase in rent.  S&R's affidavit in support of R. 56(f) makes clear that it seeks additional time to discover, among other things, evidence of the course of conduct between "the lessor and S&R."  (Aff. of G. Walters, attached as Exh. A to Dft.'s Mot. for Contin. Purs. to R.56(f).)  Evidence of conduct between S&R and the lessor, means conduct between Jamaica's predecessors and S&R.  Jamaica has never to date, and cannot, contend that it does not stand in its predecessors' shoes.

In addition to the estoppels already before this Court (including that attached as Exh. I to Jamaica's Opp. to Mot. for Leave to Amend Answer *Instanter* (Dckt. 52)), which evidence the parties' course of conduct and support a defense of equitable estoppel, S&R has discovered an additional estoppel that further supports S&R's defense.[1]  As the Chain of Title for the property in this dispute  (attached as Exh. B), and counsel's letter transmitting the new estoppel (Exh. A.) show clearly, this new estoppel further clarifies the rent demanded by  Jamaica's predecessors, and the rental amount upon which S&R has relied for more than a quarter of a century.  (Exh. A.)

The new estoppel was prepared in anticipation of a 1988 transfer of the subject property from one of Jamaica's predecessors (The Prudential Insurance Company of America ("Prudential")) to another of Jamaica's predecessors (Supplement of Pompano Realty Corp. ("Pompano")).  (*See* Chain of Title, Exh. B.)  The letter transmitting the estoppel is addressed to

---

[1] The new estoppel at Exhibit A was discovered by S&R on November 18, 2008.

4

S&R and is signed by counsel for Jamaica's predecessor, Prudential. (Exh. A.) The letter makes

clear that counsel for Prudential prepared the estoppel. (*Id.*) The new estoppel was prepared for

the benefit of Prudential, Jamaica's predecessor, so that Prudential could transfer the property to

Pompano, also Jamaica's predecessor. (Exh. A.) The new estoppel states:

*        *        *

4.  The Lease provides for the following renewal options:  Tenant has the
right to extend and renew the Lease for either 25 yrs., 50 yrs. or 99 yrs. at
an annual rental of $35,000 per lease year.  There is no expansion option
under the Lease.

5.  *The annual rent payable under the Lease is $35,000 per lease year,*
payable in advance in equal quarterly installments of $8,750 each on the
first day of each calendar quarter, the last having been paid on October 1,
1988.

*        *        *

(Exh. A) (emphasis added).

  Jamaica has previously argued to this Court that the language of the 2001 estoppel (Dckt.

52, Exh. I) is consistent with a gold-clause adjusted rent, due to its referral to the terms "base

annual rent" and "other items of additional rental," seeming to mean that this language leaves

open that the rent stated in the 2001 estoppel could be higher than $35,000 under a gold-clause

adjustment. (Pl.'s Opp. to Dft.'s Mot. for Leave to Amd. at 7.) Jamaica thus argues that its

predecessors did not misrepresent the amount of rent by stating that "[t]he base annual rent under

the Lease is $35,000, exclusive of taxes and other items of additional rental." Jamaica asserts

that this language is at best "ambiguous" and thus cannot be used to estop Jamaica. (Pl.'s Opp. to

Dft.'s Mot. for Leave to Amd. at 7-8.)

  Jamaica's argument that the 2001 estoppel does not misrepresent rent under its gold

clause theories is specious even when taken alone; however, the new estoppel entirely belies

5

such an argument.  No such qualifying language such as "base rent" or "other items of additional rental," is present in the new estoppel, an estoppel prepared by Jamaica's predecessor. Jamaica's predecessor informed S&R that rent was in no uncertain terms $35,000 per year, and that such a rent extended to any renewal option exercised under the Lease.  (Exh. A.)

Such evidence is important, if not critical, to S&R's estoppel (and waiver) defenses, and there has simply been inadequate time to uncover all such evidence going back more than a quarter of a century.  S&R plainly stated that it needs additional time to discover such evidence in its Affidavit in support of a R. 56(f) continuance.  Moreover, S&R is not limited only to the language of its Affidavit; the arguments in its briefing in support of its Motion also further explain the reasons for any additional discovery time needed.  *Plott v. General Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1196 (6th Cir. 1995) ("In other words, if the appellant has not filed *either a Rule 56(f) affidavit or a motion* that gives the district court a chance to rule on the need for additional discovery, this court will not normally address whether there was adequate time for discovery.") (emphasis added).  S&R has filed both an affidavit and a motion pursuant to R. 56(f).

