# EXHIBIT J

to

**PLAINTIFF'S MOTION TO STRIKE OR FOR LEAVE TO FILE SURREPLY**

Westgate Village Shopping Ctr. v. Lion Dry Goods Co.,

No. 93-3760, 1994 U.S. App. LEXIS 6905 (6th Cir. 1994)

LEXSEE



Analysis
As of: Dec 11, 2008

**WESTGATE VILLAGE SHOPPING CENTER, an Illinois Limited Partnership, Plaintiff-Appellant, v. THE LION DRY GOODS COMPANY; MERCANTILE STORES COMPANY, INC., Defendants-Appellees.**

No. 93-3760

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

1994 U.S. App. LEXIS 6905

**March 30, 1994, Filed**

**NOTICE:** [*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION.  SIXTH CIRCUIT RULE 24 LIMITS CITATION TO SPECIFIC SITUATIONS.  PLEASE SEE RULE 24 BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT.  IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT.  THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: 21 F.3d 429, 1994 U.S. App. LEXIS 15990.

**PRIOR HISTORY:** United States District Court for the Northern District of Ohio.  District No. 91-07544.  Dowd, Jr., District Judge.

**JUDGES:** BEFORE: MILBURN and BOGGS, Circuit Judges; and CONTIE, Senior Circuit Judge.

**OPINION BY:** PER CURIAM

**OPINION**

PER CURIAM.  Westgate Village Shopping Center is an Illinois partnership that owns and operates Westgate Village Shopping Center in Toledo, Ohio.  Westgate sued Lion Dry Goods Company, which operates an anchor store at Westgate Village Shopping Center, and its parent company, Mercantile Stores, Inc., seeking to enforce a restrictive covenant between Westgate and Lion.  Westgate appeals from the district court's order denying it summary judgment and granting summary judgment to defendants.  For the reasons discussed herein, we affirm.

**I**

Westgate essentially seeks, through declaratory and injunctive relief, to compel Lion to continue to operate its department [*2] store in the shopping center pursuant to an agreement originally entered into in 1955 and amended in 1956 and 1977.  Lion, in accordance with plans announced in 1991, has converted its Westgate department store into a "Lion for the Home" store and opened another department store in the Franklin Park Mall two miles from Westgate Village.

Under the 1955 agreement, Westgate purchased three parcels of vacant land, which became Westgate Village Shopping Center.  The agreement provided that Westgate would convey the "Lion Parcel" to Lion by full covenant and warranty deed and that the deed would convey certain easements in perpetuity.  Lion purchased the land for a "fraction" of the price that Westgate paid.  Westgate owns the rest of the land and leases it to the shopping center's other tenants.  Article 10 of the agreement provides: "10.  NAME AND DEVELOPMENT OF

SHOPPING CENTER. The Sellers [Westgate] covenant and agree to use said Parcels 1, 2 and 3 for the development of a suburban shopping center. The Purchaser [Lion] covenants and agrees to own and operate a department store on the Lion Parcel under the name of LION.  The name of the shopping center shall be selected by the sellers [*3] with the written approval of the Purchaser."

Article 11 provides that the parties agree to erect certain buildings, article 12 contains certain conditions precedent to Lion's obligations to begin construction (specifically, Westgate had to obtain as tenants a national grocery chain, a national variety store, and a drugstore), and article 14 provides for reciprocal easements regarding the use of parking areas, driveways, and sidewalks.  These easements were to run with the land in perpetuity. Article 15 states that Westgate would not, without Lion's consent, lease to three named department stores or to any beauty parlor operator or shop and provides that if Lion opens another department store within three miles of Westgate Village, Westgate had the right to lease to another department store, including any of the stores listed in article 15.  Article 16 provides that Lion may sell or lease the property, but must notify Westgate of any bona fide offer received and then Westgate would have a right of first refusal under the same terms and conditions as in the offer.

The repair and maintenance cost-sharing provision (article 19), which had a duration of twenty years, states that if [*4] Lion were no longer to own or occupy the premises, then the parties would be released from the mutual obligations of article 19.  The agreement also includes a clause according to which Lion agreed that it would "faithfully perform and fulfill everything in the foregoing Agreement on its part to be performed or fulfilled, at the time and in the manner therein provided."