**B.**    **Further evidence is required to interpret the meaning of the gold clause, and expert testimony will assist the Court.**

S&R has further briefed its difference with Jamaica respecting the meaning of the gold clause in its Reply in Support of Leave to Amend its Answer, filed concurrently with this Reply.[2] Curiously, however, Jamaica repeatedly asserts in its Opposition Briefs that the Sixth Circuit has resolved any issues concerning an interpretation of the gold clause.  (*See, e.g.*, Pl.'s Opp. to Dft.'s Mot. for Contin. at 4-6; *see also, e.g.*, Pl.'s Opp. to Dft.'s Mot. for Leave to Amd. at 12-13.) The

---

[2] S&R does not repeat that analysis here, but rather incorporates herein by reference its Reply in Support of Motion for Leave to Amend its Answer.

Sixth Circuit did not resolve the meaning of the gold clause, nor opine on any obligation that clause imposes upon S&R. Had the Sixth Circuit adopted Jamaica's "conversion" analysis (requiring a calculation of $35,000 worth of gold in 1911, and then converting that quantity of gold to currency as rent comes due), there would be nothing for this Court to interpret. The Sixth Circuit, however, did not adopt Jamaica's analysis or approve it, as otherwise its decision that "we thus remand the case to the district court to interpret the clause" would be nonsensical. (*See 216 Jamaica Ave., LLC v. S&R Playhouse Realty Co.*, 540 F.3d 433, 441 (6th Cir. 2008)).

Nor do any of the cases cited to by Jamaica resolve the issues before this Court. The issue before the U.S. Supreme Court in *Norman v. Baltimore & O. R. Co.* 294 U.S. 240 (U.S. 1935), for example, which Jamaica relies upon, was whether the Joint Resolution of June 5, 1933 was constitutional. (Pl.'s Opp. to Dft.'s Mot. for Contin. at 6, fn. 5.)  That is all.

Not only is the clause in *Norman different than the one here*, but furthermore, the *Norman* Court analyzed the gold clause in that case, both as a clause literally requiring payment in gold coin (as S&R argues is the intent of the clause before the Court here), and, alternatively, as a clause requiring for the payment of a value of gold, and then held that the Joint Resolution was constitutional under both analyses. *Norman,* 294 at 313-314.

In addition, Jamaica's continued reliance on *Trostel* is misplaced. (Pl.'s Opp. to Dft.'s Mot. for Contin. at 6, fn. 5.)  The *Trostel* clause provides: "*at the option of the lessor*, all payments under this lease shall be made in gold coin of the United States of America, of or equal to the present standard of weight and fineness." *Trostel v. American Life & Cas. Ins. Co.,* 168 F.3d 1105, 1106-07 (8th Cir. 1999) (emphasis added).  The *Trostel* clause, different than the one here, provided the lessor with an option to be paid in gold coin *or* in a value of money equal to the gold coin. *See, e.g.,* 31 U.S.C. § 5118(a)(1)(C). In addition, the words "present standard of

weight and fineness" in *Trostel,* as here, go only to the quantity and quality of the gold coin to be paid, such as to guard against payment by an inferior gold coin in the future, should the United States decide to reduce either the weight of its gold coins, or their purity in gold. In short, the parties are at odds as to the requirements of the gold clause present in this case, and it is for the Court to interpret the clause's meaning and the obligation it imposes, if any, on S&R.

Expert testimony will assist the Court in its interpretation. No court, either in a decision cited by Jamaica, or otherwise, has decided the meaning of the clause before this Court. Jamaica also disingenuously asserts that for purposes of expert testimony, S&R has neither defined the "geographic location" in which the clause at issue has special meaning, nor has S&R even defined the clause to be illuminated by expert testimony. (Pl.'s Opp. to Dft.'s Mot. for Contin. at 6.)

There is no genuine doubt as to which clause to be interpreted in this case—it is the provision of the Lease requiring payment in U.S. gold coin, and the one which was remanded for interpretation by the Sixth Circuit. (Lease at 6.) Moreover, the expert would not need to interpret the clause based upon a particular region of the country, but would opine, among other things, upon the gold clause as a term of art used in contracts and leases in the late 19th and early 20th centuries. *TransPro, Inc. v. Leggett & Platt, Inc.*, No. 07-4333, 2008 U.S. App. LEXIS 21938 (6th Cir. Oct. 16, 2008) (attached as Exh. C) (holding that expert testimony opinion upon a term of art that makes a determination of the action more probable or less probable is properly admitted). Few contract provisions are more a term of art, or more susceptible to assistance in interpretation by an expert, than the gold clause in this action. Jamaica's own theories support that expert testimony will assist the Court, as according to Jamaica, the term is pregnant with meaning beyond the words it contains.