The 1956 amendment modified some of the easements and deleted other restrictions, and under the 1977 amendment Westgate released a portion of the perpetual easements to enable Lion to enclose some sidewalk areas.  The original deed was recorded and made reference to the 1955 agreement.  In 1957, both the shopping center and the Lion department store began operations.  The shopping center, however, no longer houses a grocery store or variety store, and Westgate leased space to a beauty parlor in 1979 without Lion's consent.

Westgate filed its complaint in September 1991 and simultaneously served discovery requests.  Lion responded to the requests, answered the complaint, and in November 1991 moved for summary judgment. Westgate then moved under Fed. R. Civ. P. 56(f) to "refuse the application for judgment" or to continue [*5] the proceedings in order to allow Westgate to conduct further discovery. Westgate also sought to amend its complaint.  A magistrate judge conducted the pre-trial proceedings.  The magistrate judge reviewed *in camera* certain of Lion's documents under seal, found some to be privileged and irrelevant, and ordered Lion to produce others.  Lion complied.  The magistrate judge in March 1992 established a discovery cut-off date and ordered Westgate to respond to the summary judgment motion; Westgate complied after additional extensions were granted.  Westgate, by leave of the district court and magistrate judge, filed an amended complaint on May 5, 1992, three days before Lion's summary judgment reply memorandum was due.  Lion filed its reply memorandum and then moved for summary judgment on the new claims raised in the amended complaint.  Westgate also moved for partial summary judgment.  During these proceedings, Westgate deposed Lion's present manager, its former manager, and its president and Mercantile's general counsel.  In August 1992, the magistrate judge recommended disposition of the summary judgment motions in favor of Lion, and in July 1993 the district court, adopting the [*6] report and recommendation, agreed.

The magistrate judge found that Lion owed a duty to own and operate a department store, but, absent a specific duration clause, that duty lasted for only a "reasonable" length of time. The magistrate judge concluded that Lion had operated the store for 37 years and that, as a matter of law, that was a reasonable length of time; thus, the covenant was no longer enforceable. The magistrate judge also found that there was no joint venture and thus Lion owed no fiduciary duty to Westgate, because there was nothing more than an arms-length business transaction between knowledgeable businessmen.

On Westgate's first claim, which sought a declaration that the agreement created a joint venture under which Lion owes a fiduciary duty to Westgate, the district court found no language in the agreement evidencing a joint venture under Ohio law. Westgate's second, third, and sixth claims sought a declaration that article 10 is still enforceable and alleged a breach of a duty of good faith

and fair dealing. The district court determined that, under Ohio law, restrictive covenants should be construed strictly, that article 16 did not define the duration of [*7] Lion's operation of its Westgate store, that Lion could change or abandon its store once it complied with the agreement's restrictions in article 10, and that therefore there was no breach. Thus, while the district court was concerned that the magistrate judge had engaged in impermissible fact-finding at the summary judgment stage on the issue of the reasonableness of the duration of the covenant, it agreed that the covenant was no longer enforceable.

Westgate's fourth and fifth claims alleged that Lion breached its duties arising under a *de facto* fiduciary relationship. The district court determined that there was no evidence offered that would support any finding other than arms-length business transactions. Because no fiduciary duty existed, summary judgment was granted on the seventh and eighth claims, which alleged that Mercantile, the parent company, interfered with Westgate's contract, allegedly inducing Lion, its subsidiary, to breach its fiduciary duty to Westgate. Finally, the district court granted summary judgment on the ninth claim, which sought a declaration that the land conveyed was a fee simple determinable or a fee simple on a condition subsequent and that [*8] "all right[,] title[,] and interest" has "revested" in Westgate, because Ohio law presumes a fee simple absolute absent clear language to the contrary and the agreement and deed (which conveyed the land to Lion and "its successors and assigns forever") contained no such language.

Westgate appeals to this court. In this diversity action, Ohio substantive law applies.