Indeed, all of the above is to say nothing of the impact upon the meaning of gold clauses by the definitions found in 31 U.S.C. § 5118(a)(1). The statute contains three distinct definitions of a gold clause. (*See* Dft.'s Mot. for Leave to Amd. at 6.) According to Jamaica's analysis, there is no distinction to be made among the statute's three definitions of gold clauses, but such an analysis runs roughshod over the "the basic canon of statutory interpretation that a court should not interpret a statute to render meaningless certain parts of that statute." *United States v. Cole*, 418 F.3d 592, 597-98 (6th Cir. 2005). Under Jamaica's analysis, the clause in this Lease, which is a bare requirement to pay in gold coin defined in 31 U.S.C. § 5118 (a)(1)(B), is not to be distinguished from a clause requiring payment in gold bullion, the type defined in 31 U.S.C. § 5118 (a)(1)(A), and neither of these, according to Jamaica, is to be distinguished from a clause which requires payment to be "measured in United States money measured in gold or a particular United States coin per 31 U.S.C. § 5118 (a)(1)(C).[3] Such a reading of the statute is dubious.

Indeed, principles of contract interpretation, as well as statutory interpretation, cut against Jamaica's arguments. Jamaica, for example, asserts that the *Trostel* Court has decided the meaning of the clause in the Lease here, but the clause in the Lease before this Court, unlike the one in *Trostel*, does not provide for an option by the lessor for receipt of payment in gold coin or in currency. While such a lessor option is provided for expressly in *Trostel*, Jamaica insists that such explicit language is to be read into the gold clause here, too, without regard to whether it is actually contained in the clause. The intent of the parties to a contract, however, is presumed to reside in the language they chose to employ in the agreement. *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Auth.*, 78 Ohio St. 3d 353, 362 (Ohio 1997). The parties to the Lease here did not provide for a lessor's option of payment. Such a provision are

---

[3] This latter, incidentally, is the type of clause found in *Trostel*. *See Trostel*, 168 F.3d at 1106-07. The clause in the Lease here is defined in 31 U.S.C. § 5118(a)(1)(B), not (C).

written into other contracts considered by other courts, but not here.   The intent of the parties in this Lease is found in bare contract language requiring only a payment in gold coin of the U.S. of the standard weight and fineness.   No meaning should be read into this provision other than that contained in its words.   To the extent that Jamaica contends otherwise, expert testimony will assist the Court in its interpretation of the clause.

### C.   Additional time will likely yield additional evidence in support of S&R's defenses.

Jamaica attempts to have it every way.   On the one hand, Jamaica contends that the parties continued to conduct discovery beyond the end of the summary judgment briefing period, and thus S&R had ample time to conduct discovery (Pl.'s Opp. to Dft.'s Mot. for Contin. at 12), while on the other hand, Jamaica contends that S&R was dilatory in conducting discovery and thus is not entitled to additional discovery under R. 56(f).   (Pl.'s Opp. to Dft.'s Mot. for Contin.at 13.)   In fact, S&R did continue to conduct discovery beyond the summary judgment briefing period, but it did so at considerable expense, and at the risk that the Court would not allow any additional briefing based upon that discovery.   Ultimately that is what happened.   The Court denied all supplemental briefings by the parties to include surreplies.   (Dckt., non-document, 7/2/07.)

On the same day that the Court denied supplemental briefings, the Court denied Jamaica's motion for summary judgment and granted S&R's motion for summary judgment. (Dckt. 42.) Jamaica cannot reasonably assert that S&R should have continued any discovery efforts beyond that date.   Jamaica appealed the Court's judgment, and the S&R properly turned its attention to the appeal.

As it rather turns out, the only evidence pursuant to formal discovery that S&R was able to get before the Court, was the result of discovery conducted between the Case Management

10

Conference in August 2006 and the summary judgment briefing period in November 2006.  S&R

now seeks no more than to extend discovery for a reasonable amount of time to conduct

additional discovery regarding Jamaica's predecessors' conduct and to engage experts to assist in

the interpretation of the gold clause before the Court, and to help assess S&R's reliance upon

Jamaica's predecessors' conduct.

    S&R has already uncovered a critical estoppel contrary to arguments asserted by Jamaica.