## II

This court reviews *de novo* the district court's grant of defendants' motions for summary judgment. *Baggs v. Eagle-Picher Industries, Inc.*, 957 F.2d 268, 271 (6th Cir.), *cert. denied*, 113 S. Ct. 466 (1992). This court may affirm the district court only if it determines that the pleadings, affidavits, and other submissions show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When evaluating this appeal, this court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). [*9] Summary judgment is appropriate after sufficient time for discovery if a party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The moving party need not support its motion with evidence disproving the nonmoving party's claim, but must only "'show[]' -- that is, point[] out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325, 106 S. Ct. at 2554. The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case. *Id.*, 477 U.S. at 322, 106 S. Ct. at 2552. The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986). [*10] "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

### A

Restrictive real estate covenants -- *i.e.*, covenants that impose limitations upon the free use of land -- that do not include a specific term of years are enforceable so long as the estates to which they are annexed endure and so long as the term is reasonable. *LuMac Dev. Corp. v. Buck Point Ltd. Partnership*, 61 Ohio App. 3d 558, 564 (1988). Here, article 10 of the 1955 agreement imposes a restriction upon Lion's free use of the land that it bought from Westgate: Lion must own and operate a department store on the land. While Westgate argued below that other terms in the agreement, such as those in article 16, define the duration of Lion's obligations in article 10, it now appears to concede, as surely it must, that the agreement contains no specific durational limits. Thus, the issue is what constitutes a reasonable term in the absence of a durational specification.

Westgate argues [*11] that the question of reasonableness turns on whether a covenant retains substantial value to the adjoining landowners for whose benefit the covenant was intended. *See Brown v. Huber*, 80 Ohio St. 183, 206 (1909); *Winfrey v. Marks*, 14 Ohio App. 2d 127, 128-29 (1968). Westgate contends that Lion must prove by clear, convincing, and substantial evidence that the covenant no longer is of value to Westgate for

Page 3

article 10 to be no longer enforceable. However, this rule of law urged by Westgate applies to restrictive covenants running with the land. Here, in contrast, the article 10 covenant is personal in nature; it applies only to Lion. While the agreement binds Lion's "heirs" and "successors," only Lion can operate a Lion department store. Further, the agreement states that the easements would run with the land, demonstrating that the parties knew how to create covenants that would run with the land; no such language appears in article 10. Thus, whether article 10 still confers benefit on Westgate's adjoining land is of no consequence in determining whether article 10 has subsisted for a reasonable period.

Lion operated [*12] its department store at the Westgate Village Shopping Center from 1957 through at least 1991, when this case was filed. We conclude that in this case this is a reasonable period of time. Lion contends, and Westgate does not dispute, that, although Lion's Westgate Village department store was still profitable, its profits and sales volume were declining. Further, there is no longer a grocery store or variety store at the shopping center, and Westgate has leased space to a beauty parlor without Lion's consent -- suggesting that even Westgate believes that the conditions of the agreement have been fulfilled and that therefore a reasonable period of time has expired. Lion, through deposition testimony, says that the conditions at the shopping center have changed, to Lion's detriment; Westgate does not refute these assertions, but merely counters that Lion's department store continues to confer value on Westgate. Under these undisputed circumstances, we hold that Lion has met the terms of article 10 by having operated its department store for a reasonable period of years.

Westgate contends that whether Lion has operated its department store for a reasonable period of years is an [*13] issue that "can only be determined by a jury after considering all the facts." Westgate apparently misunderstands the standards and functions of summary judgment. Summary judgment is appropriate where the evidence is "so one-sided that one party must prevail *as a matter of law*." *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512 (emphasis added). Of course, we review the evidence in the light most favorable to the nonmoving party, but here, as described above, there is no genuine issue of material fact, and Lion is entitled to summary judgment.

Our decision is further buttressed by Ohio's strong public policy favoring the free use of land, as expressed in such cases as *Loblaw, Inc. v. Warren Plaza, Inc.*, 163 Ohio St. 581 (1955), and *Hunt v. Held*, 90 Ohio St. 280 (1914). The line of cases stemming from *Loblaw* and *Hunt*, upon which the district court's decision relies, is not directly on point, however, because those cases apply where the terms of a restrictive covenant are vague or ambiguous; the duration of the covenant is not in issue in those cases.