(Exh. A.) Jamaica itself could have found the same estoppel, as that estoppel was prepared by its

predecessors, but rather it did nothing that S&R is aware of to discover any evidence of such

conduct, even though its predecessors' conduct has been implicated since before discovery

began.[4]  Jamaica's position has been rather to behave passively, responding only to the evidence

that S&R has turned up, and to exert itself as required to limit S&R's discovery efforts.  Contrary

to Jamaica's contentions, it is highly likely that formal discovery will turn up other relevant,

admissible evidence.

    In addition, Jamaica's arguments against a brief discovery period ring hollow.  Jamaica

contends, for example, that S&R has had an unfettered ability to continue its investigation with

respect to evidence under its control and to seek information from cooperating third parties.

(Pl.'s Opp. to Dft.'s Mot. for Contin. at 11.)  Of course this is true, as it is always true, since such

parts of any parties' investigation do not rely in any way upon ongoing litigation or the ability to

conduct formal discovery pursuant to the Federal Rules of Civil Procedure.  S&R, however, is

not seeking the Court's grant of a motion to conduct an internal investigation, or to seek

information from cooperating third parties.  S&R seeks to use the compulsory processes

---

[4] S&R defined "Jamaica" to include its predecessors. (Dft.'s First Request for Prod. of Docs. at 3, attached as Exh. D.)  Jamaica did not object to this definition.

provided by formal discovery to acquire evidence and information that it cannot obtain in any other way.

Justice is served by a brief continuance of discovery and any decision respecting issues appropriate for summary judgment. At a minimum, given the amount at risk and the importance of this case, this Court should permit the parties to complete the discovery period that would have been in place under the standard track pursuant to the local rules. As Jamaica knows through discovery, there is no person remaining at S&R, or at any organization affiliated with S&R, who was present at the time of the 1982 Assignment and Assumption Agreement. As a result, other than documents still in S&R's possession after 26 years, S&R does not have control over any evidence relative to this action, and a brief extension of discovery will allow S&R to find evidence in the possession of others, consult with and obtain appropriate expert witnesses, and fully develop this important case for a just resolution instead of the rush to judgment sought by Jamaica. The nature of the discovery challenges that have faced S&R are probably best stated by its current lessor and landlord, Jamaica:

> Q: When you purchased the Halle Building, the real estate which is the subject of this action, were you provided with a file by your predecessor?
>
> A: No.
>
> Q: What documents did you receive from your predecessor?
>
> A. Only—really nothing. We received—the assignment. The lease we received. There were a couple of amendments to the lease from 1929. That was it, I think. That was it. I mean, we provided everything. It was the lease, the assignment, a couple of amendments.

(S. Venner Dep. at 143: 3-18, Dckt. 37, attached as Exh. E.)

### III.   Conclusion

Jamaica demands an astronomical rent increase.  Thus far, Jamaica has taken two brief depositions and defended two others.  It has produced documents in this case that fill a fraction of a single banker's box.  The expense and effort undertaken by Jamaica by way of discovery to date is miniscule relative to what it demands from S&R.  S&R seeks no more than a brief continuance of discovery, and a short period of time in which to submit to the Court expert testimony and supplemental briefing in support of S&R's Amended Answer and in opposition to Jamaica's motion for summary judgment.  S&R's Amended Answer presents only two new defenses, one of which is closely related to the defense of waiver already before the Court (equitable estoppel), and another that will implicated in any event by the Court's interpretation of the gold clause (impossibility).   S&R respectfully requests that the Court grant its Motion for a Continuance Pursuant to Fed. R. Civ. P. 56(f) and schedule a Case Management Conference by which the Court can set any remaining dates required for the conclusion of this action.

Respectfully submitted,


/s/ Gary L. Walters
Stephen D. Williger (0014342)
Gary L. Walters (0071572)
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, Ohio  44114-1291
(216) 566-5500
(216) 566-5800 – Fax
Stephen.Williger@ThompsonHine.com
Gary.Walters@ThompsonHine.com

Attorneys for Defendant
S & R Playhouse Realty Co.

## CERTIFICATE OF SERVICE

A copy of the foregoing *Reply in Support of Defendant S&R Playhouse Realty Co.'s Motion for Continuance Pursuant to Fed. R. Civ. P. 56(f)* was filed electronically this 26th day of November, 2008.  Parties will receive notice through the Court's electronic filing system.

/s/ Gary L. Walters
One of the Attorneys for Defendant
S & R Playhouse Realty Co.