Because we uphold [*14] the grant of summary judgment to Lion on the issue of the enforceability of the covenant, summary judgment on the related claims of breach of good faith duty and fair dealing is appropriate, too. Having operated the department store for a reasonable period of time, Lion has fulfilled the terms of the agreement and therefore satisfied any duties of good faith and fair dealing required by the agreement. Similarly, the related claim against Mercantile for interfering with contractual duties owed by Lion to Westgate was properly dismissed, as Lion no longer owes an enforceable contractual duty under the agreement. This disposes of the second, third, sixth, and seventh claims of Westgate's complaint.

### B

Westgate also contends that a joint venture and *de facto* fiduciary relationship existed between Westgate and Lion, that Lion breached duties under both relationships, and that Mercantile induced Lion to breach these duties. The district court granted summary judgment to defendants on these claims as well.

On the joint venture issue, Westgate argues that a jury could find that there is a common business purpose here (a shopping center). As evidence of such a common purpose, [*15] Westgate points to both parties' ownership of part of the shopping center and their sharing of cross easements in the parking lot and common areas. Westgate contends that they divide profits based on their proportionate ownership of property. Westgate also notes that Westgate and Lion share maintenance expenses. Finally, Westgate points to a document written by Westgate's predecessor characterizing the relationship as a joint venture, and a pleading filed by Lion in a prior case between the two parties, describing how both jointly developed the Westgate property. As to the *de facto* fiduciary relationship, Westgate argues that it placed confidence and trust in Lion in the development of the

shopping center and that Lion was in a position of control, given its ownership of the property in the shopping center.

Under Ohio law:

> "A joint venture is '. . . an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, without creating a partnership, and agree that there shall be a community of interest among [*16] them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers. . . .'"

Silver Oil Co., Inc. v. Limbach, 44 Ohio St. 3d 120, 122-23 (1989) (quoting Al Johnson Constr. Co. v. Kosydar, 42 Ohio St. 2d 29 (1975)).

Indicia of a joint venture include: agreement to engage in a specific business enterprise; manifestation of the parties' intent to be joint venturers; a common interest in the purpose of the undertaking and equal right or authority to direct and govern the movements and the conduct of each other; the parties' functioning as both principal and agent to each other; and the division of profits and losses. *Id.* at 123. *Silver Oil* describes these indicia in mandatory terms (*e.g.*, the "parties must agree . . ."). *See also* L & H Leasing Co. v. Dutton, 82 Ohio App. 3d 528, 532-33 (1992) (four requirements for finding joint venture: joint contract, intention to associate as joint venturers, community of interest and joint control, and agreement [*17] for the division of profits and losses). Ordinarily, the determination of whether a joint venture exists is a question of fact for determination by the jury. Bennett v. Sinclair Refining Co., 144 Ohio St. 139, 151 (1944).

The evidence does not support a finding of a joint venture. The joint venture, if there were one, would have to be the shopping center. Certainly it cannot be Lion's property. While Westgate has some control with respect to the property (*e.g.*, it has a right of first refusal if Lion wants to sell), there is absolutely no evidence showing that Westgate shared in Lion's profits and losses, or that Lion shared in Westgate's profits and losses. The language of the agreement does not support a finding that Westgate and Lion agreed to a joint venture; rather, Lion bought the property and agreed (impliedly, for a reasonable length of time) to a particular use of it. Further, no evidence suggests that Lion and Westgate acted as agent and principal for each other, nor did either have an equal right or authority to direct and govern the movements and the conduct of the other; neither could act on behalf of the other. Thus, the district [*18] court was correct in granting summary judgment on the issue of joint venture.

Westgate relies on a letter to establish the parties' intention to create a joint venture, but the letter actually rejects the idea of a joint venture between the parties for the construction of buildings. J.A. at 627-28. Westgate also relies on a pleading, written by Lion in a prior case, describing the joint development of Westgate Village. The pleading does describe the agreement as providing for the "joint improvement, development and operation" of the shopping center. J.A. at 629-30. However, like the agreement itself, it does not suggest that either party could control the other, nor does it suggest that profits and losses would be shared.

As to the *de facto* fiduciary relationship issue, under Ohio law, "'[a] "fiduciary relationship" is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.'" Stone v. Davis, 66 Ohio St. 2d 74, 78 (quoting In re Termination of Employment, 40 Ohio St. 2d 107, 115 (1974)), [*19] *cert. denied*, 454 U.S. 1081, 102 S. Ct. 634 (1981). A fiduciary relationship may arise out of an informal relationship where both parties understand that a special trust or confidence has been reposed. *Ibid.* "'A confidential relationship is one in which one person comes to rely on and trust another in his important affairs and the relations there involved are not necessarily legal, but may be moral, social, domestic or merely personal.'" Indermill v. United Savings, 5 Ohio App. 3d 243, 245 (1982) (quoting Taylor v. Shields, 64 Ohio Law Abs. 193, 111 N.E.2d 595 (Ohio App. 1951)). This confidential relationship cannot be unilateral; "a mutual understanding must exist that one party has reposed a special confidence in the other." Applegate v. Fund for Constitutional Govt., 70 Ohio App. 3d 813, 817 (1990).

The evidence does not support a finding of a *de facto*

fiduciary relationship here under these standards. While Lion and Westgate kept plans to develop the shopping center a secret, this is a common arms-length business [*20] practice that has to do with keeping real estate prices from escalating, not with reposing confidence and trust in the integrity and fidelity of another. Further, Lion does not control or influence Westgate, although Westgate has alleged and supported with an affidavit that Lion has blocked Westgate from enclosing the shopping center (*J.A.* at 698); however, no specifics are provided as to how that supports a finding that Westgate has reposed trust in Lion or that Lion controls Westgate.

Having concluded that no joint venture or *de facto* fiduciary relationship existed here, we also uphold the grant of summary judgment to Mercantile on the claim of interference with Lion's alleged fiduciary duties to Westgate.

Thus, the district court properly granted summary judgment on these issues. This disposes of the first, fourth, fifth, and eighth claims of Westgate's complaint. [1]

> 1  Westgate in its appeal does not press the ninth claim, which sought a declaratory judgment as to the status of Lion's title to the land. We therefore decline to address it.

 [*21] **C**

Westgate appeals the order of the district court overruling its objections to the discovery orders of the magistrate judge, who had conducted the discovery proceedings. Westgate argues that it should have been given documents relating to the Franklin Park Mall development, which would have shown that the parties considered the Westgate Village Shopping Center a joint venture and that Lion had not acted in good faith. Westgate contends that the magistrate judge erred in holding an *ex parte* hearing to allow Lion to explain the documents that the magistrate judge was examining *in camera*.

A district court's decision to limit discovery is reviewed for abuse of discretion. *Elvis Presley Enterprises v. Elvisly Yours, Inc.*, 936 F.2d 889, 893 (6th Cir. 1991). The trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant. *Ibid.* An order denying further discovery will only be reversed if it was an abuse of discretion resulting in substantial prejudice. *Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir. 1992). Summary judgment is inappropriate if the nonmoving party [*22] has not had the opportunity to discover information essential to opposing summary judgment. *Elvis Presley Enterprises, 936 F.2d at 893*. However, summary judgment is appropriate even where no discovery has occurred, if there is no showing that discovery would have disclosed disputed material facts. *Chilingirian v. Boris*, 882 F.2d 200, 203 (6th Cir. 1989). The nonmoving party must affirmatively demonstrate the reasons that additional discovery is necessary and how postponement of ruling on the motion for summary judgment would enable him to rebut the showing of absence of a genuine issue of fact. *Emmons v. McLaughlin*, 874 F.2d 351, 356-57 (6th Cir. 1989).

The district court did not abuse its discretion in denying Westgate's appeal. As the district court explained, the magistrate judge conducted the *in camera* review with Westgate's points of relevance at hand and defined "relevance" broadly. Further, the magistrate judge ordered Lion to produce information it had as to the future disposition of the Westgate Village store. The district judge also reviewed the documents under seal [*23] and concluded that they were not relevant.

Westgate insists that "presumably, other correspondence is similarly relevant" to the issue of a joint venture. Without more specificity, Westgate's request is an impermissible fishing expedition. Westgate also asserts that discovery relating to the Franklin Park Mall was relevant to the issue of the existence of a confidential relationship. Given the magistrate judge's use of a broad definition of "relevance" and the apparent marginal relevance of the Franklin Park Mall information to whether there was a confidential relationship between the parties regarding Westgate Village, the district court did not abuse its discretion.

### III

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**